IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE ESTATE OF NENA CHARLEY, By and Through
Personal Representative TIMOTHY CHARLEY;
TIMOTHY CHARLEY, as Parent and Next Friend of
Nile Charley; and TIMOTHY CHARLEY, Individually,

       Plaintiffs,

vs.                                                            1:22-cv-00033 JB/JFR

GALLUP INDIAN MEDICAL CENTER,
Department of Health and Human Services,
Indian Health Service; THE UNITED STATES
OF AMERICA; ROBERT LEACH, D.O.;
ROBIN RANELL SALES, RN; and
JOELLE CATHERIN CERO GO, RN,

       Defendants.

**DEFENDANT UNITED STATES' REPLY IN SUPPORT OF PARTIAL MOTION
FOR SUMMARY JUDGMENT OR TO DISMISS CERTAIN CLAIMS**

Whether Gallup Indian Medical Center ("GIMC") negligently credentialed or privileged Dr. Robert Leach as an emergency physician has already been litigated in *Tolbert v. Gallup Indian Medical Center*. This Court held in *Tolbert* that "the Plaintiffs' negligent credentialing and privileging claims may proceed on a limited basis under the [Indian Health Manual's] mandatory licensure requirements." 555 F. Supp. 3d 1133, 1171 (D.N.M. 2021) (Browning, J.). With regard to licensure, the Indian Health Manual ("IHM") requires only that a physician "hold an active and unrestricted State license." IHM, attached as Def.'s Ex. 7-1, § 3-1.4(C)(5).[1] The plaintiffs in *Tolbert*—represented by the same attorneys as Plaintiffs in this case—had the opportunity to obtain

---

[1] The IHM is publicly available at https://www.ihs.gov/ihm/pc/part-3/p3c1/ (last visited Aug. 5, 2022). The version of the IHM attached by Plaintiffs in their Response, *see* Doc. 34-2, is a draft that was never implemented, as explained in Section II *infra*, and should be disregarded.

discovery about Dr. Leach's licensure status and to depose him about it. *See* Doc. 1 ¶¶ 49-50. Tellingly, Plaintiffs' Response (Doc. 34) offers no evidence to rebut the United States' evidence that Dr. Leach's medical licenses were active and unrestricted at the time of the incident in question, *see* Doc. 28 at 3-4, which satisfies the mandatory licensure requirement.

Undeterred, Plaintiffs pivoted to alleging in the Complaint that the Indian Health Service ("IHS") requires emergency physicians to be "Board Eligible or Board Certified by the American Board of Emergency Medicine or the American Osteopathic Board of Emergency Medicine." Doc. 1 ¶ 46. However, the IHM contains no such requirement. *See* Def.'s Ex. 7-1 § 3-1.4(C)(4) (noting that "Board certification(s) held by an application should be verified," but not requiring Board certification, much less from the two entities cited by Plaintiffs).[2] Nor does Plaintiffs' Response identify any other source of this purported board certification requirement. *See* Doc. 34 at 3 (asserting without citation to any authority or evidence that "requirements for credentialing at IHS hospitals are more than board certification").

In their Response, Plaintiffs have changed tack yet again, now asserting that Dr. Leach lacked minimum qualifications to treat patients at GIMC yet failing to explain what mandatory, specific qualifications he lacked. *See id*. at 9. To the extent Plaintiffs contend they need discovery on the privileging requirements for emergency physicians,[3] the United States has attached the

---

[2] Dr. Leach is Board certified by the American Association of Physician Specialists ("AAPS"). *See* Doc. 34-1 ¶¶ 18-21. His status can be checked at credentialsmart.net/abps (under "Public Inquiries," click on "Lookup a Provider," then click on "Search").

