IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE ESTATE OF NENA CHARLEY, By and Through
Personal Representative TIMOTHY CHARLEY;
TIMOTHY CHARLEY, as Parent and Next Friend of
Nile Charley; and TIMOTHY CHARLEY, Individually,

    Plaintiffs,

vs.                                            No. 1:22-cv-00033 JB/JFR

GALLUP INDIAN MEDICAL CENTER,
Department of Health and Human Services,
Indian Health Service; THE UNITED STATES
OF AMERICA; ROBERT LEACH, D.O.;
ROBIN RANELL SALES, RN; and
JOELLE CATHERIN CERO GO, RN,

    Defendants.

## DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFFS' FIRST MOTION TO COMPEL

Plaintiffs' First Motion to Compel (Doc. 57) seeks an order compelling the production by the United States of all or part of the credentialing file maintained by Gallup Indian Medical Center ("GIMC") for Dr. Robert Leach, whose actions are at issue in this litigation. The Court should deny the Motion to Compel because the credentialing file is absolutely privileged under federal law, and it is therefore not subject to discovery pursuant to Federal Rule of Civil Procedure 26(b)(1) (allowing discovery of only "nonprivileged matter" that is both relevant and proportional).

The Indian Health Service's ("IHS") medical quality assurance statute, 25 U.S.C. § 1675 ("MQA Statute"), provides that "[n]o part of any medical quality assurance record . . . may be subject to discovery." *Id.* § 1675(c)(1). This Court has held that records compiled by the IHS to

review a physician's credentials to determine whether to grant clinical privileges are "records of a 'medical quality assurance program' and are therefore generally privileged." *Tolbert v. Gallup Indian Med. Ctr.*, 555 F. Supp. 3d 1207, 1243 (D.N.M. 2021) (Browning, J.) (quoting 25 U.S.C. § 1675(a)(2)).

While the MQA Statute protects the credentialing file from discovery, it does not purport to protect "information in a record created and maintained outside a medical quality assurance program." 25 U.S.C. § 1675(i). To the extent Plaintiffs seek records in the credentialing file that also exist independently of the credentialing file, such as copies of diplomas and medical licenses, *see* Doc. 51 at 5, they are free to use discovery tools such as Rule 45 subpoenas to obtain these documents from Dr. Leach or from the schools and licensing boards. However, Plaintiffs have made no effort to do so.

Because the credentialing file is absolutely privileged, and Plaintiffs can obtain records that exist outside of the file using third-party discovery, the Court should deny the Motion to Compel and decline to conduct an *in camera* review of the credentialing file.

## **RELEVANT FACTUAL BACKGROUND**

**A.**  **Credentialing and Privileging Process at GIMC**

1. GIMC is an IHS facility. Declaration of GIMC Chief of Staff Carolyn Wong, MD, MPH, attached as Ex. A, ¶ 1.

2. The Indian Health Manual ("IHM"), Chapter 1, Part 3 ("Medical Credentials and Privileges Review Process") sets forth GIMC's policy with regard to credentialing and privileging of physicians. *Id*. ¶ 2; *see also* Doc. 38-3.

3. Pursuant to the IHM, GIMC undertakes a "comprehensive credentials review" of physicians "to evaluate competency and appropriately grant medical staff membership and/or

clinical privileges." Doc. 38-3 at 3-4 (IHM Chapter 1 §§ 3-1.1.D(1), 3-1.2.C); Dr. Wong Decl. (Ex. A) ¶ 4.

4. "Credentials are the attestation of qualification, competence, or authority issued to an individual by a third party," including "documents that constitute evidence of practitioner training, licensure, experience, and expertise." Doc. 38-3 at 3 (IHM Chapter 1 § 3-1.1.D(2)).

5. Credentialing is an "ongoing process whereby a facility's medical staff obtains, verifies, and assesses an individual's professional credentials." *Id*. (IHM Chapter 1 § 3-1.1.D(1)).

6. GIMC's credentialing and privileging process consists of "request[ing] information from other entities regarding the qualifications, competence, and authority issued to providers with regard to their training, licensure, experience, and expertise," and evaluating these materials to "determin[e] whether to credential or privilege an individual." Dr. Wong Decl. (Ex. A) ¶ 4.

