IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE ESTATE OF NENA CHARLEY,
by and through Personal Representative,
TIMOTHY CHARLEY, TIMOTHY
CHARLEY, as parent and next friend of
NILE CHARLEY, and TIMOTHY CHARLEY,
Individually,

  Plaintiffs,

vs.                Cause No. 1:22-cv-00033-JB-JFR

THE UNITED STATES OF AMERICA, ROBIN
RANELL SALES, R.N., JOELLE CATHERIN
CERO GO, R.N., AB STAFFING SOLUTIONS,
LLC, a Foreign Corporation, NEXT MEDICAL
STAFFING, a Foreign Corporation, and JOHN or
JANE DOE Corporation.

      Defendants.

**PLAINTIFFS' FIRST AMENDED COMPLAINT TO RECOVER DAMAGES
FOR WRONGFUL DEATH AND LOSS OF CONSORTIUM
ARISING FROM MEDICAL NEGLIGENCE**

  Plaintiffs the Estate of Nena Charley, by and through Court-Appointed Personal Representative, Timothy Charley, Timothy Charley, as parent and next friend of Nile Charley, and Timothy Charley, Individually, by and through attorneys, Curtis & Co. Law Firm, hereby state as their claims against Defendants:

  1. McKinley County, New Mexico is the epicenter for hantavirus in the United States.

  2. Gallup Indian Medical Center (hereinafter "GIMC") was or should have been aware of aware of the possibility that Nena Charley was suffering from hantavirus when she presented at the GIMC Emergency Room ("ER") in the early morning hours of May 28, 2019.

1

3. Nena Charley presented to the GIMC ER shortly after 1:00 am on May 28, 2019, with fever, elevated blood pressure, tachycardia, body aches, dry cough, headache pain of 8/10, loss of appetite over the past three days and a history of exposure to mice droppings.

4. Nena Charley informed nurses Joelle Catherin Cero Go, RN and/or Robin Ranell Sales, RN that she had been exposed to mice droppings and dust at a temporary job she had been working, breaking down shelving and cleaning for the renovation of a Dollar Store in Gallup.

5. Body aches, headache, and dry cough are all bellwether symptoms of hantavirus, especially in the context of stated exposure to mouse droppings.

6. Nena Charley was seen by Robert Leach, DO, an ER physician who has held an astounding twenty-four (24) jobs since 1985.

7. Dr. Leach notes that Nena Charley has a dry cough.

8. Despite GIMC being in the epicenter of United States hantavirus cases, despite Nena Charley's textbook symptoms indicating possible hantavirus, and despite the nursing staff having been informed of Nena Charley's recent exposure to mice droppings and dust without respirator or mask, Dr. Leach failed to order basic blood work that would have confirmed the hantavirus diagnosis.

9. Dr. Leach misdiagnoses Nena Charley with acute viral syndrome.

10. Nena Charly is given a 60 mg shot of ketorolac ("Toradol"), a nonsteroidal anti-inflammatory, provided with medication for nausea, and discharged less than an hour after her arrival.

11. By a reasonable medical probability, CBC results would have shown Nena Charley had a low platelet count indicating hantavirus, which would have resulted in immediate transfer to UNMH for treatment.

12. In the treatment of hantavirus, every hour counts.

13. By a reasonable medical probability, if Nena Charley had been transferred to UNMH when she first presented to the GIMC ER on May 28, 2019, she would have been treated for hantavirus and survived.

14. Instead, Nena Charley arrives at the GIMC ER for a second time on May 28, 2019, this time by ambulance at 10:27 am with more severe symptoms and the same history.

15. Nena Charley's initial oxygen saturation is an alarming 72%.

16. Despite Nena Charley's condition, she is not seen by a physician for 34 minutes.

17. Finally, at 11:01 am, when Dr. Logan Bradley documents he came on duty, Nena Charley is evaluated by a physician.

18. She is put on 15L of oxygen at 11:18 am, fifty-one minutes after her arrival.

19. Dr. Bradley orders a CBC which comes back with a critically low platelet level of 34,000.

20. Dr. Bradley suspects hantavirus and confirms Nena Charley's exposure to mouse droppings, following Nena Charley having informed GIMC ER providers earlier that morning of her exposure to mice droppings and dust.

