**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

THE ESTATE OF NENA CHARLEY,
by and through Personal Representative,
TIMOTHY CHARLEY, TIMOTHY
CHARLEY, as parent and next friend of
NILE CHARLEY, and TIMOTHY CHARLEY,
Individually,

Plaintiffs,

vs. Cause No. 1:22-cv-00033-JB-JFR

THE UNITED STATES OF AMERICA, ROBIN
RANELL SALES, R.N., JOELLE CATHERIN
CERO GO, R.N., AB STAFFING SOLUTIONS,
LLC, a Foreign Corporation, NEXT MEDICAL
STAFFING, a Foreign Corporation, and
JOHN or JANE DOE Corporation.

Defendants.

---

**PLAINTIFFS' FIRST MOTION TO COMPEL REGARDING THE DEPOSITION OF ROSELYN TSO DIRECTOR OF INDIAN HEALTH SERVICES**

---

COMES NOW Plaintiffs, by and through their counsel of record, Curtis & Co. Law Firm, and pursuant to Federal Rule of Civil Procedure 37(a)(1), hereby respectfully request the Court enter an Order to compel Defendant United States to produce the following individual, Director of Indian Health Services Roselyn Tso, to be deposed by Plaintiffs. Defendant United States opposes this Motion. In support of this Motion, Plaintiffs state as follows:

## I. BACKGROUND ON DISCOVERY ISSUE

The Gallup Indian Medical Center (hereinafter "GIMC") serves the Native American population in the Gallup, NM area. It is known that GIMC faces its share of controversy regarding

its ability to serve its patients due to lack of equipment and infrastructure. However, there are other larger nontangible issues facing GIMC which directly affects its patients. There is a lack in training and communication which have resulted in the death of Nena Charley in 2019. Director Tso served as the director of the Navajo Area Indian Health Services (hereinafter "NAIHS") from July 2019 through September 2022. NAIHS provides inpatient, emergency, outpatient, public health, and other services at four hospitals: Chinle Comprehensive Health Care Facility, Crownpoint Health Care Facility, Gallup Indian Medical Center, and Northern Navajo Medical Center (Shiprock, NM).[1] Director Tso has unique knowledge of these, and other issues provided in Plaintiffs' complaint that highlight the violations of Plaintiffs' constitutional rights.

It is a huge problem and concern that no official review or investigation occurred at GIMC after the death of Nena Charley in May 2020. Through the deposition of Nurse Go, one of the nurses who treated Nena on her initial visit to GIMC, Plaintiffs learned that Nurse Go was not aware of what hantavirus was when she treated Nena (Page 58, Lines 12-13). How can a nurse treat or flag someone for a deadly virus that they do not even know exists? How can GIMC fail to train nurses on hantavirus when it is endemic to the area? Obviously, there is a lack of training and awareness at GIMC which has true and deadly consequences. Immediately after Nena's death, no one at GIMC officially made any staff aware of hantavirus or required them to go through any training regarding hantavirus. This presents a huge problem, what if another hantavirus patient walked through the door soon after Nena Charley? GIMC health care providers still would not have been in a position to recognize or be on the alert for hantavirus. Director Tso's testimony is essential to Plaintiffs' constitutional claims. Director Tso has personal knowledge of the unique clinical and logistical issues specific to GIMC from her role as the director of NAIHS from 2019-

[1] https://www.ihs.gov/navajo/

2022. Further, Director Tso has unique information as she has served in various leadership roles at IHS for nearly four decades. Native American patients such as Nena Charley are entitled to good quality healthcare. Director Tso will be able to opine on what is being done to ensure Native American patients are receiving the quality care promised to them and what is being done to prevent more cases like Nena Charley's.

Plaintiffs sent Defendant United States an email on October 11, 2022, as a good faith effort to request the deposition of the Director of IHS, Roselyn Tso. Plaintiffs sent Defendant United States a follow up email to this request on January 9, 2023. Defendant United States responded on January 11, 2023, objecting to Roselyn Tso's deposition pursuant to the apex doctrine which resulted in Plaintiffs filing this motion.