[3] Plaintiffs attached a Rule 56(d) affidavit to their Response, Doc. 34-5, but they fail to show that additional discovery is required for the Court to decide the United States' Motion. First, Plaintiffs already have much of the information they purport to need. The Emergency Department "proficiencies" were provided to Plaintiffs' counsel in the *Tolbert* litigation. *See* Bates 1947-50; *see also* Def.'s Ex. 6 at 5-6. The IHS credentialing requirements are publicly available. *See supra* note 1. Second, the United States is unable to provide the other requested materials. Dr. Leach's credentialing/privileging file is protected from disclosure pursuant to the IHS medical quality assurance statute, 25 U.S.C. § 1675. *See Tolbert v. United States*, 555 F. Supp. 3d 1207, 1243

relevant privileging requirements to this Reply. *See* Def.'s Ex. 7-1; Dr. Leach 2017-2019 Privileges, attached as Def.'s Ex. 6. Notably, these privileging requirements do not include board certification. *See* Def.'s Ex. 6 at 3 (stating that board certification is "highly recommended"). While an emergency physician is "expected" to have "[a] central core of knowledge" of various areas of medicine and "[s]pecialized knowledge and skill" to treat illness and injury, it is up to "a physician familiar with the applicant's clinical competence"—here, the Emergency Department Chief—to decide whether "granting such privileges appears reasonable in light of the applicant's educational training and demonstrated clinical competence," subject to approval by the hospital's governing body. *Id*. at 3, 6. In other words, the decision whether Dr. Leach was qualified to have privileges at GIMC was left to the discretion of the hospital.

Because Plaintiffs cannot identify any mandatory and specific policies violated by GIMC with regard to credentialing and privileging Dr. Leach, the Court should conclude that the discretionary function exception bars their negligent credentialing and privileging claims. Plaintiffs also fail to identify any mandatory, specific requirements relating to the hiring, supervision, and training of physicians at GIMC or the selection and retention of independent contractors. Hence, the discretionary function exception bars these claims as well. Finally, Plaintiffs' arguments that they are entitled to punitive damages under the FTCA or damages in excess of the New Mexico Medical Malpractice Act ("NMMMA") cap contravene Tenth Circuit and U.S. Supreme Court precedents and should be rejected.

---

(D.N.M. 2021) (Browning, J.) (holding that records from IHS's credentialing and privileging review are "records of a 'medical quality assurance program' and are therefore generally privileged" (quoting 25 U.S.C. § 1675(a)(2)). The United States will be producing a detailed privilege log describing each document in this file when it serves its responses to Plaintiffs' discovery requests. *See id*. at 1240-41. Although this Court has held that employment applications are not subject to the IHS quality assurance statute, *see id*. at 1242, the United States does not have a "personnel" file for Dr. Leach because he is a contractor, *see* UMF 3.

## DEFENDANT'S UNDISPUTED MATERIAL FACTS ("UMFs")

Defendant responds to Plaintiffs' purported disputes of the remaining UMFs as follows:

**UMFs 1-3**: Plaintiffs purport to dispute UMFs 1-3 but do not specifically controvert them. Rather, Plaintiffs contend without any supporting evidence that "Defendant fails to meet the credentialing requirements under *Begay v. United States*." Doc. 34 at 5. Because UMFs 1-3 address Dr. Leach's status as a deemed employee of the United States rather than his credentials, and Plaintiffs do not specifically controvert his status, the Court should deem UMFs 1-3 undisputed. *See* D.N.M.LR-Civ. 56.1(b).

**UMFs 4-8**: Plaintiffs purport to dispute UMFs 4-8 but do not specifically controvert them. Rather, Plaintiffs contend without any supporting evidence that they "dispute Dr. Leach's licensing." Doc. 34 at 5. Because Plaintiffs do not specifically controvert that Dr. Leach had active, unrestricted medical licenses at the time of the incident alleged in the Complaint, the Court should deem UMFs 4-8 undisputed. *See* D.N.M.LR-Civ. 56.1(b).