7. GIMC grants medical staff membership and/or clinical privileges "for a provisional 1-year period," and "[c]redentials and performance are . . . reviewed near the end of this 1-year period." Thereafter, medical staff membership and/or clinical privileges last for a 2-year period. Doc. 38-3 at 7 (IHM Chapter 1 § 3-1.4.E).

8. The principal purpose of the credentialing and privileging process is "to provide quality health care to American Indian and Alaska Native patients." *Id*. at 2-3 (IHM Chapter 1 § 3-1.1.B(1)).

9. "The medical staff credentialing and privileging process for health care providers is one of the critical tasks of the Agency and is directly related to the provision of quality medical care that is provided in these [IHS] facilities." *Id*. at 2 (IHM Chapter 1 § 3-1.1.B(2)).

10. Accordingly, "[c]redentialing and privileging is a required medical quality assurance process of the IHS." Dr. Wong Decl. (Ex. A) ¶ 2.

B.     **Plaintiffs' Discovery Requests**

11.   Dr. Leach provides emergency medicine services to GIMC pursuant to a personal services contract and is not a GIMC employee. Doc. 28 at 3 ¶ 3.

12.   Plaintiffs served their First Set of Requests for Production on the United States on July 8, 2022. Doc. 31.

13.   Plaintiffs requested production of "every document that has ever been or currently is in the 'credentialing file' and any other personnel or employment files . . . concerning Defendant[] Robert Leach, D.O." Doc. 57-2 at 4 (Request No. 2).

14.   The United States responded to Plaintiff's First Requests for Production on August 15, 2022. Doc. 47.

15.   The United States objected to production of Dr. Leach's credentialing file "because such information is specifically protected from any disclosure in civil discovery by the medical quality assurance confidentiality provisions of 25 U.S.C. § 1675." Doc. 57-2 at 4. The United States further noted that it "does not have a personnel or employment file for Dr. Leach because he is a contractor." *Id*.

16.   In addition to its substantive responses, the United States furnished a detailed privilege log of items withheld as being part of the credentialing file of Dr. Robert Leach. Doc. 57-1.

17.   All of the credentialing file documents listed in the privilege log "were compiled by [GIMC] during the process of credentialing and privileging Dr. Leach." Dr. Wong Decl. (Ex. A) ¶ 5.

18.   By letter dated September 1, 2022, Plaintiffs requested that the United States supplement its responses. Doc. 57-3.

19. On September 9, 2022, the United States sent a response to Plaintiffs' Rule 37 letter, which reiterated its basis for withholding Dr. Leach's credentialing file under 25 U.S.C. § 1675 and declined supplementation with regard to the credentialing file. Doc. 57-4.

## **STANDARD OF REVIEW**

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows for discovery of "any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). Hence, relevance and proportionality are insufficient to allow discovery into privileged communications. *See Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) ("Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.").

"When a party withholds information otherwise discoverable by claiming that the information is privileged, . . . the party must . . . expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A). "[T]he party asserting the privilege[] bears the burden of demonstrating that it is justified in withholding the documents at issue." *Roybal v. United States*, No. CV 13-610 KG/GBW, 2014 WL 12597405, at *2 (D.N.M. Apr. 3, 2014).

"Before determining whether a privilege applies, the Court must decide whether federal or state law governs the asserted privilege." *Vondrak v. City of Las Cruces*, 760 F. Supp. 2d 1170, 1175 (D.N.M. 2009) (Browning, J.). In an action under the Federal Tort Claims Act ("FTCA"), "federal law governs the asserted privilege" because "federal law supplies the rule of decision." *Tolbert*, 555 F. Supp. 3d at 1244.

**ARGUMENT**

I. **Plaintiffs Have No Basis for a Negligent Credentialing Claim.**

Plaintiffs continue to argue, contrary to this Court's prior rulings in *Begay v. United States*, No. 15-civ-0358 JB/SCY, 2016 WL 6394925, at *31 (D.N.M. Sept. 30, 2016) (Browning, J.), and *Tolbert v. Gallup Indian Med. Ctr.*, 555 F. Supp. 3d 1133, 1171-72 (D.N.M. 2021) (Browning, J.), that they have an all-encompassing negligent credentialing claim under New Mexico law that entitles them to discovery of materials that are absolutely privileged from discovery under federal law. *See* Doc. 57 at 6-11. While these rulings are not the law of the case in this matter, they should continue to guide this Court in rejecting Plaintiffs' arguments.