21. Dr. Bradley consults with Dr. Rodrigo Vazquez at the University of New Mexico Hospital ("UNMH") Intensive Care Unit about Nena Charley's deteriorating respiratory condition and test results, and Dr. Vazquez agrees that it is highly suspicious for hantavirus.

22. Dr. Vazquez dispatches the ECMO team to fly from UNMH to the GIMC ER.

23. By 1:25 pm Nena Charley is on HiFlo of 30L of oxygen. Fifteen minutes later she is on 60L of oxygen.

24. At 2:10 pm Nena Charley codes at GIMC and CPR is started.

25. Unnecessarily, CPR compressions are then converted to an GIMC automatic Lucas device. However, the battery for the GIMC Lucas device is critically undercharged and it fails and there is no back-up battery in the ER. The GIMC ER staff turns to Duane Gonzales, Nena Charley's brother-in-law, to try and find a charged battery. By all accounts the scene is chaos with the battery in danger of imminent failure, the staff unable to locate supplies, and the family unable to get any answers concerning Nena's health status.

26. Nalmerthan Pablo, Nena Charley's brother and a trained first responder, observed that CPR was started and stopped on Nena Charley at different points for no appropriate reason.

27. At 2:42 pm the ECMO team arrives by flight from UNMH.

28. At 3:44 pm CPR is stopped and ECMO is started.

29. Nena Charley is then taken by flight by the UNMH ECMO Team to UNMH in dire condition. After the UNMH providers exhausted all possible lifesaving measures, Nena Charley is pronounced dead in the following early morning at 4:20 am on May 29, 2019.

30. Defendant GIMC and its agents and/or employees failed to properly assess, care for, treat, and transfer Nena Charley to UNMH for treatment of hantavirus following her presentation at the GIMC ER at approximately 1:00 am on May 28, 2019. These failures contributed to cause Nena Charley's death.

31. Nena Charley suffered a loss of chance of survival when Defendant GIMC and its agents and/or employees failed to properly assess, care for, treat, and transfer Nena Charley to UNMH in the early morning hours of May 28, 2019 for treatment of hantavirus causing it to progress to a terminal state resulting in Ms. Charley's wrongful death.

32. Timothy Charley is the husband of Nena Charley and resides in Rock Springs, New

Mexico.  He brings this suit as her husband and the Court-Appointed Personal Representative for Nena Charley's Wrongful Death Estate for the purpose of pursuing the Estate's legal rights against Defendant USA, as well as all other defendants in their individual capacities.

33.  Timothy Charley and Nena Charley had a close, loving marriage of many years. Timothy Charley is devasted by the loss of his wife and has suffered a loss of consortium.

34.  Nena was a loving and attentive mother to her minor son, Nile Charley.  She was intimately involved in nurturing and raising Nile and his development as a person, including his cultural and academic education and extra-curricular activities.  Nile has suffered a devastating loss of consortium from the wrongful death of his mother.

35.  Defendant United States of America, through the Indian Health Service (IHS), an agency within the United States Department of Health and Human Services, does business and operates a healthcare facility called "Gallup Indian Medical Center" in Gallup, New Mexico.

36.  Nena Charley is an enrolled member of the Navajo Nation a federally recognized American Indian tribe, and IHS hospitals, including GIMC, are the health care system to which Nena Charley is entitled to receive medical care provided within the national standard of care.

37.  At all material times, Defendant Joelle Catherin Cero Go, R.N., was a licensed emergency medicine nurse practicing in her specialty at GIMC with apparent authority to act on behalf of Defendant USA as an agent and/or employee.