## II. AUTHORITY

### a. Rule 26

Federal Rule of Civil Procedure 26(b)(1) provides that the scope of discovery should be "broadly and liberally construed to achieve the full disclosure of all potentially relevant information." *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004) (Browning, J.). Rule 26 allows for parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1). Information sought "need not be admissible in evidence to be discoverable." *Id*. This broad scope of discovery recognizes that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

### b. Apex Doctrine

Under the "apex doctrine,"

[T]he Court may prevent the deposition of high-ranking government officials where one or more of the following circumstance(s) exist:
(1) the official has no 'unique knowledge' of the subject matter;
(2) another witness could provide the information sought;
(3) an alternative discovery method would provide the information sought; and/or
(4) the official would suffer "severe hardship" in performing his or her official duties if forced to sit for a deposition.

*Tierra Blanca Ranch High Country Youth Program v. Gonzales*, 329 F.R.D. 694, 697 (D.N.M. 2019). "[T]he ultimate burden of persuasion lies with the executive invoking the apex doctrine." *Naylor Farms, Inc. v. Anadarko OGC Co.*, 11-CV-01528-REB-KLM, 2011 WL 2535067, at *2 (D. Colo. June 27, 2011). The executive "must demonstrate by evidence that he has no unique personal knowledge." *EchoStar Satellite, LLC v. Splash Media Partners, L.P.*, CIV-A07-CV-02611-PABBNB, 2009 WL 1328226, at *2 (D. Colo. May 11, 2009). This demonstration typically comes in the form of an affidavit submitted with the motion to quash. *See Thomas v. Intl. Bus. Machines*, 48 F.3d 478, 483 (10th Cir. 1995); *Trujillo v. Bd. Of Educ. Of The Albuquerque Pub. Schools,* CIV. 02-1146 JB/LFG, 2007 WL 2461632, at *4 n.1 (D.N.M. June 7, 2007). Courts may also consider whether the official has unique personal information essential to the case that could not be obtained from a less burdensome source. *See Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007). For example, in *Covey Oil Co. v. Contl. Oil Co*., the 10th Circuit found that:

> The evidence sought has substantial value because it is relevant and vital to the defenses asserted. *The fact that it might be obtained, at least in part, from others has no pertinence because a person may not avoid a subpoena by saying that the evidence sought from him is obtainable from another*.

340 F.2d 993 (10th Cir. 1965) (emphasis added). In the absence of a showing of personal knowledge, the party seeking to depose an officer may nevertheless do so upon demonstrating that "(1) the particular official's testimony will likely lead to the discovery of admissible

evidence, and (2) is essential to the party's case." *Denver Homeless Out Loud v. Denver, Colorado*, 20-CV-2985-WJM-SKC, 2020 WL 7230641, at *1 (D. Colo. Dec. 8, 2020).

## III. ARGUMENT

Indian Health Service's Director, Roselyn Tso should be deposed to allow full disclosure of relevant information regarding Plaintiffs' constitutional and negligence claims. Defendant United States has the burden of persuasion as the party that invoked the apex doctrine. *See, Naylor Farms, Inc. v. Anadarko OGC Co*., 11-CV-01528-REB-KLM, 2011 WL 2535067, at *2 (D. Colo. June 27, 2011). Defendant United States has failed to explain or show by evidence that the witness have no unique personal knowledge. *See, EchoStar Satellite, LLC v. Splash Media Partners, L.P.*, CIV-A07-CV-02611-PABBNB, 2009 WL 1328226, at *2 (D. Colo. May 11, 2009). Therefore, Director Tso should be deposed because of her unique knowledge which is essential and will likely lead to the discovery of admissible evidence.

### a. Discretionary Function

It is the position of Indian Health Service to determine what are required, non-discretionary functions in Indian Health Service hospitals. Respectfully, that is not the role of the Court. "The conduct of federal employees is generally held to be discretionary unless 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'"[2] If "the employee has no rightful option but to adhere to the directive" established by a federal statute, regulation, or policy, "then there is no discretion in the conduct for the discretionary function exception to protect."[3]

---

[2] *Id.* (quoting Berkovitz, 486 U.S. at 536). See also, e.g., Compart's Boar Store, Inc. v. United States, 829 F.3d 600, 605 (8th Cir. 2016) ("Government employees act with discretion unless they are following a regulation or policy that is 'mandatory and . . . clearly and specifically define[s] what the employees are supposed to do.'" (quoting C.R.S. ex rel. D.B.S. v. United States, 11 F.3d 791, 799 (8th Cir. 1993))).

[3] Berkovitz, 486 U.S. at 536.