## ARGUMENT

**I.     The Discretionary Function Exception Bars Plaintiffs' Claims of Negligent Hiring, Supervision, and Training.**

Defendant's Motion argued extensively that the discretionary function exception bars Plaintiffs' claims for negligent hiring, supervision, and training, as well as any claims arising out of selection and oversight of an independent contractor such as Dr. Leach. *See* Doc. 28 at 6-13. Plaintiffs' Response mentions the negligent hiring, supervision, and training claims only in passing in a section heading but does not address Defendant's arguments about these claims. *See* Doc. 34 at 19. Instead, Plaintiffs focus on their claims of negligent credentialing and privileging. *See generally* Doc. 34.

Because Plaintiffs' Response fails to identify any specific, mandatory policies governing hiring, supervision, and training of physicians or selection and retention of physicians as independent contractors, Plaintiffs fail to meet their burden under the first prong of *Berkovitz*. *See Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008) ("[T]he burden under [Tenth Circuit] case law to present evidence of a discretion-constraining regulation or policy resides with the plaintiffs."). Absent any specific, mandatory policies, the Court "can only conclude that staffing decisions . . . were left to the discretion" of government officials. *Id.*

As for the second prong of *Berkovitz*, Plaintiffs explicitly decline to address it. *See* Doc. 34 at 22 ("The second prong of the *Berkovitz* test need not be applied here."). However, the Court must "*presume* that a government agency's acts are grounded in policy when no statute, regulation, or policy sets forth a required course of conduct; the challenger must allege facts showing otherwise." *Ball v. United States*, 967 F.3d 1072, 1079 (10th Cir. 2020) (citing *United States v. Gaubert*, 499 U.S. 315, 324-25 (1991) (emphasis in original)). In any event, this Court has already identified the myriad policy considerations relevant to such claims. *See Gonzagowksi v. United States*, 495 F. Supp. 3d 1048, 1134 (D.N.M. 2020) (Browning, J.) (holding that the decision to hire a contractor "involves policy issues like 'budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition'" (quoting *Sydnes*, 523 F.3d at 1186)); *id.* at 1135 (explaining that decisions relating to training and supervision of contractors "involve decisions left to the United States' discretion that are based on safety and economic policy concerns"); *Tolbert v. Gallup Indian Medical Ctr.*, 555 F. Supp. 3d 1133, 1170 (D.N.M. 2021) (Browning, J.) ("In general, a hospital's training of its doctors and nurses involves substantial policy considerations . . . including cost" and "the training their existing staff had received elsewhere." (internal quotation marks and citation omitted)).

5

Plaintiffs cannot overcome the discretionary function exception with regard to their claims of negligent hiring, supervision, and training or any claims relating to selection and retention of independent contractors. Consequently, the United States has not waived its sovereign immunity as to these claims, and they must be dismissed for lack of subject matter jurisdiction.

**II.     The Discretionary Function Exception Also Bars Plaintiffs' Claims of Negligent Credentialing and Privileging.**

Despite the extensive discovery Plaintiffs' counsel conducted on Dr. Leach in the *Tolbert* case, Plaintiffs still cannot identify a single mandatory and specific federal policy that GIMC violated in credentialing and privileging Dr. Leach to work in its Emergency Department.

**Indian Health Manual**: While the IHM sets forth certain requirements for credentialing, such as an active, unrestricted medical license, *see* Def.'s Ex. 7-1 § 3-1.4(C)(5), it does not contain any board certification requirement, *see id*. § 3-1.4(C)(4). With regard to privileging, the IHM provides that "[t]he granting of privileges must reflect the training, experience, and qualifications of the applicant as they relate to the staffing, facilities, and capabilities of the facility." *Id*. § 3-1.4(F). However, the IHM does not provide any specific criteria for determining whether to deny privileges, such as lack of board certification.