Both the *Begay* and *Tolbert* decisions held that the discretionary function exception to the FTCA permits only a very narrow credentialing claim regarding the licensure status of a physician because (1) the IHM specifically prohibits granting medical staff membership or clinical privileges only to "'providers with any restrictions on any State license, certification, or registration,'" and (2) the granting of an exception by the Area Director is an administrative task that "does not implicate public policy." *Begay*, 2016 WL 6394925, at *31 (quoting IHM Chapter 1 § 3-1.4(C)(5)); *see also Tolbert*, 555 F. Supp. 3d at 1172 (holding that "the Plaintiffs' negligent credentialing and privileging claim may proceed on a limited basis under the I.H.M.'s mandatory licensure requirements," and "[a]ll remaining privileging and licensing claims are dismissed").

In this case, publicly available records show that Dr. Leach held unrestricted licenses to practice medicine, *see* Docs. 28-2, 28-3, and 28-4, and, thus, the IHS complied with its mandatory requirements for credentialing. Hence, Plaintiffs have no basis for a negligent credentialing and privileging claim. Instead, they have fabricated requirements such as board certification, which the IHM does not require. *Compare* Doc. 1 ¶ 46 (asserting without any support that board certification is required to work at any IHS hospital), *with* Doc. 38-3 at 6 (IHM, Chapter 1 § 3-1.4.C(4))

(requiring only that any board certifications held by an applicant be verified). They have also grossly misrepresented Dr. Leach's prior deposition testimony. *Compare* Doc. 1 ¶ 50 (asserting that Dr. Leach testified that he was "terminated from working in several locations"), *with* Doc. 28 at 16 n.4 (noting that he did not testify that he was ever terminated), *and* Doc. 34-1 (providing Dr. Leach's deposition testimony as an exhibit to Plaintiffs' Opposition to the Motion to Dismiss for Lack of Jurisdiction, but failing to include any testimony about these purported terminations). These issues have been fully briefed before this Court in the United States' pending Motion to Dismiss for Lack of Jurisdiction, *see* Docs. 28, 34, and 38, and the arguments there are incorporated here by reference.

## II. Dr. Leach's Credentialing File is Absolutely Privileged from Discovery Under 25 U.S.C. § 1675.

Likewise, Plaintiffs continue to seek Dr. Leach's credentialing file because they allegedly "cannot prove [their negligent credentialing claim] without" it. Doc. 57 at 5. Apart from the fact that publicly available records negate any basis for a negligent credentialing claim under this Court's rulings in *Begay* and *Tolbert*, these records are absolutely privileged from discovery under the MQA Statute.

Credentialing and privileging information for the medical providers who provided the treatment at issue in this case are "medical quality assurance records" from a "medical quality assurance program" that are protected under federal law. 25 U.S.C. § 1675. Under the MQA Statute, the term "medical quality assurance program" is broadly defined to mean

> any activity carried out before, on, or after March 23, 2010, by or for any Indian health program or urban Indian organization to assess the quality of medical care, including activities conducted by or on behalf of individuals, Indian health program or urban Indian organization medical or dental treatment review committees, or **other review bodies responsible for** quality assurance, **credentials**, infection control, patient safety, patient care assessment (including treatment procedures, blood, drugs, and therapeutics), medical records, health resources management review, and identification and prevention of medical or dental incidents and risks.

7

*Id*. § 1675(a)(2) (bold emphasis supplied). In turn, a "medical quality assurance record" means the "proceedings, records, minutes and reports – that (a) emanate from quality assurance program activities described in paragraph (2); and (b) **are produced or compiled by** or for an Indian health program or urban Indian organization **as part of a medical quality assurance program**." *Id.* § 1675(a)(3) (bold emphasis supplied). Importantly, "**no part of any medical quality assurance record . . . may be subject to discovery** or admitted into evidence in any judicial or administrative proceeding," unless specifically authorized by an exception to the MQA Statute. *Id*. § 1675(c)(1) (bold emphasis supplied).

In *Tolbert*, this Court already considered whether to compel production of Dr. Leach's credentialing file. The Court concluded that because "credentialing and privileging oversight 'is directly related to the provision of quality medical care,'" records from IHS's credentialing and privileging review "are records of a 'medical quality assurance program' and are therefore generally privileged." 555 F. Supp. 3d at 1243 (quoting IHM Chapter 1, § 3-1.1(B)(2)). This Court also rejected the argument that the MQA Statute's law enforcement exception applied to a medical malpractice case. *See id*. However, the Court in *Tolbert* ordered the United States to produce a privilege log to support its assertion of the medical quality assurance privilege. *Id*. at 1241.