38.  At all material times, Defendant Robin Ranell Sales, R.N., was an Emergency Room nurse practicing in her specialty at GIMC with apparent authority to act on behalf of Defendant USA as an agent and/or employee.

39. At all material times, Defendant Robert Leach, D.O., was a licensed emergency medical physician practicing in his specialty at GIMC with apparent authority to act on behalf of Defendant USA as an agent and/or employee.

40. Defendant AB Staffing Solutions, LLC, is a foreign corporation with a principal place of business in Arizona at 3451 S. Mercy Rd., Suite 102, Gilbert, AZ 85297, and owns and operates a medical staffing business in Arizona and specific to this case, does business and staffs nurses and healthcare providers for an Indian Hospital, Gallup Indian Medical Center, located at 516 E. Nizhoni Blvd, Gallup, NM 87301. Upon information and belief, Nurse Joelle Catherin Cero Go, R.N. was staffed through this agency at GIMC as a traveling nurse. As such, Defendant AB Staffing Solutions, LLC had sufficient control and otherwise are subject to the jurisdiction of our state under the Long Arm Statute for their acts and omissions that resulted in medical negligence and wrongful death regarding Nena Charley.

41. Defendant AB Staffing Solutions, LLC, has a registered agent in the State of New Mexico listed with the Corporation Commission as Cogency Global Inc., located at 1012 Marquez Place, Suite 106B, Santa Fe, New Mexico 87505 and is licensed to do business in New Mexico under the laws of the State of New Mexico, and provided staffing services to GIMC pursuant to a contract.

42. Defendant AB Staffing Solutions, LLC, employed or contracted Nurse Joelle Catherin Cero Go, R.N., to provide healthcare for Nena Charley at all material times had apparent authority to act on behalf of AB Staffing Solutions, LLC, as an agent. AB Staffing Solutions, LLC ratified or participated in the acts, negligent, reckless and/or careless in nature such that Defendant AB Staffing Solutions, LLC is vicariously liable for all damages, including punitive damages attributed to its employees and contractors and were otherwise negligent in

their hire, training, and supervision of Nurse Joelle Catherin Cero Go, R.N. when AB Staffing Solutions put Nurse Joelle Catherin Cero Go, R.N. in the GIMC ER without proper training to include training on hantavirus.

43. Upon information and belief, Defendant Next Medical Staffing, is a for profit foreign limited liability company incorporated under the laws of Ohio, with a physical mailing address of 3366 Riverside Drive, Suite 103, Upper Arlington, Ohio, 43221. Defendant Next Medical Staffing has a principal place of business in Ohio at 3601 Rigby Rd., Miamisburg, Ohio, 45342, and owns and operates a medical staffing business in Ohio and specific to this case, does business and staffs nurses and healthcare providers for an Indian Hospital, Gallup Indian Medical Center, located at 516 E. Nizhoni Blvd, Gallup, NM 87301. Upon information and belief, Nurse Robin Ranell Sales, R.N. was staffed through this agency at GIMC as a traveling nurse. As such, they had sufficient control and otherwise are subject to the jurisdiction of our state under the Long Arm Statute for their acts and omissions that resulted in medical negligence and wrongful death regarding Nena Charley.

44. Defendant Next Medical Staffing, employed or contracted Nurse Robin Ranell Sales, R.N. to provide healthcare for Nena Charley at all material times had apparent authority to act on behalf of Defendant Next Medical Staffing, as an agent. Defendant Next Medical Staffing ratified or participated in the acts, negligent, reckless and/or careless in nature such that Defendant Next Medical Staffing is vicariously liable for all damages, including punitive damages attributed to its employees and contractors and were otherwise negligent in their hire, training, and supervision of Nurse Robin Ranell Sales, R.N. when Defendant Next Medical Staffing put Nurse Robin Ranell Sales, R.N. in the GIMC ER without proper training to include training on hantavirus.