The United States Supreme Court has developed a two-prong analysis to determine when the FTCA discretionary function exception applies. *Berkovitz v. United States*, 486 U.S. 531, 536 ( ); *Domme v. United States*, 61 F.3d 787, 789-90 (10th Cir. 1995). First, the allegedly negligent acts or omissions must be discretionary in nature, involving "an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991). Second, the government conduct must be "based on considerations of public policy." *Id.* at 323. In analyzing the actions of Defendants and whether the acts and omissions were discretionary, Roselyn Tso, director of IHS, is the best person to inform the parties whether the acts were discretionary. In applying the first prong of the *Berkovitz* framework, district courts are to inquire into the nature of the conduct. The governmental act or omission complained of is subject to the discretionary function exception only if it involves judgment or choice. The status of the actor is not relevant in determining whether the exception applies: the focus is on the conduct. *Gaubert*, 499 U.S. at 322; *Domme*, 61 F.3d at 789. Conduct that does not involve an element of judgment or choice on the part of the government employee cannot be discretionary conduct. That is because there is no element of judgment or choice if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322, quoting, *Berkovitz*, 486 U.S. at 536. Where a statute, regulation, or policy prescribes or proscribes the conduct at issue, "the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. In this case, the negligent acts and omissions violated requirements which were specific and explicitly mandated by federal law and policy. Therefore, the discretionary function exception does not apply. If the conduct is found to be discretionary, then the district court must go on and determine whether the discretionary choice or judgment is based on considerations of public policy. The government is protected from liability where the action challenged involves a permissible exercise of policy judgment. *Domme*, 61 F.3d

at 790. The question is not the subjective intent of the government agent or employee, but whether the decision is susceptible to a public policy analysis. *Aragon v. United States*, 146 F.3d 819, 827 (10th Cir. 1998). Roselyn Tso is in the ultimate leadership position with Indian Health Services to inform the Court and parties whether a decision is susceptible to a public policy analysis. Neither of the two prongs of the discretionary function analysis is met by the conduct and omissions of the Medical Staff and the Gallup Indian Medical Center.

**b. The Director of Indian Health Services possesses unique knowledge and is responsible for providing preventative, curative, and community healthcare to approximately 2.7 million American Indians and Alaska Natives in hospitals, clinics, and other settings throughout the United States.**

Director Tso is a member of the Navajo tribe and was raised on the Navajo Nation. She took on the position as the Director of the Indian Health Service to help provide care to Native American communities including the Native American community in which GIMC serves. Director Tso, through her position takes part in congressional hearings and has discussions with other leaders including state and tribal representatives to address the issues IHS hospitals face.

> During her confirmation hearing in May, Tso pledged to prioritize patient safety, worker retention, and technology upgrades at aging clinics and hospitals. . . . IHS was set up to begin meeting the federal government's treaty obligations to tribal nations. . . . Ms. Tso was born and raised on the Navajo Nation and understands the health care needs that many first people of this country deal with, Navajo Nation President Jonathan Nez said in a statement. Her work ethic, value system and approach to problem solving demonstrates the resilience of Indigenous peoples and the commitment to combat the systemic inequities that impact tribal nations.[4]

It is necessary that Plaintiffs depose the Director of Indian Health Services Roselyn Tso because she is the leadership/decision maker for IHS requirements at GIMC such as CDC guidelines and GPRA requirements. As the leader, she is directing the conversations around what

[4] https://www.oklahoman.com/story/news/healthcare/2022/09/23/roselyn-tso-confirmed-indian-health-service-director-after-20-month-delay/69511951007/

is being done and what should be done to protect patients and prevents wrongful deaths like that of Nena Charley. Plaintiffs have already deposed the two Defendant nurses and Defendant Dr. Leach in this case. During these depositions there have been many questions about CDC and GPRA requirements, and training on hantavirus that the "lower level" employees cannot answer.

Director Tso is expected to testify to the broader history of medical negligence at GIMC, the rate of hantavirus infections at GIMC, the medical malpractice lawsuit history for GIMC, peer review activities at GIMC or lack of them, hiring practices at GIMC and quality measures in general at IHS hospitals, nationally.

Director Tso has unique information as she has served in various leadership roles at IHS for nearly four decades.