Plaintiffs rely on a draft of IHM Part 3, Chapter 1 (Doc. 34-2) that was never implemented and does not have the force and effect of a mandatory federal policy. *See* Decl. of Carl Mitchell, attached hereto as Def.'s Ex. 7, ¶¶ 9-11. The Court should therefore disregard the draft provisions. Even if this draft were controlling, none of the cited language creates any *specific* requirements violated by GIMC. For example, the draft states that "[p]rivileges will only be granted commensurately with the training, experience, qualifications, and proficiency of the applicant." Doc. 34-2 at 2. However, the draft does not provide any specific criteria prohibiting privileging, such as lack of board certification. Hence, "the language leaves to the decisionmaker's discretion

6

how best to" determine whether to grant privileges. *Tolbert*, 555 F. Supp. 3d at 1171 (quoting *Clark v. United States*, 695 F. App'x 378, 385-86 (10th Cir. 2017)). While Plaintiffs complain about the "substantive standards of competency" that GIMC applied in privileging Dr. Leach, Doc. 34 at 12, the discretionary function exception applies "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

**Indian Health Service Medical Credentialing and Privileging Guide**: Plaintiffs attach a publication dated September 2005 that purportedly governed credentialing and privileging at GIMC in 2019.[4] *See* Doc. 34-2. However, Plaintiffs conveniently omitted the portion of this publication that states: "This guidebook is meant to be a resource manual, not a statement of IHS policy." *See* IHS Guide, attached hereto as Def.'s Ex. 8, at 2. In any event, the IHS Guide merely states that "[c]ontract, consultant, and *locum tenens* providers should be privileged by the same mechanisms as other providers when they practice inside the IHS facility." Doc. 34-2 at 2. Therefore, the IHS Guide does not create any mandatory or specific requirements that would have prohibited Dr. Leach from providing his services to GIMC.

**Medicare and Medicaid Statute and Regulations**: Plaintiffs cite a statute and various regulations as requiring hospitals to adopt and enforce medical staff bylaws. *See* Doc. 34 at 14 (citing 42 U.S.C. § 482.12(a)(6); 42 C.F.R. §§ 482.22(c), 482.12(a)(6)). However, none of these provisions specifically dictate what those bylaws must require in terms of credentialing and privileging. Hence, they do not foreclose application of the discretionary function exception.

**Testimony of Kathleen Marie Matzka**: Plaintiffs contend that the testimony of Kathleen Marie Matzka in an unidentified case, Doc. 35-1, establishes that the "CMS Conditions of

---

[4] The entire Indian Health Service Medical Credentialing and Privileging Guide is available at https://www.ihs.gov/sites/riskmanagement/themes/responsive2017/display_objects/documents/IHS-Medical-Staff-Credentialing-and-Privileging-Guide.pdf (last visited Aug. 5, 2022).

Participation," "Joint Commission Standards," and "New Mexico Hospital Regulations" create mandatory requirements for GIMC. Of course, testimony from a purported expert is insufficient to establish that any mandatory, specific directives applied to GIMC. *See Jahr v. United States*, 259 F. Supp. 3d 1158, 1164 (W.D. Wash. 2017) ("Plaintiffs have not provided, nor has the Court found, any case in which a court has concluded from only deposition testimony that a mandatory directive prescribed—or proscribed—certain conduct by a Government actor.").

**CMS Conditions of Participation**: While the United States does not dispute the applicability of the CMS Conditions of Participation for hospitals, which are contained in 42 C.F.R. Part 482, Plaintiffs' reliance on 42 C.F.R. §§ 482.22(c) and 482.12(a)(6) is unavailing for the reasons set forth *supra* as to "Medicare and Medicaid Statute and Regulations."