Here, the United States has already provided a detailed privilege log in response to Plaintiffs' request for every item in Dr. Leach's credentialing file. Dr. Carolyn Wong is the Chief of Staff for GIMC. *See* Wong Decl. (Ex. A) ¶ 1. As stated by Dr. Wong, the records listed in the United States' privilege log are all contained in Dr. Leach's credentialing file and were compiled by the credentialing committee for use in certifying Dr. Leach's credentials and competency to practice. *Id.* ¶ 5. As such, they qualify as medical quality assurance records absolutely privileged from discovery. 25 U.S.C. § 1675(c).

## III. The MQA Statute Does Not Prohibit Plaintiffs from Obtaining Records from Third Parties, Yet Plaintiffs Continue to Seek the Privileged Credentialing File.

Despite the unambiguous language in the MQA Statute that records produced or compiled by a medical quality assurance program are privileged from discovery, Plaintiffs seek to impose a further burden that a record must be used "exclusively" for peer review and for no other purpose. Doc. 57 at 8. Plaintiffs do not cite any language in the MQA Statute that supports their argument, and a textual analysis of the statute reveals otherwise.

The MQA Statute applies broadly to records that 1) emanate from [a] quality assurance program; and 2) are produced **or compiled by** an Indian health program as part of a medical quality assurance program. 25 U.S.C. § 1675(a)(3) (bold emphasis supplied). Thus, when a quality assurance program obtains copies of documents from other sources and places them within the credentialing file, the copy placed within the credentialing file becomes privileged from discovery under the MQA Statute. To the extent these records are "created and maintained outside" the credentialing file, the action of placing them in the file does not bar a party from obtaining the same record directly from the original source of the record or from using records obtained from another source as evidence at trial. *Id*. § 1675(i).

Dr. Leach's credentialing file indisputably contains documents compiled from outside sources. Indeed, the IHM's definition of "credentials" specifically contemplates documents provided by a "third party." Doc. 38-3 at 3 (IHM Chapter 1 § 3-1.1.D(2)). Plaintiffs are therefore welcome to do exactly what GIMC did to verify Dr. Leach's credentials—request documents such as medical licenses from third parties. *See, e.g.*, *Dayton Newspapers, Inc. v. Dep't of Air Force*, 107 F. Supp. 2d 912, 917 (S.D. Ohio 1999) (explaining that a similar medical quality assurance privilege statute protected medical quality assurance records from disclosure, but "an individual is not precluded from obtaining those files *from an outside source* (i.e., a source other than the quality

assurance program)" (emphasis in original)); *see also Soto v. United States*, No. 13-cv-2359-BAS (DHB), 2014 WL 4704594, at *4 (S.D. Cal. Sept. 22, 2014) ("Plaintiff is not prevented from obtaining from other sources certain documents that are found in SIHC's quality assurance file.").

Plaintiffs' citation to *N.Y. Times Co. v. U.S. Department of Health and Human Services*, 513 F. Supp. 3d 337, 347 (S.D.N.Y. 2021), *aff'd*, 15 F.4th 216 (2d Cir. 2021), is inapposite. In *N.Y. Times*, the court was confronted with an investigatory report that was prepared by an outside vendor to assess a series of institutional failures by the IHS that enabled one of its providers to sexually abuse Native American children. The court determined that the report was not created for a particular Indian health program and that it had not been created to assess the quality of medical care, both of which were required for the MQA Statute to apply. *Id.* at 347-49. In contrast, here the credentialing file was created by GIMC in the course of performing the credentialing and privileging of Dr. Leach, which is particularly noted to be a medical quality assurance activity in the Indian Health Manual. *See* Doc. 38-3 at 3 (IHM Chapter 1 § 3-1.1(B)(2)); Dr. Wong Decl. (Ex. A) ¶ 3. It was used directly to assess whether Dr. Leach would provide quality medical care to the patients of GIMC. Dr. Wong Decl. (Ex. A) ¶ 4. As such, the contents of the file are absolutely protected from discovery under the MQA Statute.