45. The events giving rise to this complaint occurred at Gallup Indian Medical Center, which is part of the United States Health and Human Services Department and the Indian Health Service located in Gallup, New Mexico on May 28, 2019.

46. This action arises under the current state of the Federal Tort Claims Act, Title 28, United States Code, Section 1346(b), as hereinafter more fully appears.

47. On or about May 17, 2021, which was more than six months before this action was instituted, the claims set forth herein, which are subject to the Federal Tort Claims Act, were received by Indian Health Services, a division of the United States of America Department of Health and Human Services pursuant to 28 U.S.C § 2675(a).  Said agency failed to respond with a denial of this claim, or in any other way, on or before November 17, 2021 which is expiration of the six-month stay for suit, and therefore, the claims are deemed denied, and this suit is appropriate in U.S. District Court pursuant to 45 C.F.R. 35.2(b) and 28 U.S.C. 2675(a) and deemed timely.

48. The tort claim for which Plaintiffs sue herein arose from the acts and omissions hereinafter alleged which occurred in the City of Gallup, State of New Mexico.

49. Personal jurisdiction and venue are proper in Federal District Court of New Mexico pursuant to 28 U.S.C. § 1346(b)(1).

50. If the physicians, nurses or other health care providers are found through the discovery process to be contractors of GIMC, they are not deemed employees of GIMC and the Federal Tort Claims Act does not apply to them, mandating a jury trial of the case with regard to these actors.

51. To be credentialed and privileged to work in an IHS hospital, IHS requires the following qualifications for emergency medicine physicians in addition to other educational and

historical data: Completion of a three (3) or four (4) year residency program in Emergency Medicine and to be Board Eligible or Board Certified by the American Board of Emergency Medicine or the American Osteopathic Board of Emergency Medicine.

52. Defendant Leach who was given credentials to be a member of the GIMC medical staff with privileges to work as an emergency medicine provider was not, is not current and has never been board certified as required by IHS rules.

53. Defendant Leach was credentialed to be a member of the Medical Staff of GIMC and granted privileges to perform emergency medical care in the Emergency Room at GIMC when Nena Charley was there on May 28, 2019, which caused his involvement in the care and treatment of Nena Charley.

54. Plaintiffs' counsel has taken the deposition of Robert Leach, D.O. in the past which was defended by the United States Attorney.

55. During the deposition Dr. Leach testified repeatedly that his past conduct working in Emergency Rooms in 24 different locations got him into trouble and in fact terminated from working in several locations, such that the IHS requirement on past work experiences is also violated, in addition to his failure to be either residency trained in emergency medicine or properly board certified.

56. GIMC negligently credentialed and privileged Robert Leach, D.O. as an emergency medicine physician.

57. GIMC's conduct in ignoring IHS' requirements so blatantly for proper credentialing and privileging was gross negligence and/or showed a reckless disregard for the safety of their patient Nena Charley.

58. The Federal Government of the United States of America should be subject to punitive damages for its employees and agents utter indifference in properly credentialing and privileging Dr. Leach.

59. Had GIMC followed the IHS mandated qualifications for the credentialing and privileging Dr. Leach would never have been permitted to practice in its Emergency Room. A competent emergency medicine provider would have then instead have cared for Ms. Charley and she would have been properly diagnosed and treated for the hantavirus she presented with on May 29, 2019. GIMC's negligent credentialing and privileging of Dr. Leach contributed to cause the unnecessary and wrongful death of Nena Charley.

60. All special protections accorded the United States of America, its Department of Health and Human Services, its division the Indian Health Service and its hospital the Gallup Indian Medical Center under the Federal Tort Claims Act, Title 28, United States Code, Section 1346(b) are unconstitutional, against public policy and in fact create a disparity between the routinely substandard medical treatment available to members of the Navajo Nation and the guarantee of life accorded all Americans, which encompasses access to safe and effective medical care, through the 14th Amendment to the Constitution of the United States.