> Ms. Tso began her career with the IHS in 1984. She has served in various roles in the IHS Portland Area, both at the service unit level as the administrative officer for the Yakama Service Unit, and at the area level as the planning and statistical officer, equal employment officer and special assistant to the area director. In 2005, she assumed the role of director for the Portland Area's Office of Tribal and Service Unit Operations, where she was responsible for the implementation of the Indian Self-Determination and Education Act and working directly with tribes.[5]

Further, Director Tso served as the director of the Office of Direct Service and Contracting Tribes at IHS headquarters. Director Tso has unique experience and knowledge that is relevant to Plaintiffs' claims in this case.

**c. The Apex Doctrine does not apply to Director Tso and Plaintiffs must be permitted to depose her regarding the facts surrounding their constitutional claims.**

The director of the Indian Health Service is expected to testify to the broader history of medical negligence at GIMC and facts surrounding Plaintiffs' constitutional claims. The director

[5] https://www.hhs.gov/about/leadership/roselyn-tso.html#:~:text=Roselyn%20Tso%2C%20an%20enrolled%20member,American%20Indians%20and%20Alaska%20Natives

of IHS, as the highest-level official and head policymaker, will be the most knowledgeable person to talk about the following subjects:

1. Allegations of the complaint regarding lack of quality health care being provided to Native people in Indian Health Service hospitals nationally.
2. Data showing the quality-of-care outcomes for IHS's Native patients over the past ten years;
3. Why disparities in health outcome exist for Native patients in IHS hospitals and what needs to be done to improve and standardize the provision of quality healthcare for native patients;
4. Required to understand the prior and current reasons for disparity of quality outcomes for Native people within IHS system of care.

As Plaintiffs' Complaint and the JSR outline, Plaintiffs have broad claims related to the constitutionality of the care provided by IHS to Native American communities. Plaintiffs have stated from the initial drafting of the JSR was completed that they would seek to depose the IHS Director, Roselyn Tso: "Roselyn Tso - director of the Indian Health Service, who is expected to testify to the broader history of medical negligence at GIMC. The mortality rates for individuals with hantavirus at GIMC, the medical malpractice lawsuit history for GIMC, peer review activities at GIMC, or lack of the hiring practices at GIMC. And quality measures in general at IHS hospitals nationally." Defendant attempts to gloss over the constitutional claims that are relevant in this case. This case concerns the negligent treatment provided by GIMC providers but it also considers the broader implications of the healthcare the government provides to Native Americans as well. Director Tso has unique, relevant and discoverable knowledge related to the administrative workings of both the Gallup Indian Medical Center and the Indian Health Service broadly.

Defendant has failed to demonstrate that Director Tso will suffer any "annoyance, embarrassment, oppression, or undue burden or expense" warranting the entry of a protective order under Rule 26(c)(1). The deposition of Director Tso will not pose an undue burden on the Defendant United States. In fact, it is Plaintiffs who will be greatly burdened if they are barred

from taking the deposition of such an important witnesses who has unique knowledge relevant to plaintiff's constitutional claims.

**CONCLUSION**

Director Tso's anticipated testimony is relevant and proportional to the needs of Plaintiffs' case and broader constitutional claims. Director Tso has personal knowledge of the unique clinical and logistical issues specific to GIMC from her role as the director of NAIHS from 2019-2022. Further, Director Tso has unique information as she has served in various leadership roles at IHS for nearly four decades. Plaintiffs have attempted to obtain information specific to their constitutional claims from lower level GIMC employees with no success. The Apex Doctrine does not apply to Director Tso because she has unique personal information essential to Plaintiffs case that can not be obtained from a less burdensome source. Director Tso's testimony will lead to the discovery of admissible evidence that will be essential to Plaintiffs case.

WHEREFORE, Plaintiffs respectfully ask the Court enter an Order to compel Defendant United States to produce Director Tso to be deposed by Plaintiffs.

Respectfully submitted,

*Attorneys for Plaintiffs*

C U R T I S & C O .
215 CENTRAL AVENUE NORTHWEST
THIRD FLOOR
ALBUQUERQUE, NM 87102
T 505-243-2808 F 505-242-0812
lisa@curtislawfirm.org
melanie@curtislawfirm.org

*Electronically signed*
*/s/ Melanie L. Ben*
Lisa K. Curtis
Melanie L. Ben

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of April, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which caused counsel of record to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Melanie L. Ben*
Melanie L. Ben, Esq.