**The Joint Commission Standards**: The Joint Commission is a non-profit, non-governmental organization that creates voluntary standards for hospitals that seek accreditation or certification.[5] The current version of the IHM provides that "[e]ach medical staff member who provides medical services must meet the medical staff credentialing and privileging standards of a nationally recognized accrediting/certifying body such as the Joint Commission, the American Association for Ambulatory Health Care (AAAHC), or the Centers for Medicare and Medicaid Services." Def.'s Ex. 7-1 § 3-1.3(A). Hence, the IHM does not specifically require compliance with The Joint Commission's standards, and in any event, Plaintiffs do not point to any Joint Commission standards violated by GIMC in credentialing and privileging Dr. Leach. To the extent Plaintiffs rely on an audit report from 2004 that found that GIMC's credentialing and privileging

---

[5] According to the organization's website, The Joint Commission is "[a]n independent, not-for-profit organization," and "[h]ealth care organizations, programs, and services voluntarily pursue accreditation and certification." *See* https://www.jointcommission.org/about-us/facts-about-the-joint-commission/joint-commission-faqs/ (last visited Aug. 5, 2022).

practices failed to meet The Joint Commission's standards, *see* Doc. 34 at 17-18, such evidence has no relevance to GIMC's discretion to credential and privilege Dr. Leach over a decade later.[6]

**New Mexico Administrative Code**: Plaintiffs cite "New Mexico Administrative Code 7.72.26." Doc. 34 at 15. Presumably, they mean Section 7.7.2.26 ("Medical Staff"). Regardless of what section they cite, New Mexico Administrative Code provisions do not constitute a "*federal* statute, regulation, or policy" for purposes of the discretionary function exception *Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (emphasis added); *see also Miller v. United States*, 992 F.3d 878, 886 n.3 (9th Cir. 2021) (noting that "a plaintiff cannot rely on the premise that *state* law 'specifically prescribes a course of action for an employee to follow'" for purposes of the discretionary function exception (quoting *Berkovitz*, 486 U.S. at 536; emphasis in original)). Plaintiffs provide no evidence that any applicable federal statute, regulation, or policy incorporates the New Mexico Administrative Code by reference. Furthermore, the provision cited by Plaintiff merely defines "governing body." It does not create any mandatory, specific policies that would have precluded GIMC from credentialing and privileging Dr. Leach.

In sum, Plaintiffs have not identified a single federal statute, regulation, or policy that left GIMC with "no choice" but to deny Dr. Leach credentials and privileges. *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016). Dr. Leach had active, unrestricted medical licenses as required by the IHM credentialing policy. Other than a medical degree and residency, which Plaintiffs do not contend are lacking, GIMC's privileging requirements are discretionary because they rely on medical professionals' clinical judgment of competency. *See*

---

[6] The 2004 report, titled "Credentialing and Privileging Practices at Gallup Indian Hospital," Doc. 34-6, cites an obsolete version of the IHS's credentialing and privileging policy. *Compare* Doc. 34-6 at 12 (citing IHS Circular Appendix 95-16), *with* Def.'s Ex. 7 ¶ 8 (noting that IHS Circular No. 95-16 was superseded in 2006).

9

Def.'s Ex. 7-1 § 3-1.4(F); Def.'s Ex. 6 at 6; *see also Matthias v. United States*, 475 F. Supp. 3d 125, 141 (E.D.N.Y. 2020) (concluding that the discretionary function exception applied to a claim of negligently hiring unqualified physicians where the determination whether the physicians were qualified was left to the health center's discretion). Accordingly, they have failed to satisfy their burden under the first step of *Berkovitz*.

Plaintiffs also automatically fail step two of *Berkovitz* because "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, *it must be presumed that the agent's acts are grounded in policy when exercising that discretion*." *Ball*, 967 F.3d at 1076 (internal quotation marks omitted; emphasis in original). It is well established that the decision whether to credential and privilege a physician is "susceptible to policy analysis," *Gaubert*, 499 U.S. at 325, including "budgetary constraints, the need to assure public safety, the degree of potential harm to patients, the extent to which the [physician] had deviated from the required standard of care in the past, whether prior problems of deficiencies had been addressed and to what extent, and the like." *Hudson v. United States*, No. 2:06-CV-01, 2008 WL 517009, at *8 (E.D. Tenn. Feb. 25, 2008).