In *Parker v. United States*, the U.S. District Court for the District of Nebraska analyzed the MQA Statute in the context of credentialing. No. 8:18CV123, 2020 WL 729211, at *7 (D. Neb. Feb. 13, 2020). In the decision, the court noted that the language of 25 U.S.C. § 1675 was much broader than state law peer review statutes, applying to the entire contents of a provider's credentialing file. On this basis, the court denied discovery of the contents of the credentialing files, noting that the documents could be procured directly from other sources. *Id*. at *15 (holding

10

that the documents submitted by medical providers to satisfy a "Credentials Checklist" were "medical quality assurance records protected from disclosure by the United States").

Similarly, in *Wheeler v. United States*, the U.S. District Court for the District of Kansas considered the plaintiff's motion to compel the production of the "credentialing and privileges file" of three Army physicians which had been withheld by the United States under 10 U.S.C. § 1102, the analogous medical quality assurance statute applicable to the Department of Defense. No. 17-2249-JTM, 2018 WL 2008865 (D. Kan. Apr. 30, 2018). There, the court noted that the plaintiffs could not obtain documents from the medical quality assurance record, but rather they could obtain them, if they chose, from an outside source. *Id*. at *4-5 (noting that "the statute protects the confidentiality of *all* 'medical quality assurance records,' regardless of whether the contents of such records originated within or outside of a medical quality assurance program" (internal quotation marks omitted; emphasis in original)).

Finally, although Plaintiffs insist that some of the records listed as being in the credentialing file of Dr. Leach are actually a part of some personnel file in use by GIMC, this allegation lacks any evidentiary support. To be sure, this Court held in *Tolbert* that the MQA Statute does not protect employment applications from discovery because they are not medical quality assurance records. 555 F. Supp. 3d at 1242. Here, Dr. Leach did not submit an employment application to GIMC and does not have a personnel file because he is a contractor.[1] Moreover, an application or reapplication for clinical privileges is not the same as application for employment. This Court has already concluded that a credentials review for purposes of "privileging oversight" is a medical quality assurance program. *Id*. at 1243; *see also Wheeler*, 2018 WL 2008865, at *3

---

[1] Notably, the United States has not denied any of the production at issue in this motion on the basis of the Privacy Act, which is the privacy law that applies to government personnel records. *See generally* Doc. 57-1.

11

(finding that "[t]he application for, review of, and granting of medical privileges is a credentialing activity" that is "quite simply, a part of the medical quality assurance program" (internal quotation marks omitted)). Therefore, any records relating to privileging decisions, including applications and reapplications for clinical privileges, are protected from discovery under the MQA Statute.

As noted by Dr. Wong, the documents listed on the privilege log provided to the Plaintiff are those contained in Dr. Leach's credentialing file. Dr. Wong Decl. (Ex. A) ¶ 5. Because the credentialing and privileging process is a medical quality assurance activity, the credentialing file is immune to discovery. If Plaintiffs wish to obtain "documents and information that exist apart from any quality assurance activities," such as "certificates and licenses," they are free to seek these documents from outside sources. Doc. 57 at 5. Tellingly, the Motion to Compel is silent as to any efforts by Plaintiffs to obtain the documents from a source other than GIMC's credentialing file.

## IV. *In Camera* Review Is Unnecessary.

Given the privilege log and declaration provided by Dr. Wong, the United States does not believe that *in camera* review is warranted. However, should the Court determine such review is necessary, the United States is prepared to provide the documents to the Court. Should the Court determine that documents that it has reviewed should be released to the Plaintiffs, the United States requests that the Court stay such production until the Department of Justice can determine whether to appeal the Court's order. *See, e.g.*, *In re: United States*, 864 F.2d 1153, 1154, 1156 (5th Cir. 1989) (granting a writ of mandamus when the district court ordered the United States "to produce records generated in the course of the medical peer review process in a military hospital," because "[t]he district court's order compels the representatives of the government to do that which Congress has specifically forbidden").

## CONCLUSION

For the foregoing reasons, the Court should deny the Plaintiffs' Motion to Compel.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*Electronically filed 10/11/22*
CHRISTINE H. LYMAN
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274
Christine.Lyman@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 11, 2022, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel to be electronically served as more fully reflected on the Notice of Electronic Filing.

*Filed electronically 10/11/22*
CHRISTINE H. LYMAN
Assistant United States Attorney