    A. Specifically, the Federal Tort Claim Act violates the Equal Protection Clause of the 14th Amendment to the United States Constitution, as the making and/or enforcement of the FTCA abridges the privileges of citizens of the United States; and deprives Native Americans, including Nena Charley, of **life** without due process of **law**; and denies to her within its jurisdiction the equal protection of the common law of the State of New Mexico to hold those who committed medical

    malpractice causing her wrongful death fully accountable for their negligence and
    their reckless disregard for the safety of her life.

  61. The concept of "Sovereign Immunity" and the government's need to "waive immunity" is an antiquated and unfit rubric for determining the accountability of the Federal Government of the United States of America.  The special protection afforded the Federal Government of the United States of America as it applies to this case violates the constitutional right of the members of the Navajo Nation, including Nena Charley, to equal protection under the law which guarantees life and thereby safe and effective medical care.

  62. The application of the New Mexico Medical Malpractice Act ("MMA"), Section 41-5-1 et seq., to cap damages against the United States of America and its Department and Division for the negligence of its employees at the Indian Health Service Hospital known as the Gallup Medical Center is unconstitutional, as the New Mexico Supreme Court found that a victim of medical malpractice has an inviolate right to jury trial.  See *Siebert v. Okun*, 2021-NMSC-016, ¶ 13, 485 P.3d 1265. "The New Mexico Constitution provides that '[t]he right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate.' N.M. Const. art. II, § 12. This right pertains to civil causes of action that were triable by jury at the time the New Mexico Constitution was adopted and took effect. *State ex rel. Bliss v. Greenwood*, 1957-NMSC-071, ¶ 15, 63 N.M. 156, 315 P.2d 223 ("[I]n that class of cases where the right to a trial by jury existed prior to the Constitution, it cannot be denied by the legislature.")."  The Federal Tort Claims Act denies the patient who suffers a wrongful death based on the medical negligence of their right to a jury trial.  In the Federal system under the FTCA such usurpation of the 7th Amendment may be permissible, but not in combination with a New Mexico Statute that has been determined to protect the Plaintiffs' right to jury trial under the Medical Malpractice Act.

63. The application of the New Mexico Medical Malpractice Act ("MMA"), Section 41-5-1 et seq., to cap damages against the United States of America for the negligence of its employees at the Indian Health Service Hospital known as the Gallup Medical Center is unconstitutional, as the MMA violates the Equal Protection Clause, Art. II. Sec. 18 of the New Mexico Constitution.

64. The application of the New Mexico Medical Malpractice Act ("MMA"), Section 41-5-1 et seq., to cap damages against the United States of America for the negligence of its employees at the Indian Health Service Hospital known as the Gallup Medical Center is unconstitutional, as the MMA violates Separation of Powers, Art. 3, Sec. 1 of the New Mexico Constitution.

   A. The FTCA picking only parts, specifically the cap provision, of the MMA to apply to the Federal Government while withholding all benefits of the MMA, including the panel process and the right to an in-state expert when negligence is determined within a panel hearing is a *de facto* violation of the Equal Protection Clause, Art. II. Sec. 18 of the New Mexico Constitution and the 14th Amendment to the United States Constitution guaranteeing Plaintiffs the right to due process and equal protection under the law.

WHEREFORE, Plaintiffs pray for Judgment against Defendants for reasonable compensatory damages, in an amount to be ascertained at trial, pre- and post-judgment interest, exemplary or punitive damages and for such other and further relief as this court deems appropriate.

Respectfully submitted,

*Attorneys for Plaintiff*
C U R T I S  &  C O .
215 CENTRAL AVENUE NORTHWEST
THIRD FLOOR
ALBUQUERQUE, NM 87102
T  505-243-2808     F  505-242-0812
lisa@curtislawfirm.org
melanie@curtislawfirm.org

*Electronically signed*
*/s/ Lisa K. Curtis*
Lisa K. Curtis, Esq.
Melanie L. Ben, Esq.