Because Plaintiffs cannot overcome either prong of *Berkovitz*, the discretionary function exception compels dismissal of the negligent credentialing and privileging claims.

**III.   The Court Lacks Jurisdiction over Plaintiffs' Demand for Punitive Damages and Prejudgment Interest Against the United States.**

Although "the FTCA prohibits the Court from subjecting the United States to punitive damages," *Tolbert*, 555 F. Supp. 3d at 1173, Plaintiffs insist that they should be allowed to obtain a punitive damages award to allow the "10th Circuit to decide if punitive damages are appropriate," Doc. 34 at 22. However, the United States Supreme Court has already concluded that Congress meant what it said when it provided that the "United States . . . shall not be liable for . . . punitive

10

damages." 28 U.S.C. § 2674; *see also Molzof v. United States*, 502 U.S. 301, 312 (1992) (providing that Section 2674 bars the recovery of punitive damages for "intentional or egregious misconduct"); *Carlson v. Green*, 446 U.S. 14, 22 (1980) (noting that "punitive damages in an FTCA suit are statutorily prohibited").

"Because the FTCA expressly prohibits claims for punitive damages and prejudgment interest, the Court lacks subject matter jurisdiction over those claims." *Tolbert*, 555 F. Supp. 3d at 1173. The Court should therefore reject Plaintiffs' invitation to assume that it has subject matter jurisdiction to award punitive damages solely to allow Plaintiffs to tee up a future constitutional argument on appellate review.[7] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (rejecting the concept of hypothetical jurisdiction as "offend[ing] fundamental principles of separation of powers").

### IV. The NMMMA Cap Applies to Non-Medical Compensatory Damages Awards under the FTCA.

*Haceesa v. United States* squarely held that the United States' liability for medical malpractice—including malpractice by non-qualified medical staff such as nurses—is subject to the NMMMA's $600,000 cap. 309 F.3d 722, 729-30 (10th Cir. 2002). Although Plaintiffs acknowledge that "*Haceesa v. United States* . . . is the controlling law" on the applicability of the NMMMA cap to non-medical compensatory damages awards under the FTCA, they urge the Court to disregard this binding decision because "it was wrongly decided." Doc. 23 at 13.

Because "the Court is bound to follow binding precedent from the Tenth Circuit," *Zamora v. Wells Fargo Home Mortg.*, 831 F. Supp. 2d 1284, 1305 (D.N.M. 2011) (Browning, J.), *Haceesa*

---

[7] To the extent Plaintiffs contend that the FTCA's punitive damages ban is unconstitutional, *see* Doc. 34 at 4, they have waived this argument by failing to develop it. *See Tolbert*, 555 F. Supp. 3d at 1173 ("The Plaintiffs neither cite which constitutional provision 28 U.S.C. § 2674 allegedly violates, nor provide any supporting case law.").

11

requires the Court to apply the NMMMA recovery cap to any judgment against the United States. *See Haceesa*, 309 F.3d at 729-30 ("[B]ecause an analogous suit against a private hospital based on the actions of employees who are not themselves health care providers would be subject to the recovery cap, the Plaintiff's present FTCA suit against the Government is also subject to the $600,000 cap."); *Nez v. United States*, 367 F. Supp. 3d 1245, 1270 (D.N.M. 2019) ("New Mexico's $600,000 recovery cap applies to the finding of liability against the United States in this case.").

## CONCLUSION

For the foregoing reasons, the Court should (1) dismiss the claims for negligent hiring, supervision, and training; (2) dismiss the claims for negligent credentialing and privileging; (3) strike any demand for punitive damages and prejudgment against the United States; and (4) hold that the NMMMA cap applies to any non-medical compensatory damages award against the United States.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*Electronically filed 8/5/22*
CHRISTINE H. LYMAN
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274
Christine.Lyman@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 5, 2022, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel to be electronically served as more fully reflected on the Notice of Electronic Filing.

*Filed electronically 8/5/22*
CHRISTINE H. LYMAN
Assistant United States Attorney