**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

THE ESTATE OF NENA CHARLEY,
by and Through Personal Representative,
TIMOTHY CHARLEY; TIMOTHY
CHARLEY, as parent and next friend of
NILE CHARLEY; and TIMOTHY CHARLEY,
Individually,

Plaintiffs,

vs. No. 1:22-cv-00033 JB/JFR

GALLUP INDIAN MEDICAL CENTER,
DEPARTMENT OF HEALTH AND HUMAN
SERVICES, INDIAN HEALTH SERVICE; THE
UNITED STATES OF AMERICA; ROBERT
LEACH, D.O.; ROBIN RANELL SALES, RN;
AND JOELLE CATHERIN CERO GO, RN,

Defendants.

**DEFENDANT UNITED STATES' MOTION TO COMPEL DISCOVERY AND REQUEST TO FIND WAIVER OF ATTORNEY CLIENT PRIVILEGE**

Defendant United States of America moves to compel Plaintiffs to provide full and complete answers and responses to the United States First Set of Interrogatories and Requests for Production of Documents. Because the Plaintiffs failed to comply with their discovery obligations under the Federal Rule of Civil Procedure, the Court should compel complete responses to the discovery requests and order production of documents and information.[1] Additionally, the United States requests the Court find that there has been a waiver of all confidential communications regarding the same subject matter contained within Mr. Charley's recorded statement.

[1] Pursuant to D.N.M. LR-Civ. 7.1, the United States contacted the parties for their positions. Plaintiffs oppose the motion. The other Defendants do not oppose the motion.

## I. Relevant Background

Plaintiffs' claim Nena Charley was infected with hantavirus and died on May 28, 2019. *See* Plaintiffs' First Amended Complaint to Recover Damages for Wrongful Death and Loss of Consortium Arising from Medical Negligence ("Complaint"), Doc. 63. Plaintiffs claim that in the early morning hours of May 28, 2019, that Ms. Charley went to GIMC and reported she was exposed to mouse droppings. *Id*. ¶ 4. On May 13, 2021, Plaintiffs submitted their SF-95s to Indian Health Services ("IHS") asserting their claims against the United States. A copy of an SF-95 form is attached as **Exhibit A**.[2] As part of their SF-95, Plaintiffs submitted portions of transcribed statements of Tim Charley and other family members. The portion of Tim Charley's statement is contained as part of Exhibit A and contains only the title page and a single page containing transcribed pages 2-5.[3] The rest of the statement was withheld. In his recorded statement, Mr. Charley said he overheard his wife speaking with someone at the hospital, stating "she goes—that's when she told her about the dusty shelves, dusty, and I remember her not saying (inaudible) drops. I heard mass drop—droppings." *Id*.

As part of their initial disclosure, Plaintiffs included the transcribed statements of other family members, but did not include the statement of Tim Charley. *See* Plaintiffs' Initial Disclosures, attached as **Exhibit B**. On February 27, 2023, in preparation of Mr. Charley's deposition, Mr. Checkett asked Plaintiffs' counsel to produce Mr. Charley's entire statement by

---

[2] Plaintiffs filed three separate SF-95 forms-one for Timothy Charley as the representative of the Estate of Nena Charley, one for Timothy Charley in his individual capacity, and one for Timothy Charley as the Parent and Next Friend of Nile Charley. Each SF-95 form attached the same exhibits, including the portion of Mr. Charley's recorded statement. Relevant portions of the SF-95 on behalf of Ms. Charley's Estate is attached as Exhibit A. Plaintiff also incorrectly sent the SF-95s to "IHH a division of USD HHS" instead of "IHS."

[3] According to Plaintiffs' Privilege Log, the recorded statement contains thirteen (13) pages. *See* Privilege Log attached as **Exhibit H.**

February 28, 2023. *See* Email from Mr. Checkett to Plaintiffs' counsel attached as **Exhibit C**. On March 2, 2023, Mr. Checkett again asked for Plaintiffs to produce the full statement. *See* Email exchange between parties, attached as **Exhibit D**. On March 2, 2023, Plaintiffs' counsel stated they would only provide the statement "on the condition that all parties are in agreement that attorney-client privilege has not been waived surrounding the statement." *Id*.

Considering Plaintiffs' refusal to provide the written statement, Defendant United States propounded its First Set of Interrogatories and Requests for Production of Documents on March 3, 2023, Doc. 100. Plaintiffs provided their Answers and Responses to Defendant United States of America's First Set of Interrogatories and Requests for Production ("Discovery Responses") on April 3, 2023, Doc. 107. Plaintiffs' responses were deficient, including their continued failure to provide Tim Charley's statement. *See* relevant portions of Plaintiffs' Discovery Responses, attached as **Exhibit E**. On April 4, 2023, the United States sent a good faith letter setting forth the deficiencies in Plaintiffs' Discovery Responses, a copy of which is attached as **Exhibit F**. Plaintiffs responded to the good faith letter on April 13, 2023, a copy of which is attached as **Exhibit G**. Pursuant to Plaintiffs' written response, some matters were resolved. In a continued effort to resolve the remaining discovery issues, the parties met telephonically on April 19, 2023, but were unable to reach a resolution on Mr. Charley's statement.

Mr. Charley was deposed on May 5, 2023.[4] During his deposition, Mr. Charley was asked what he claims to have overheard when his wife was speaking with a nurse at GIMC. Mr. Charley did not say he overheard his wife report that she was exposed to mouse droppings. His attorney called a break, and upon returning from the break, Mr. Charley changed his testimony and claimed

[4] The United States does not have a copy of Mr. Charley's transcript to attach portions as an exhibit to this Motion. Once the transcript is received, the United States will supplement with relevant portions of the deposition.

that he did hear his wife report exposure to mouse droppings. Subsequently, he testified he looked at the portion of his recorded statement which refreshed his recollection.

## II. STANDARD OF LAW

Under Fed. R. Civ. P. 26(b)(1), a party can obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Velasquez v. Ion Solar, LLC*, No. 20-277 KWR/KK, 2020 WL 5604046, at *1 (D.N.M. Sep. 18, 2020). "Pursuant to Federal Rule of Civil Procedure 33, a party may serve on any other party interrogatories 'relat[ing] to any matter that may be inquired into under Rule 26(b).'" *Id*. (quoting Fed. R. Civ. P. 33(a)(2)). "Similarly, pursuant to Rule 34, a party may request that any other party produce designated documents or electronically stored information in the other party's possession, custody, or control that concern any matter within the scope of Rule 26(b)." *Id*. The party resisting disclosure bears the burden of establishing why it should not be compelled to respond. *See Smith v. Dean*, No. 02-214 RLP/WWD ACE, 2002 WL 35649696, at *1 (D.N.M. Aug. 19, 2002).

## III. Plaintiffs Should be Compelled to Produce Tim Charley's Recorded Statement and Responsive Information as Requested in the United States' Interrogatory No. 6 and Request for Production No. 9

In its Interrogatory No. 6, the United States asked Plaintiffs to "state whether you, your agents, or your attorneys have given or obtained any written or oral statements regarding the allegations raised in the Complaint. If you answer is 'yes,' then please provide the date of each such statement; the name of the person giving and/or receiving the statement; the manner in which the statement was recorded; who was present when the statement was provided, and the general substance of the statement." **Ex. E.** Plaintiff's objected, asserting attorney-client privilege and the work product doctrine. *Id.* Plaintiffs failed to provide a complete response, including failing to

provide information about Tim Charley's statement, identifying who was present when the statement was taken, and the general substance of the statement.

In Request for Production No. 9, the United States asked for copies of "all statements from any person, whether preserved in writing or recorded by tape or by some other form of electronic media, related to any facts relevant to this lawsuit, including but not limited to, any statements taken from Timothy Charley, witnesses identified in Plaintiff's Initial Disclosure or discovery responses, any defendant or its alleged agents or employees, as well as any statements from other parties or eyewitnesses to this incident." *Id.* Plaintiff objected to production of the recorded statement claiming it is "protected by the attorney-client privilege or trial preparation materials/attorney work product that is protected by Fed. R. Civ. P. 26(b)(3)." *Id*. Plaintiffs also produced a privilege log that identified Mr. Charley's statement. Contrary to the objection asserted in response to Interrogatory No. 9, Plaintiffs did not include attorney-client privilege as a basis for withholding the statement on the privilege log. Instead, Plaintiffs stated that the document was "prepared in anticipation of litigation for trial." Ex. H. Additionally, under the "Basis to withhold," Plaintiffs did not assert attorney client privilege, but stated, "Plaintiffs offered to provide the remainder of the statement provided to the United States as part of SF95 requirement with an agreement that there is no waiver of Attorney Client Privilege and the Work Product Doctrine occurred, Defendant Refused. Fed. R. Civ. P. 502." *Id*. Contrary to Plaintiffs' claim, Tim Charley's recorded statement is discoverable since any claim of attorney-client privilege or work product privilege has been waived.

"The party asserting the attorney-client privilege bears the burden of demonstrating that it applies and that it has not been waived." *Anaya v. CBS Broad., Inc.*, No. CIV-06-476 JB/KBM, 2007 WL 2219394, at *4 (D.N.M. Apr. 30, 2007) (J. Browning). "With regard to voluntary waiver

of the work-product protection, 'production of work-product material during discovery waives a work-product objection.'" *Id*. at *6 (D.N.M. Apr. 30, 2007) (citing *In re Qwest Commc'ns Int'l, Inc.,* 450 F.3d 1179, 1186 (10th Cir.2006)). "The Tenth Circuit has also foreclosed abusive offensive use of the work-product doctrine: '[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.'" *Id*. (quoting *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998)).

Rule 502 Fed. R. Evid. governs disclosures of alleged privileged materials in federal proceedings, and states:[5]

> (a) Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver. When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

Under the Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence, it states that "under subdivision (a)(1) the party using an attorney-client communication to its advantage in the litigation has, in so doing, intentionally waived the privilege as to other communications concerning the same subject matter, regardless of the circumstances in which the communication being so used was initially disclosed." No privilege applies to Mr. Charley's

---

[5] "Federal Rule of Evidence 501 provides that privileges in federal-question cases generally are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." *In re Qwest Communications Int'l Inc.*, 450 F.3d at 1184.

statement since Plaintiffs intentionally disclosed a portion of the statement to a federal agency and as part of a federal proceeding.

"The Supreme Court has cautioned that '[t]estimonial exclusionary rules and privileges contravene the fundamental principle that the public ... has a right to every man's evidence.'" *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *Trammel v. United States,* 445 U.S. 40, 50 (1980)). "The Court further has cautioned that such rules and privileges must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* (internal quotations omitted). "Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." *Id*. (quoting *United States v. Bernard,* 877 F.2d 1463, 1465 (10th Cir. 1989)).

Plaintiffs disclosed the portion of Mr. Charley's statement to a federal agency and as part of a federal proceeding. Plaintiffs brought claims against the United States under the FTCA. *See* Complaint, Doc. 63. Prior to filing suit, Mr. Charley's statement was produced to IHS, a division of HHS, as part of the administrative claim process that is required pursuant to the FTCA. 28 U.S.C. § 2675(a); Ex. A. Mr. Charley's statement was used to support Plaintiffs' claims in the administrative process with IHS. As a result, it was disclosed to a federal agency and as part of a federal proceeding. Therefore, Rule 502 applies.

The first element under 502(a) is met since Plaintiffs intentionally disclosed a portion of Tim Charley's statement to the Indian Health Services. "Ordinarily, the voluntary disclosure of attorney-client privileged communications to a third party waives the privilege as to those communications." *In re King's Daughters Health Sys., Inc.*, 31 F.4th 520, 527 (6th Cir. 2022).

*United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). In this case, Plaintiffs knowingly disclosed the portion of Mr. Charley's statement to an agency of the United States. *See* Ex. A. The SF-95 was signed by Plaintiffs' counsel and clearly included Mr. Charley's statement as part of the proof for Plaintiffs' claims. *See Certain Underwriters of Lloyd's v. Old Republic Ins. Co.*, 2015 WL 12748248, at *7 (D.N.M. Aug. 18, 2015) ("Waiver of the attorney-client privilege occurs, *inter alia*, when a party directly relies on an attorney-client communication to advance a claim or defense"). Furthermore, Plaintiffs acknowledged that the disclosure took place, and at no time have claimed it was unintentional. Therefore, the first element is met.

Similarly, the second element has been met. The disclosed portion of the statement contains Mr. Charley speaking about his wife's symptoms and her time at the hospital shortly before her death. *See* Ex. A. Plaintiffs claim that the statements "were taken to preserve the memories close in time of the people who had personal knowledge of the events concerning Nena Charley's hantavirus illness, its course, and the medical care received." Answer to Interrogatory No. 6, Ex. E. As a result, the disclosed portion of Mr. Charley's statement concerns the same subject matter as the undisclosed portion and surrounding communications.

Finally, fairness requires that the entire statement and communications be considered together. Plaintiffs selected a portion of Mr. Charley's statement they used to support their administrative claim. Ex. A. This statement contains the only witness claim that Ms. Charley reported being exposed to mouse droppings during her first visit to GIMC. No other report or record states Ms. Charley reported exposure to mouse droppings during her first visit to GIMC. After using a portion of Mr. Charley's statement to support their claim that GIMC was on notice of Ms. Charley's exposure to mouse droppings, Plaintiffs have improperly refused to provide the rest of the statement. As a result, Plaintiffs have used the disclosed portion as a sword to support

their claims but are now hiding behind privilege claims to withhold the rest of the statement. *See Frontier Ref., Inc*, 136 F.3d 695, 704 (10th Cir. 1998).

Furthermore, during his deposition, Mr. Charley initially testified as to what he heard his wife report during her first visit to GIMC, which did not include a report of exposure to mouse droppings. Plaintiffs' counsel called a break during the deposition, and upon returning from the break, Mr. Charley immediately wanted to change his testimony, claiming he had heard his wife report exposure to mouse droppings. When asked why he changed his testimony, he claimed his recorded statement refreshed his recollection. Fairness requires that Defendants be entitled to see what is contained in the remainder of the statement. Furthermore, fairness requires that communications surrounding the creation and use of the statement be disclosed.

## IV.    The Waiver of Attorney-Client Privilege Includes Communications Regarding Mr. Charley's Recorded Statement

Plaintiffs' waiver of privileges extends to the communications surrounding Mr. Charley's recorded statement as well as communications during his deposition that lead to him changing his testimony. "Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'" *In re Qwest Communications Int'l Inc.*, 450 F.3d at 1185 (quoting *United States v. Ryans,* 903 F.2d 731, 741 n. 13 (10th Cir.1990). "This court has stated, 'the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant.'" *In re Qwest Communications Int'l Inc.*, 450 F.3d at 1185 (quoting *United States v. Ryans,* 903 F.2d 731, 741 n. 13 (10th Cir.1990)). "This Court has recognized that there is substantial case law supporting [the] position that as a matter of law, any voluntary waiver of [ ] confidential communications waives the privilege as to all confidential communications regarding

the same subject matter." *Anaya*, 2007 WL 2219394, at *6 (D.N.M. Apr. 30, 2007) (cases collected) (internal quotations omitted); *see also* Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence ("under subdivision (a)(1) the party using an attorney-client communication to its advantage in the litigation has, in so doing, intentionally waived the privilege as to other communications concerning the same subject matter, regardless of the circumstances in which the communication being so used was initially disclosed"). The waiver extends beyond the statement itself and includes all communications regarding the same subject matter. *In re Qwest Communications Int'l Inc.*, 450 F.3d at 1185; Fed. R. Civ. P. 502(a). Plaintiffs failed to jealously guard the attorney client communication and used it for their own benefit by producing a portion of the statement in their SF-95s. As a result, this Court should find not only a waiver of the statement itself, but communications regarding the statement and related subject matter.

Additionally, there was likely never a basis for Plaintiffs to claim privilege over the statement or related communications. The Tenth Circuit has stated that "confidentiality is key to the privilege, [t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party." *Id*. (internal quotations and citation omitted). The United States asked Plaintiff to identify who was present when recorded statements were taken. Plaintiffs, however, refused to provide this information. *See* Answer to Interrogatory No. 6, Ex. A. There is no basis for asserting attorney-client privilege if third parties were present during alleged attorney-client communications. *See In re Qwest Communications Int'l Inc.*, 450 F.3d at 1185. The portion of Mr. Charley's statement does not specify who was in attendance during his statement. *See* Ex. A. The available evidence, however, shows that third parties were part of meetings and communications between Mr. Charley and his attorneys. In a recorded statement of

Nathan Emerson, he stated, "I wasn't privy to the-the Zoom meeting that was had, that you guys, I guess, had with Tim and the other family members." Statement of Nathan Emerson at 22:19-21, attached as **Exhibit I**.[6] Since third parties were part of the communications with Mr. Charley and his attorneys, there was no basis for privilege.

Additionally, there should be no basis for Plaintiffs to assert attorney-client privilege over the communications that took place during the break at Mr. Charley's deposition. Fed. R. Civ. P. 30(C)(1) states "[t]he examination and cross-examination of a deponent proceed as they would at trial…" In this case, the examination did not proceed as at trial. Mr. Charley was providing testimony when his attorney called a break. After the break, Mr. Charley's testimony changed. "Ordinarily, consultation between counsel and a witness at a deposition raises questions only when the consultation is initiated by counsel." *Okoumou v. Horizon*, 2004 WL 2149118, at *2 (S.D.N.Y. Sept. 23, 2004). Mr. Charley was asked about what was discussed during the break but was told not to answer pursuant to a claim of privilege.

Plaintiffs appear to recognize the fact that their production of a portion of Mr. Charley's statement would lead to a waiver of the attorney client privilege. Interestingly, Plaintiffs have not made an outright refusal to produce the statement. Instead, Plaintiffs have withheld the statement unless and until the Defendants agree that there was no waiver of the attorney-client privilege. *See* Ex. D, F, and H. As shown above, the statement is discoverable since it is not privileged and is relevant to the claims and defenses in this case. Fed. R. Civ. P. 26(b)(1). Plaintiffs are attempting to force the Defendants into agreeing that there was no privilege waiver by withholding clearly discoverable information. This conduct is improper and in violation of the federal rules of procedure. As a result, Plaintiffs should be ordered to provide the recorded statement and there

[6] Both Mr. Charley and Mr. Emerson provided recorded statements on March 5, 2021. As a result, the meeting identified by Mr. Emerson likely took place prior to Mr. Charley's recorded statement.

should be finding that there is a waiver of any claimed privilege for all confidential communications regarding the same subject matter.

## V. Conclusion

The United States respectfully requests the Court enter an order compelling Plaintiff to produce Mr. Charley's complete recorded statement, to fully answer Interrogatory No. 6, to find that there has been a waiver of all confidential communications regarding the same subject matter contained within Mr. Charley's recorded statement, and to allow the Defendants to cross examine Mr. Charley about discussions held during the breaks requested by his attorney at his deposition. The United States seeks any additional relief the Court deems just and fair.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

/s/*Brett C. Eaton 06/07/23*
Brett C. Eaton
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274
Brett.eaton@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 7, 2023, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel to be electronically served as more fully reflected on the Notice of Electronic Filing.

*Filed electronically 6/7/23*
Brett C. Eaton
Assistant United States Attorney



Lisa K. Curtis, J.D.
Laura R. Callanan, J.D., Ph.D.
Julia G. Coulloudon, J.D.
Andre K. Archuleta, J.D.
Joshua M. Curtis, J.D., *of counsel*

May 13, 2021

Via Federal Express
Office of General Counsel
General Law Division
IHH a division of USD HHS
330 C Street SW, Switzer Bldg. Ste 2600
Washington, DC 20201

Re: Administrative Tort Claims of the Estate of Nena Charley, by and through Personal Representative Timothy Charley.

Dear General Counsel:

Enclosed please find the following:

1. Form SF 95 Claim for Damage, Injury, or Death on behalf of the Estate of Nena Charley, inclusive of:
   a. Exhibits A – Summary of Events
   b. List of Medical Providers and Family Members

2. Form SF 95 Claim for Damage, Injury, or Death on behalf of Timothy Charley, Individually, inclusive of:
   a. Exhibits A – Summary of Events
   b. List of Medical Providers and Family Members

3. Form SF 95 Claim for Damage, Injury, or Death on behalf of Timothy Charley, as Parent and Next Friend of Nile Charley, inclusive of:
   a. Exhibits A – Summary of Events
   b. List of Medical Providers and Family Members

4. Relevant Medical Records (on jumpdrive)
5. Relevant Imaging (on CD)
6. Medical Bills
7. Funeral Bills
8. Death Certificate
9. Court Appointment of Personal Representative

2021 MAY 17 PM 1:00

www.curtislawfirm.org
*State Theater Building*--215 Central Ave., NW, Third Floor--Albuquerque, New Mexico 87102
T 505-243-2808 F 505-242-0812

USA EXHIBIT A

If you require anything further, please do not hesitate to contact our office.

Very truly yours,

Laura R. Callanan, Esq.

LKC/LRC/ms

cc: Via Federal Express
Gallup Indian Medical Center
P.O. Box 1337
Gallup, NM 87301

| **CLAIM FOR DAMAGE, INJURY, OR DEATH** | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Office of General Counsel/ General Law Division; IHH a division of USD HHS; 330 C Street SW, Switzer Bldg. Ste. 2600; Washington, DC 20201 | Timothy Charley, as Personal Representative of the Estate of Nena Charley; 12613 State Hwy 264, MM15; Rock Springs, NM 87375 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 07/27/1976 | Widower | 05/28/2019 | A.M and P.M |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See Exhibit A attached hereto

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N/A

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

11. **WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See Exhibit B attached hereto for a list of witnesses, treating physicians, and family members | |

12. (See instructions on reverse). **AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 0.00 | | 15,000,000 | 15,000,000 |

**I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.**

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| [signature] | 505-243-2808 | 5/13/21 |

| **CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM** | **CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS** |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☐ No

N/A

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☐ No

N/A

17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

N/A

19. Do you carry public liability and property damage insurance? ☐ Yes If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☐ No

N/A

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.
B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STATEMENT BY TIM CHARLEY

March 5, 2021

REPORTED BY: Penny E. McAlister, CCR, NM CCR #250
TRATTEL COURT REPORTING & VIDEOGRAPHY
P.O. Box 36297
Albuquerque, New Mexico  87176-6297

(Whereupon Tim Charley was sworn in).

MS. CALLANAN: You go ahead whenever you're ready.

MR. CHARLEY: Maybe a week before she passed, she -- her grandma passed. So she was pretty busy, and my son's summer basketball is about to start, and she was -- she was taking care of another kid that was almost the same age as my son, and she was pretty busy, and maybe a couple days before, she said, "There's a headache that won't go away," and that's when she was working for that -- that store.

She -- she came home and tell me, "It's so dusty, so dirty, and there is mouse poops everywhere," and they -- she asked for a facemask, but the -- the manager there stopped -- stopped them from working, but that facemask never came. So they told them, "You guys still finish your work."

So she was busy. She -- she didn't really need to work, but she wanted -- we were about to leave to Disneyland probably a week before the -- a week after. So Memorial Day weekend came. We went to Albuquerque. We came back, and Sunday, the first the evening, she didn't want to eat.

So Monday came. She -- she don't want to take aspirin. She never does, and we kept telling her, "Take

angle aspirin." She goes, "I'll be okay. I'll be all right. I just need to rest." So I stayed with her, my son and -- I don't remember that guy's name. They went up to her -- her grandma's, and they stayed up there for a little bit, and I just watched her, and she usually sleeps when she has a little fever.

So I made her, her food. I mean, I made her favorite food, and she -- it surprised. She didn't eat. So I was thinking, "You got to eat. You got to eat something." She goes, "I'll be all right." So she just nibbled, got back up, went in her room.

By that, it was towards the evening, and I was ready -- getting ready for bed, and she was getting ready. I go, "What are you doing?" She says, "I'm going to go up to the hospital," and she goes, "You got to work tomorrow. You better sleep." So I go, "No. I'm not -- I can't do that."

So I got ready. That was like about maybe 10:00, 10:30 maybe. So we -- she was talking to me all the way over there, stopped, walked in, and we signed in. I noticed this -- this lady standing there, joking with another nurse, and there is only one people ahead of us.

There was nobody there, but for some reason, it took them forever for them to see us -- see her, and the waiting room was kind of right next to that -- the first --

the first -- the first place they see her is to weigh her, take her temp, blood pressure -- or that blood pressure they take on their arm, they did that, and it seems like, for me, it's like kind of quick for her to walk back out from there.

It was like I can -- I can hear what they were talking -- what they were saying. They asked her, "So why did you come in?" So she was telling her, "I have a headache," and I think she goes, "I'm starting to get chills," and -- but that lady asked her, "Well, what's been going on?" And she goes -- that's when she told her about the dusty shelves, dusty, and I remember her not saying (inaudible) drops. I heard mass drop- -- droppings.

That's what I heard, and so she came out right away, sat down, and then they called the other people that was ahead of us into another room. That's when they were asking me if I seen that doctor. I didn't see him, because it was in the next area, next room.

They called her, and I asked her, "Do you want me to go with you?" And she goes, "No. I think they're just going to give me a shot." She goes, "It's going to be on the top of my butt." She goes like that, and she's smiling.

So all right. So I sat there, and it was kind of quick. I was looking at my phone, and she came out from a

different door, and she goes, "Tim," and I look down that way, and I go, "You're done?" She goes, "Yeah, I'm done." So I didn't think about that 15 minutes until she -- someone brought it up, saying that she didn't do that 15 minutes afterwards, so --

MS. CALLANAN: I'm sorry, they didn't do the weight for 15 minutes?

MR. CHARLEY: I don't think so. I don't think so, because it was kind of quick, and she was telling me that it's just another severe flu that's been going around at that time, and they didn't -- I don't know what they did to her, but I don't think they -- they just gave her a shot, and I don't remember if they gave her medicine, but I'd kind of have to look for that one.

So she's -- she's happy that night, drove home talking to me, what we're going to do the next day. I think my son was about to have a tournament, so she was planning ahead of time. You know, we walked in, and the food I made for her, we brought it back out, and she ate some of that.

She was laughing, and we went to bed, and maybe around about 6:00 o'clock, she woke -- I woke up, and she was sitting at the edge of the bed coughing. She goes, "I don't know where this cough came from, but I'm starting to cough." "So how do you feel?" And she goes, "I feel -- I

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

THE ESTATE OF NENA CHARLEY,
by and through Personal Representative,
TIMOTHY CHARLEY, TIMOTHY
CHARLEY, as parent and next friend of
NILE CHARLEY, and TIMOTHY CHARLEY,
Individually,

Plaintiffs,

vs. Cause No. 1:22-cv-00033-JB-JFR

GALLUP INDIAN MEDICAL CENTER,
DEPARTMENT OF HEALTH AND HUMAN
SERVICES, INDIAN HEALTH SERVICE, THE
UNITED STATES OF AMERICA, ROBERT
LEACH, D.O., ROBIN RANELL SALES, R.N.,
AND JOELLE CATHERIN CERO GO, R.N.,

Defendants.

---

## PLAINTIFFS' INITIAL DISCLOSURES

---

COME NOW Plaintiffs, by and through their attorneys of record, Curtis & Co. Law Firm, and pursuant to Fed. R. Civ. P. 26(a)(1), offer their Initial Disclosures, as follows:

A. **Individuals Likely to Have Discoverable Information:**

1. Timothy Charley, c/o Lisa K. Curtis, Esq, Curtis & Co. Law Firm 215 Central Ave NW, Suite 300 Albuquerque, NM 87102 (505) 243-2808, is expected to have discoverable information regarding details concerning this matter and the impact the sudden loss of his wife was to him and the community.

2. Nile Charley, c/o Lisa K. Curtis, Esq, Curtis & Co. Law Firm 215 Central Ave NW, Suite 300 Albuquerque, NM 87102 (505) 243-2808, is expected to have discoverable information

USA EXHIBIT B

23. Any witnesses identified through remaining discovery.

24. Foundational witnesses as necessary as well as witnesses to authenticate documents.

25. Any witnesses who are deposed or will be deposed.

26. Any witness necessary for rebuttal.

27. Any witness identified by Defendants.

B.   **Plaintiffs' Documents that May be Relevant:**

1.   Nena Charley's medical records for treatment received as a result of the incident at issue.  (Exhibit "1");

2.   Nena Charley's medical bills for treatment received as a result of the incident at issue.  (Exhibit "2");

3.   Death Certificate for Nena Charley (Exhibit "3");

4.   GIMC policies and procedures for the Emergency Room, including but not limited to triage, nursing protocols, staffing policies, patient safety policies, sentinel event policies;

5.   Personnel/Credentialing/Licensure files including, but not limited to application for staff privileges, job descriptions, contracts with GIMC for Robin Sales, RN Joelle Go, RN, and Defendant Robert Leach, DO;

6.   Any reports and/or statements regarding the May 28, 2019 incident at GIMC;

7.   Department of Health & Human Services, Office of Environmental Health-Homesite Environmental Assessment (Exhibit "4");

8.   Funeral Billing (Exhibit "5");

9.   UNMH Imaging (Exhibit "6");

10.   Med Star Ambulance records (Exhibit "7");

11.   UNMH Lifeguard Statement of Medical Necessity (Exhibit "8")

12.   All documents identified by other parties to this case and any documents identified through discovery.

13.   Witness Statements from the following family members (Exhibit "9"):

       a.    Janette Pablo
       b.    Duane Gonzales
       c.    Nalmerthan Pablo
       d.    Nathan Emerson
       e.    Nyla Gonzales
       f.    Ned Pablo
       g.    Neil Pablo

14. Nmhealth.org "Stay in the Know, Latest News" (Exhibit "10")

15. Preliminary Expert Report of Bruce Warren Polsky, M.D. (Exhibit "11")

16. Order for Appointment of Personal Representative to Pursue Wrongful Death Claim in Accordance with NMSA 1978 §41-2-1 et seq. (Exhibit "12")

17. Attachments A&B to Plaintiffs' SF95 (Exhibit "13")

18. Robert Leach, D.O.'s deposition in the matter of *The Estate of Rose Sky Tolbert, et al. v. The United States of America; Civil No. 1:19-CV-00830-JB/LF* (Exhibit "14")

19. *The Estate of Rose Sky Tolbert, et al. v. The United States of America; Civil No. 1:19-CV-00830-JB/LF* Defendant United States of America's Answers and Responses to Plaintiff Estate of Rose Sky Tolbert's First Set of Interrogatories and Requests for Production Including the Exhibits (Exhibit "15")

20. *The Estate of Rose Sky Tolbert, et al. v. The United States of America; Civil No. 1:19-CV-00830-JB/LF* Defendant United States of America's Responses to Plaintiff Estate of Rose Sky Tolbert's Second Set of Requests for Production Including the Exhibits (Exhibit "16")

C.    **Computation of Damages:**

Plaintiffs' damages are not subject to close calculation at this time. The damages are not subject to exact mathematical reduction, but include damages for medical expenses, non-medical expenses, emotional pain and suffering/emotional distress, loss of enjoyment of life, the value of life itself, and all costs related to those damages, and loss of consortium damages.

| | |
|---|---|
| Medical Expenses for UNMH:<br>(awaiting medical bills from GIMC) | $ 67,795.47 |
| Value of Life Itself, Loss of Enjoyment of Life Damages<br>(These damages require expert testimony by Plaintiffs' expert) | $15,000,000.00 |
| Funeral Expenses | $ 8,741.65 |
| Loss of Consortium | $ 4,000,000.00 |
| TOTAL | $ 19,076,537.12 |

28.    **Insurance Agreement:**

1. Plaintiffs have received a Redacted copy of the Nurse Joelle Cero Go's insurance

policy (Go Initial Discl. 0001-0034).

2. Any insurance policies later disclosed by any Defendants.

Respectfully submitted,

*Attorneys for Plaintiffs*
CURTIS & CO.
215 CENTRAL AVENUE NORTHWEST
THIRD FLOOR
ALBUQUERQUE, NM 87102
T  505-243-2808     F  505-242-0812
lisa@curtislawfirm.org
melanie@curtislawfirm.org

*Electronically signed*
*/s/ Melanie L. Ben*
Lisa K. Curtis
Melanie L. Ben

| | |
|---|---|
| **From:** | John Checkett |
| **To:** | "Ashley Rose Lopez"; Denise Chanez; Eaton, Brett (USANM) |
| **Cc:** | Lisa Curtis; Melanie Ben; Brenda Saiz; Sandra Gallegos; Isabel Blea; Tapia, Diane (USANM); James Bennett; Shannon Sherrell; dchanez@sclawnm.com; "ssherrell@sclawnm.com"; "bsaiz@sclawnm.com"; "iblea@sclawnm.com"; "lphillips@sclawnm.com"; Lisa King |
| **Subject:** | [EXTERNAL] RE: 22-cv-00033-JB-JFR; Charley v. United States |
| **Date:** | Monday, February 27, 2023 6:23:40 PM |
| **Attachments:** | image001.png |

Lisa & Melanie,

I apologize if I missed it, but I do not have the entire transcribed statement of Mr. Charley – I located a condensed transcript of only 5 pages. Please produce his entire statement tomorrow (or point out where you produced it). Thank you again for your help. John

**John J. Checkett**

**The Checkett Law Firm, PLLC**

**6829 North 12th Street**
**Phoenix, Arizona 85014**
Phone (480) 272-9100
Direct (480) 272-9036
Fax (480) 272-9039
E-mail jcheckett@checkett-law.com
Web www.checkett-law.com

**Hard copies of documents provided with this email will NOT be provided unless specifically requested from the assigned paralegal on this matter.**

This electronic mail transmission contains information from The Checkett Law Firm, PLLC that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 272-9100. Thank you.

---

**From:** Ashley Rose Lopez <ashley@curtislawfirm.org>
**Sent:** Monday, February 27, 2023 4:57 PM

USA EXHIBIT C

| | |
|---|---|
| **From:** | John Checkett |
| **To:** | "Melanie Ben"; Eaton, Brett (USANM); Denise Chanez; Lisa Curtis |
| **Cc:** | Ashley Rose Lopez; Tapia, Diane (USANM); James Bennett; Shannon Sherrell; Brenda Saiz; Isabel Blea; Louise Phillips; Lisa King |
| **Subject:** | [EXTERNAL] RE: 22-cv-00033-JB-JFR; Charley v. United States - DEPOS TODAY |
| **Date:** | Thursday, March 2, 2023 4:08:35 PM |
| **Attachments:** | image005.png<br>image006.png<br>image001.png |

Will do.

To be clear, I am not waiving the opportunity to take Mr. Charley's deposition and still plan to take his deposition once rescheduled.

The reason for the cancellation is that Mr. Charley's full transcribed statement was never produced by Plaintiff (we still do not have the full statement as of the Thursday afternoon before his Monday deposition) and at this time you wish for us to agree that any such statement is protected by attorney-client. Plus, I have no idea if his unproduced complete statement, which was withheld from Plaintiff's disclosure, contains issues which I need to investigate before Mr. Charley's deposition.

I think all the parties work together for any deposition cancellation which do not foreclose a future deposition. I had no problem when your office cancelled the deposition of Dr. Iralu set for 2/27/2023 at 1 p.m. at 10:54 a.m. that same day. I wanted to give Mr. Charley sufficient notice given the issue with his statement. I appreciate the same cooperation in resetting Mr. Charley's deposition.

I will circle back around with you after speaking with my client about the question you raised on the attorney-client issue. John

**John J. Checkett**

**The Checkett Law Firm, PLLC**

**6829 North 12th Street**
**Phoenix, Arizona 85014**
Phone (480) 272-9100
Direct (480) 272-9036
Fax (480) 272-9039
E-mail jcheckett@checkett-law.com
Web www.checkett-law.com

**Hard copies of documents provided with this email will NOT be provided unless specifically requested from the assigned paralegal on this matter.**

This electronic mail transmission contains information from The Checkett Law Firm, PLLC that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not

USA EXHIBIT D

the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 272-9100.  Thank you.

---

**From:** Melanie Ben <Melanie@curtislawfirm.org>
**Sent:** Thursday, March 2, 2023 3:18 PM
**To:** Eaton, Brett (USANM) <Brett.Eaton@usdoj.gov>; Denise Chanez <DChanez@sclawnm.com>; John Checkett <JCheckett@checkett-law.com>; Lisa Curtis <lisa@curtislawfirm.org>
**Cc:** Ashley Rose Lopez <ashley@curtislawfirm.org>; Tapia, Diane (USANM) <Diane.Tapia@usdoj.gov>; James Bennett <JBennett@checkett-law.com>; Shannon Sherrell <ssherrell@sclawnm.com>; Brenda Saiz <bsaiz@sclawnm.com>; Isabel Blea <iblea@sclawnm.com>; Louise Phillips <lphillips@sclawnm.com>; Lisa King <LKing@checkett-law.com>
**Subject:** RE: 22-cv-00033-JB-JFR; Charley v. United States - DEPOS TODAY

Counsel, this is your choice to take Mr. Charley's deposition or not. Please send notice to vacate. Thank you. -Melanie

CURTIS & CO.
Attorneys and Counselors at Law
215 CENTRAL AVENUE NORTHWEST
THIRD FLOOR
ALBUQUERQUE, NM 87102
T  505-243-2808      F  505-242-0812
melanie@curtislawfirm.org

Melanie L. Ben, JD

To effectuate complete electronic service of any document to counsel at Curtis & Co. Law Firm please copy all of the following as recipient: FILING@CURTISLAWFIRM.ORG

This message and any attached documents are intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or use this information.  If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately by reply or by telephone at 505-243-2808.

---

**From:** Eaton, Brett (USANM) <Brett.Eaton@usdoj.gov>
**Sent:** Thursday, March 2, 2023 2:54 PM
**To:** Denise Chanez <DChanez@sclawnm.com>; John Checkett <JCheckett@checkett-law.com>; Melanie Ben <Melanie@curtislawfirm.org>; Lisa Curtis <lisa@curtislawfirm.org>
**Cc:** Ashley Rose Lopez <ashley@curtislawfirm.org>; Tapia, Diane (USANM) <Diane.Tapia@usdoj.gov>; James Bennett <JBennett@checkett-law.com>; Shannon Sherrell <ssherrell@sclawnm.com>; Brenda Saiz <bsaiz@sclawnm.com>; Isabel Blea <iblea@sclawnm.com>; Louise Phillips <lphillips@sclawnm.com>; Lisa King <LKing@checkett-law.com>
**Subject:** RE: 22-cv-00033-JB-JFR; Charley v. United States - DEPOS TODAY

Good afternoon.

I agree that it makes sense vacate Mr. Charley's deposition.

Thank you,

---

**From:** Denise Chanez <DChanez@sclawnm.com>
**Sent:** Thursday, March 2, 2023 2:45 PM
**To:** John Checkett <JCheckett@checkett-law.com>; 'Melanie Ben' <Melanie@curtislawfirm.org>; Lisa Curtis <lisa@curtislawfirm.org>; Eaton, Brett (USANM) <BEaton@usa.doj.gov>
**Cc:** Ashley Rose Lopez <ashley@curtislawfirm.org>; Tapia, Diane (USANM) <DTapia@usa.doj.gov>; James Bennett <JBennett@checkett-law.com>; Shannon Sherrell <ssherrell@sclawnm.com>; Brenda Saiz <bsaiz@sclawnm.com>; Isabel Blea <iblea@sclawnm.com>; Louise Phillips <lphillips@sclawnm.com>; Lisa King <LKing@checkett-law.com>
**Subject:** [EXTERNAL] RE: 22-cv-00033-JB-JFR; Charley v. United States - DEPOS TODAY

I agree with John. I think it makes sense to vacate Mr. Charley's deposition while we sort out the issues surrounding Mr. Charley's statement, as well as any others that may exist. Thank you!

Denise

---

**From:** John Checkett <JCheckett@checkett-law.com>
**Sent:** Thursday, March 2, 2023 2:34 PM
**To:** 'Melanie Ben' <Melanie@curtislawfirm.org>; Lisa Curtis <lisa@curtislawfirm.org>; Eaton, Brett (USANM) <Brett.Eaton@usdoj.gov>; Denise Chanez <DChanez@sclawnm.com>
**Cc:** Ashley Rose Lopez <ashley@curtislawfirm.org>; Tapia, Diane (USANM) <Diane.Tapia@usdoj.gov>; James Bennett <JBennett@checkett-law.com>; Denise Chanez <DChanez@sclawnm.com>; Shannon Sherrell <ssherrell@sclawnm.com>; Brenda Saiz <bsaiz@sclawnm.com>; Isabel Blea <iblea@sclawnm.com>; Louise Phillips <lphillips@sclawnm.com>; Lisa King <LKing@checkett-law.com>
**Subject:** RE: 22-cv-00033-JB-JFR; Charley v. United States - DEPOS TODAY

Melanie,

I would need to run that issue by my client before responding and I will not have the chance to do so before Monday's deposition (as it is the Thursday before his Monday deposition). We will need to reset Mr. Charley's deposition on Monday to a reasonable time in the near future.

Given the presence of a transcribed statement by Mr. Charley within Plaintiff's possession which was not produced or referenced by Plaintiff's disclosure before now, I would like to find out about the existence of any other witness statements or similar items prior to Mr. Charley's rescheduled deposition.

There also may be items in his statement that prompt additional discovery which needs to occur before his deposition.

I want to avoid any inconvenience to Mr. Charley in deposing him only once.

I would ask the other parties to confirm the cancellation of Mr. Charley's deposition for next Monday based on the above. John

**John J. Checkett**

# The Checkett Law Firm, PLLC

**6829 North 12th Street**
**Phoenix, Arizona 85014**
Phone (480) 272-9100
Direct (480) 272-9036
Fax (480) 272-9039
E-mail jcheckett@checkett-law.com
Web www.checkett-law.com

**Hard copies of documents provided with this email will NOT be provided unless specifically requested from the assigned paralegal on this matter.**

This electronic mail transmission contains information from The Checkett Law Firm, PLLC that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 272-9100. Thank you.

---

**From:** Melanie Ben <Melanie@curtislawfirm.org>
**Sent:** Thursday, March 2, 2023 12:42 PM
**To:** John Checkett <JCheckett@checkett-law.com>; Lisa Curtis <lisa@curtislawfirm.org>; Eaton, Brett (USANM) <Brett.Eaton@usdoj.gov>; dchanez@sclawnm.com
**Cc:** Ashley Rose Lopez <ashley@curtislawfirm.org>; Tapia, Diane (USANM) <Diane.Tapia@usdoj.gov>; James Bennett <JBennett@checkett-law.com>; dchanez@sclawnm.com; ssherrell@sclawnm.com; bsaiz@sclawnm.com; iblea@sclawnm.com; lphillips@sclawnm.com; Lisa King <LKing@checkett-law.com>
**Subject:** RE: 22-cv-00033-JB-JFR; Charley v. United States - DEPOS TODAY

Counsel,

We will provide Mr. Charley’s statement on the condition that all parties are in agreement that attorney-client privilege has not been waived surrounding the statement. Please provide your response in this email. Thank you.

Melanie

CURTIS & CO.

Attorneys and Counselors at Law
215 CENTRAL AVENUE NORTHWEST
THIRD FLOOR
ALBUQUERQUE, NM 87102
T 505-243-2808 F 505-242-0812
melanie@curtislawfirm.org

Melanie L. Ben, JD

To effectuate complete electronic service of any document to counsel at Curtis & Co. Law Firm please copy all of the following as recipient: FILING@CURTISLAWFIRM.ORG

This message and any attached documents are intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or use this information. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately by reply or by telephone at 505-243-2808.

---

**From:** John Checkett <JCheckett@checkett-law.com>
**Sent:** Thursday, March 2, 2023 11:18 AM
**To:** Lisa Curtis <lisa@curtislawfirm.org>; Eaton, Brett (USANM) <Brett.Eaton@usdoj.gov>
**Cc:** Ashley Rose Lopez <ashley@curtislawfirm.org>; Melanie Ben <Melanie@curtislawfirm.org>; Tapia, Diane (USANM) <Diane.Tapia@usdoj.gov>; James Bennett <JBennett@checkett-law.com>; Shannon Sherrell <SSherrell@rodey.com>; dchanez@sclawnm.com; ssherrell@sclawnm.com; bsaiz@sclawnm.com; iblea@sclawnm.com; lphillips@sclawnm.com; dchanez@sclawnm.com; Lisa King <LKing@checkett-law.com>
**Subject:** RE: 22-cv-00033-JB-JFR; Charley v. United States - DEPOS TODAY

Lisa & Melanie,
I did not see that your client disclosed a statement from Mr. Charley but from others.

PC > share (\\phxsbs) (S:) > Matters > Charley v. Sales 68.007 > 26.1 > Plnt > IDS > Exhibit 9- Witness Statements

| Name | Date modified | Type | Size |
|---|---|---|---|
| Emerson, Nathan (cond) | 7/7/2022 3:27 PM | PDF Document | 227 KB |
| Gonzales, Duane (cond) | 7/7/2022 3:27 PM | PDF Document | 217 KB |
| Gonzales, Nyla (cond) | 7/7/2022 3:27 PM | PDF Document | 246 KB |
| Pablo, Jeanette (cond) | 7/7/2022 3:27 PM | PDF Document | 218 KB |
| Pablo, Nalmerthan (cond) | 7/7/2022 3:27 PM | PDF Document | 281 KB |
| Pablo, Ned (cond) | 7/7/2022 3:27 PM | PDF Document | 204 KB |
| Pablo, Neil (cond) | 7/7/2022 3:27 PM | PDF Document | 235 KB |

The only place I found any reference to a statement from Mr. Charley was in co-defendant USA/GIMC's disclosure of the SF-95 material where only a partial statement of Mr. Charley was provided to the USA. See the attached.

As our afternoon deposition cancelled today and Mr. Charley's deposition is set for next Monday, please forward a copy of Mr. Charley's entire statement to everyone today. If there is a problem with forwarding that statement today, please let me know. I appreciate your help in advance.

In the meantime, please copy my paralegal Lisa King on all emails as I will not respond otherwise (as Lisa handles all things on the case). John

**John J. Checkett**
**The Checkett Law Firm, PLLC**
**6829 North 12th Street**
**Phoenix, Arizona 85014**
Phone (480) 272-9100
Direct (480) 272-9036
Fax (480) 272-9039
E-mail jcheckett@checkett-law.com
Web www.checkett-law.com

**Hard copies of documents provided with this email will NOT be provided unless specifically requested from the assigned paralegal on this matter.**

This electronic mail transmission contains information from The Checkett Law Firm, PLLC that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 272-9100. Thank you.

---

**From:** Lisa Curtis <lisa@curtislawfirm.org>
**Sent:** Thursday, March 2, 2023 8:35 AM
**To:** Eaton, Brett (USANM) <Brett.Eaton@usdoj.gov>
**Cc:** Ashley Rose Lopez <ashley@curtislawfirm.org>; Denise Chanez <DChanez@rodey.com>; Melanie Ben <Melanie@curtislawfirm.org>; Brenda Saiz <Bsaiz@rodey.com>; Sandra Gallegos <SGallegos@rodey.com>; Isabel Blea <IBlea@rodey.com>; Tapia, Diane (USANM) <Diane.Tapia@usdoj.gov>; John Checkett <JCheckett@checkett-law.com>; James Bennett <JBennett@checkett-law.com>; Shannon Sherrell <SSherrell@rodey.com>; dchanez@sclawnm.com; ssherrell@sclawnm.com; bsaiz@sclawnm.com; iblea@sclawnm.com; lphillips@sclawnm.com
**Subject:** Re: 22-cv-00033-JB-JFR; Charley v. United States - DEPOS TODAY

Thanks

Lisa Curtis

On Mar 2, 2023, at 7:45 AM, Eaton, Brett (USANM) <Brett.Eaton@usdoj.gov> wrote:

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

THE ESTATE OF NENA CHARLEY, by and through Personal Representative, TIMOTHY CHARLEY, TIMOTHY CHARLEY, as parent and next friend of Nile Charley, and TIMOTHY CHARLEY, Individually,

Plaintiffs,

v. Civ. No. 1:22-cv-00033-JB-JFR

THE UNITED STATES OF AMERICA, ROBIN RANELL SALES, R.N., JOELLE CATHERIN CERO GO, R.N., AB STAFFING SOLUTIONS, LLC, a Foreign Corporation, NEXT MEDICAL STAFFING, a Foreign Corporation, and JOHN or JANE DOE Corporation,

Defendants.

**PLAINTIFFS' ANSWERS AND RESPONSES TO DEFENDANT THE UNITED STATES OF AMERICA'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

COME NOW Plaintiffs, by and through their attorneys of record, Curtis & Co. Law Firm (Lisa K. Curtis, Esq. and Melanie L. Ben, Esq.) and hereby provide the following Answers and Responses to Defendant United States of America's First Set of Interrogatories and Requests for Production to Plaintiffs as follows:

**INTERROGATORIES**

**INTERROGATORY NO. 1:** Please identify any and all individuals who assisted or participated in answering these Interrogatories and Requests for Production. For each such individual, please include their full name, professional position, employer, business address, and business telephone number.

USA EXHIBIT E

**ANSWER:** Walmart Supercenter, 1650 W. Maloney Ave, Gallup, NM 87301, the dates of employment are unknown but was employed there for approximately 20 years; Assistant Manager; Wage: about $18/hour. Mrs. Charley left her job at Walmart to take care of her mother. Name and address of Mrs. Charley's supervisor is unknown by Plaintiff. To the best of Plaintiff's knowledge Mrs. Charley's supervisor's name was Vicky. Set and Service Resources (SASR), 5400 Glenwood Ave, Third Floor, Suite 310, Raleigh, NC 27612, May 2019, Plaintiff was a Remodel crew member, Mrs. Charley took shelves and other types of infrastructure apart to clean them thoroughly. Wage is unknown. Mrs. Charley left for reasons listed in Plaintiffs' Complaint. To the best of Plaintiff's knowledge Mrs. Charley's supervisor's name was Carolyn.

**INTERROGATORY NO. 4:** If Ms. Charley was ever a party to a civil lawsuit, for each and every matter, please state the following:

a. The name of all parties to the lawsuit;

b. The general nature of the lawsuit;

c. The court and docket number, including the county and state in which the case was filed;

d. The present status of the case; and

e. The general nature and the outcome of the lawsuit.

**ANSWER:** Objection. This Interrogatory is overly broad and seeks information irrelevant to the claims or defenses in this matter. This Interrogatory is burdensome, oppressive, and harassing in nature. Additionally, any responsive information is publicly available to Defendant. Without waiving said objection, none.

**INTERROGATORY NO. 5:** Please provide a list and description of each exhibit that you intend to offer in support of your claims at the trial of this matter.

**ANSWER:** It is unknown at this time what documents will be relied upon at trial. However, it is assumed the medical records, medical bills, policies and procedures from the hospital, funeral bills, photographs, and prior produced materials may be used. This answer will be supplemented in accordance with the Federal Rules of Civil Procedure and the Court's scheduling order.

**INTERROGATORY NO. 6:** Please state whether you, your agents, or your attorneys have given or obtained any written or oral statements regarding the allegations raised in the Complaint. If your answer is "yes," then please provide the date of each such statement; the name of the person giving and/or receiving the statement; the manner in which the statement was recorded; who was present when the statement was provided, and the general substance of the statement.

**ANSWER:** Objection. Plaintiff objects to this Interrogatory in that it seeks to discovery information that is protected by the attorney client privilege or work product doctrine. See Plaintiff's privilege log attached hereto as Exhibit "4" in the following Box Link: https://app.box.com/s/1l4ap4w6utlemsjw6uecc70rdu8h86e2. Without waiving said objection, please see Mrs. Charley's medical records attached as Exhibit "1" to Plaintiffs' Initial Disclosures. Oral statements were taken from Ned Pablo, Jeanette Pablo, Neil Pablo, Duane Gonzales, and Nyla Gonzales on March 4, 2021; Emerson Nathan and Nalmerthan Pablo's statements were taken on March 5, 2021, which Plaintiffs' counsel had transcribed by Trattel Court Reporting and have produced in response to Defendants' Requests for Production. The statements were taken to preserve the memories close in time of the people who had personal knowledge of the events concerning Nena Charley's hantavirus illness, its course, and the medical care she received.

**INTERROGATORY NO. 7:** Please state the names and addresses of any persons, including but not limited to family members, friends, acquaintances, doctors, nurses, or other health care providers, whom you believe to have, or who purport to have, any knowledge or information pertaining to the circumstances of the incident at issue and the allegations in your Amended Complaint. For each such person, please state, as far as you know, the nature of such knowledge or information.

**ANSWER:** Objection. Plaintiff objects to this Interrogatory in that it seeks to discover information that is protected by the attorney client privilege or work product doctrine.

Without waiving said objection, please see Plaintiffs' Answer to Interrogatory Nos. 2, 6, and Plaintiff's medical records as Exhibit "1" to Plaintiffs' Initial Disclosures. Please also see the depositions of Defendants Leach, Go and Sales, and IHS Investigator Elvina Joe-Clark. The CEO, CNO and CMO of the GIMC are expected to have information about the history and training surrounding hantavirus, which is endemic to Gallup and the Navajo Nation, as is Dr. Jonathan Iralu, the infectious disease physician for GIMC. IHS Director Roslyn Tso is expected to explain the Federal Government's requirements for GIMC and its special designation concerning hantavirus with the related required procedures that must be followed by GIMC for the care of the Native people who earned quality medical care through Treaty with the United States Government, but who have instead lived with the substandard care violating the treaties, laws, policies, regulations and procedures that IHS is bound to follow. There may be other witnesses whose names and positions or contributing testimony are yet unknown, but are assumed to be discovered through the process of this suit.

**INTERROGATORY NO. 8:** Please identify each health care provider (including those for psychological or psychiatric care) Ms. Charley saw for any reason between 2014 and 2019. For each such provider identified, please describe the date of treatment, the treatment provided, and the reason for each such visit.

documents evidencing other cases in which the expert has testified by deposition or at trial in the last four (4) years; all textbooks, treatises, articles and publications authored by the expert in the last ten (10) years; all communications between any testifying expert and (1) another testifying or consulting expert, or (2) counsel or counsel's staff in this case; all billing records relating to any work performed in this case; and the expert's curriculum vitae.

**RESPONSE:** Objection. Plaintiff has not determined who it will call to testify as experts at this time. This Response will be supplemented in accordance with the Federal Rules of Civil Procedure, the Local Rules, and deadlines imposed by the Court. Subject to and without waiving said objections, please see the Preliminary Expert Report of Infectious Disease expert, Bruce Warren Polsky, MD as Exhibit "11" to Plaintiffs' Initial Disclosures; his CV is attached as Exhibit "1" in the following Box Link: https://app.box.com/s/1l4ap4w6utlemsjw6uecc70rdu8h86e2. Dr. Polsky has been paid $4,200 and a list of his last four years of testimony is attached as Exhibit "2" in the following Box Link: https://app.box.com/s/1l4ap4w6utlemsjw6uecc70rdu8h86e2

**REQUEST FOR PRODUCTION NO. 9:** All statements from any person, whether preserved in writing or recorded by tape or by some other form of electronic media, related to any facts relevant to this lawsuit, including but not limited to, any statements taken from Timothy Charley, witnesses identified in Plaintiff's Initial Disclosure or discovery responses, any defendant or its alleged agents or employees, as well as any statements from other parties or eyewitnesses to this incident.

**RESPONSE:** Objection. This Interrogatory seeks information protected by the attorney-client privilege or trial preparation materials / attorney work product that is protected by Fed.R.Civ.P. 26(b)(3), and the requested information will not be provided. See Plaintiffs' Privilege Log as Exhibit "4" in the following Box Link: https://app.box.com/s/1l4ap4w6utlemsjw6uecc70rdu8h86e2

Subject to and without waiving said objections please see Exhibit "9" in Plaintiffs' Initial Disclosures.

**REQUEST FOR PRODUCTION NO. 10:** Please produce all documents, materials, records, or tangible items of any sort that you intend to rely upon to support your claims for damages in this case.

**RESPONSE:** Discovery is ongoing and Plaintiffs have requested the depositions of witnesses which have not been taken yet. At this time, please see all the documents produced in Plaintiffs' initial disclosures and documents produced in Defendants' initial disclosures.

Without waiving said objection, please see Plaintiffs' Initial Disclosure Exhibits stated hereof and the following box link: https://app.box.com/s/1l4ap4w6utlemsjw6uecc70rdu8h86e2



**U.S. Department of Justice**

*United States Attorney*
*District of New Mexico*

*P.O. Box 607*
*Albuquerque, NM 87103*

*Phone: (505) 346-7274*
*Fax: (505) 346-7296*

April 4, 2023

***Via Electronic Mail***
Lisa K. Curtis
Melanie L. Ben
Curtis & Co.
215 Central Ave. NW, Third Floor
Albuquerque, NM 87102
lisa@curtislawfirm.org
melanie@curtislawfirm.org
ashley@curtislawfirm.org

Re: *Estate of Charley et al. v. United States et al.*, 1:22-cv-00033-JB-JFR
United States Good Faith Request for Discovery Supplementation

Dear Counsel:

The United States is in possession of Plaintiffs' Answers and Responses to Defendant the United States of America's First Set of Interrogatories and Requests for Production of Documents. The United States has reviewed the discovery responses and document production, and has concerns with some of Plaintiffs' objections, responses, scope of production, and improper assertions of privilege. Pursuant to Fed. R. Civ. P. 37(a)(1) the United States is providing this letter as a good-faith effort to resolve these issues. The United States asks that Plaintiff provide formal supplementation by April 13, 2023. Furthermore, the United States is willing to meet with Plaintiffs' counsel to discuss these deficiencies. Considering the upcoming deposition of Mr. Charley, the United States needs timely supplementation. If Plaintiffs fail to or refuse to supplement their discovery responses in good faith, the United States will seek a status conference with the Court. The United States hopes this will not be necessary and that the parties can agree to work together to resolve these matters.

Interrogatory No. 4 contains an improper boilerplate objection. "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Heuskin v. D&E Transp., LLC*, 2020 WL 1450575, at *2 (D.N.M. Mar. 25, 2020). "A party opposing a discovery request cannot make conclusory allegations that a request is irrelevant, immaterial, unduly burdensome, or overly broad. Instead the party, resisting discovery must show specifically how each discovery request is irrelevant, immaterial, unduly burdensome or overly broad." *Id*. Plaintiff objected, stating, "[t]his Interrogatory is overly broad and seeks information irrelevant to the claims or defenses in this matter. This Interrogatory is burdensome, oppressive, and harassing in nature. Additionally, any responsive information is publicly available to Defendant." This is an improper objection that fails to explain the bases for the claimed objection. It is unclear if any information is being withheld pursuant to this objection. Please withdraw and provide a complete answer.

USA EXHIBIT F

Interrogatory No. 6/Request for Production No. 9: Plaintiffs failed to provide a complete answer to Interrogatory No. 6 and Request for Production No. The Interrogatory asked Plaintiff to identify who received the statement and who was present when the statement was provided. This information was not provided. Request for Production No. 9 asked for copies of all statements from any person. Plaintiffs did not provide a complete answer, but instead asserted inapplicable privilege claims and referred to the privilege log. The only statement referenced in the privilege log was presumably for Mr. Charley.

Plaintiffs have no basis to withhold Mr. Charley's statement. Plaintiffs' privilege log asserted both attorney-client privilege and the work product doctrine. Mr. Charley, however, has already used his statement to support his claim against the United States.  Plaintiffs waived any right to assert attorney-client privilege. Rule 502 Fed. R. Evid. Plaintiffs intentionally disclosed a portion of the statement.  The full statement contains the same subject matter, and in fairness ought to be considered together. *Id*. "Under federal law, 'voluntary disclosure of information which is inconsistent with the confidential nature of the attorney[–]client relationship waives the privilege.'" *T&W Holding Co., LLC v. City of Kemah, Texas*, 2022 WL 16948565, at *2 (S.D. Tex. Nov. 15, 2022) (quoting *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993)).

This Court has found that "the federal work-product privilege may be waived by voluntary disclosure and offensive use of protected materials during discovery." *Anaya v. CBS Broad., Inc.*, 2007 WL 2219394, at *6 (D.N.M. Apr. 30, 2007) (J. Browning). Furthermore, this Court has stated, "The Tenth Circuit has also foreclosed abusive offensive use of the work-product doctrine: '[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.'" *Id*. (quoting *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998)).

It is undisputed that Plaintiffs used select portions of Mr. Charley's statement for their benefit. In fact, Plaintiffs concede that a portion of the statement was produced.  Plaintiffs are now trying to hide under the auspices of inapplicable claimed privileges to protect the remainder of the statement. Plaintiffs have waived any privilege to this statement.  Please provide the complete statement.

Interrogatory No. 7: objected claiming attorney client privilege and work product doctrine. No reference was made to a privilege log, or identification of documents or information being withheld. Please identify what documents or information is being withheld and provide a complete answer.

Interrogatory No. 9 asserted improper boiler plate objections. Plaintiffs failed to state why the request was overly broad or what information would be irrelevant. It is unclear if the answer is complete or if information is being withheld pursuant to the boilerplate objection. Please withdraw this improper objection and provide a complete answer.

Request for Production No. 3 Plaintiff asserted improper boilerplate objections that must be withdrawn. Furthermore, it is unclear what information is being withheld.  The request asked for documents "reflecting health insurance payments, temporary disability payments, unemployment payments or any other payments made by Ms. Charley or on her behalf as a result of the incident made the basis of this suit." In response, Plaintiffs stated Ms. Charley did not receive temporary disability payments. It is unclear if there are any other documents being withheld. Please withdraw your improper objection and provide a complete response.

Request No. 6 asked for documents regarding Ms. Charley's employment.  Plaintiff did not object asserting any privilege but stated that she is producing workers compensation materials that are not confidential. As a result, Plaintiffs waived any objections.  Furthermore, no basis of confidentiality was asserted in Plaintiffs' discovery response.  In the privilege log, Plaintiffs cited to Fed. R. Civ. P. 408. It appears Plaintiffs may have been attempting to reference Federal Rule of Evidence 408 as their basis for withholding the information. "Rule 408 is a preclusionary rule, not a discovery rule. It is meant to limit the introduction of evidence of settlement negotiations at trial and is not a broad discovery privilege." *Computer Associates Int'l, Inc. v. Am. Fundware, Inc.,* 831 F. Supp. 1516, 1531 (D. Colo. 1993). No other basis of privilege was asserted. Therefore, please provide all responsive documents. Furthermore, it is unclear what information was redacted from the workers compensation documents that were produced.  Please clarify what was redacted and the bases for redaction.

Request No. 13 Plaintiffs again asserted improper boiler plate objections.  Please withdraw these improper objections and provide executed copies of the releases.

Please provide supplementation by April 12, 2023, to avoid prejudice to the United States in preparation of upcoming depositions. Failure to provide timely supplementation will require the United States to seek assistance from the Court. Please contact our office if you would like to discuss any of the matters set forth in this letter.  Thank you for consideration, and I look forward to your response.

Very truly yours,

ALEXANDER M.M. UBALLEZ
United States Attorney

*/s/ Brett C. Eaton 4/4/23*
Brett C. Eaton
Assistant United States Attorney
505-224-1469

BCE/dt



Lisa K. Curtis, J.D.
Theresa V. Hacsi, J.D.
Andre K. Archuleta, J.D.
Melanie L. Ben, J.D.
Luke W. Holmen, J.D.
Isela Anchondo, J.D.
Joshua M. Curtis, J.D., *of counsel*

April 13, 2023

***Via Electronic Mail***
Brett C. Eaton
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274; Fax: (505) 346-7205
brett.eaton@usdoj.gov
*Attorney for the United States*

Re: *Charley v. United States, 22-CV-00033 (D.N.M.)*
**Plaintiffs' Response to Defendant United States' Rule 37 Letter**

Dear Counsel:

Plaintiffs write in response to Defendant United States' April 4, 2023, Rule 37 letter requesting supplementation of Plaintiffs' Answers and Responses to Defendant's First Set of Interrogatories and Requests for Production of Docuements. Please see our responses to the concerns raised in Defendant's letter as set forth bellow.

**INTERROGATORIES**

**INTERROGATORY NO. 4:** Without waiving the objections in Plaintiffs response to Interrogatory No. 4, Plaintiff responded with "none" in response to Defendant's request if Ms. Charley was ever a party to a civil lawsuit. Meaning, Ms. Charley has not been a party to a civil lawsuit.

**INTERROGATORY NO. 6:** Without waiving the objections in Plaintiffs' response to Interrogatory No. 6, Plaintiffs listed each of the names of the individuals whose statements were taken and the dates taken. The statements were produced to all parties in Plaintiffs' initial disclosures and to experts. Curtis & Co. staff were "present" for the zoom calls and a court reporter from Trattel Court Reporting.

Defendant is correct that the privilege log includes the statement for Mr. Charley only. Plaintiffs object to providing Mr. Charley's deposition transcript on the basis of attorney-client privilege and the attorney work product doctrine. Any discussions surrounding the statement have not been waived. See Plaintiffs' privilege log submitted along with Plaintiffs' responses to Defendant United States' First Set of written discovery. Plaintiffs are willing and have already

USA EXHIBIT G

offered via email to provide the statement to Defendant once Defendant agrees that attorney-client privilege has not been waived surrounding the statement. Please let us know if you agree and we will provide a copy of the full statement.

**INTERROGATORY NO. 7:** Without waiving the objections in Plaintiffs' response to Interrogatory No. 7, Plaintiff state the information requested was provided in response to Interrogatory Nos. 2 and 10. Plaintiff is unsure what additional information Defendant is seeking. Please clarify. Plaintiffs are re-listing the following:

Duane Gonzales; 648 Todd Drive Gallup, NM 87301.
Duane Gonzales has knowledge regarding the facts surrounding the events that took place on May 28, 2019 and his visit to the GIMC on May 28, 2019 where Mrs. Charley was a patient in the emergency room. Further, he has knowledge of how Defendants' conduct impacted their family.

Nathan Emerson; P.O. Box 4703, Gallup, NM 87305.
Nathan Emerson has knowledge regarding the facts surrounding the events that took place on May 28, 2019 and his visit to the GIMC on May 28, 2019 where Mrs. Charley was a patient in the emergency room. Further he has knowledge of how Defendants' conduct impacted their family.

Nalton Pablo; P.O. Box 3615, Gallup, NM 87305.
Nalton Pablo has knowledge regarding the facts surrounding the events that took place on May 28, 2019. Further, he has knowledge of how Defendants' conduct impacted their family.

Neil Pablo; P.O. Box 4392, Gallup, NM 87305.
Neil Pablo has knowledge regarding the facts surrounding the events that took place on May 28, 2019, and his visit to the GIMC on May 28, 2019 where Mrs. Charley was a patient in the emergency room. Further, he has knowledge of how Defendants' conduct impacted their family.

Nalmerthan Pablo; address is unknown.
Nalmerthan Pablo has knowledge regarding the facts surrounding the events that took place on May 28, 2019 and his visit to the GIMC on May 28, 2019 where Mrs. Charley was a patient in the emergency room. Further, he has knowledge of how Defendants' conduct impacted their family.

Nyla Gonzales; 648 Todd Drive Gallup, NM 87301.
Nyla Gonzales has knowledge regarding the facts surrounding the events that took place on May 28, 2019 and her visit to the GIMC on May 28, 2019 where Mrs. Charley was a patient in the emergency room. Further, she has knowledge of how Defendants' conduct impacted their family.

Ned Pablo; P.O Box 4943 Yatahey, NM 87375.
Ned Pablo has knowledge regarding the facts surrounding the events that took place on May 28, 2019 and his visit to the GIMC on May 28, 2019 where Mrs. Charley was a patient in the emergency room. Further, he has knowledge of how Defendants' conduct impacted their family.

Jeanette E. Pablo; P.O Box 4943 Yatahey, NM 87375.

Jeanette E. Pablo has knowledge regarding the facts surrounding the events that took place on May 28, 2019 and her visit to the GIMC on May 28, 2019 where Mrs. Charley was a patient in the emergency room. Further, she has knowledge of how Defendants' conduct impacted their family.

Timothy Charley; 126B Street Highway 264, Yatahey NM, 87375.
Timothy Charley has knowledge regarding the facts surrounding the events that took place on May 28, 2019 for both of Mrs. Charley's visits to GIMC where she was a patient in the emergency room. Further, he has knowledge of how Defendants' conduct and the loss of his wife has impacted him and his family.

Robert Leach, D.O; c/o Brett Eaton, P.O Box 607 Albuquerque, NM 87103.
Robert Leach, D.O has knowledge regarding the care he provided to Mrs. Charley on May 28, 2019.

Robin Ranell Sales, RN; c/o John Checkett, 6829 North 12th Street Phoenix, AZ 85014.
Robin Ranell Sales, RN has knowledge regarding the care she provided to Mrs. Charley on May 28, 2019. She also has knowledge relating to the training she received from both GIMC and her staffing agency at the time of the incident, Next Medical Staffing, including training related to hantavirus.

Joelle Catherin Cero Go, RN; c/o Denise Chanez, 5600 Wyoming Blvd., NE, Suite 200 Albuquerque, NM 87109.
Joelle Catherin Cero Go, RN has knowledge regarding the care she provided to Mrs. Charley on May 28, 2019. She also has knowledge regarding the training she received from both GIMC and her staffing agency, AB Staffing Solutions including training related to hantavirus.

Jonathan Iralu, M.D; c/o Gallup Indian Medical Center, 516 E Nizhoni Blvd, Gallup, NM 87301.
Jonathan Iralu, M.D. has knowledge regarding the facts presented in his anticipated deposition testimony and other facts related to hantavirus and training at GIMC.

Roselyn Tso, Director; c/o US Department of Health and Human Services, 330 C. Switzer Building, Suite 2600, Washington D.C 20201.
It is anticipated that Roselyn Tso will have knowledge regarding the facts presented in her anticipated deposition testimony and other facts related to hantavirus and training at GIMC.

Dixie Gaikowski-Interim, CEO of GIMC; c/o Gallup Indian Medical Center, 516 E Nizhoni Blvd, Gallup, NM 87301.
It is anticipated that Dixie Gaikowski-Interim, CEO will have knowledge of facts presented in her anticipated deposition testimony and other facts related to hantavirus and training at GIMC.

Tori Davidson, CNE, of GIMC; c/o Gallup Indian Medical Center, 516 E Nizhoni Blvd, Gallup, NM 87301.
It is anticipated that Tori Davidson, CNE will have knowledge of facts presented in her anticipated deposition testimony and other facts related to hantavirus and training at GIMC.

Ryan Diaz; c/o Denise Chanez, 5600 Wyoming Blvd., NE, Suite 200 Albuquerque, NM 87109.

It is anticipated that Ryan Diaz will have knowledge about training, communication with and supervision of nurses and the information provided to nurses from AB Staffing.

30(B)(6) witness for AB Staffing; c/o Denise Chanez, 5600 Wyoming Blvd., NE, Suite 200 Albuquerque, NM 87109.
It is anticipated that the 30(b)(6) witness provided by Defendant AB Staffing will have knowledge about training, communication with and supervision of nurses and the information provided to nurses.

Nick Petrosino; c/o John Checkett, 6829 North 12th Street Phoenix, AZ 85014.
It is anticipated that Nick Petrosino will have knowledge about training, communication with and supervision of nurses and the information provided to nurses.

30(B)(6) witness for Next Medical Staffing; c/o John Checkett, 6829 North 12th Street Phoenix, AZ 85014.
It is anticipated that the 30(b)(6) witness provided by Defendant Next Medical Staffing will have knowledge about training, communication with and supervision of nurses and the information provided to nurses from Next Medical Staffing.

Elvina Joe-Clark; c/o US Department of Health and Human Services, 330 C. Switzer Building, Suite 2600, Washington D.C 20201.
Elvina Joe-Clark has knowledge relating to the exposure of hantavirus.

An individual from the Dollar Tree/and or an individual who has knowledge about Mrs. Charley's exposure to hantavirus referred to Elvina Clark Joe's investigation is anticipated to have knowledge of exposure to hantavirus at the Dollar Tree. The address is unknown.

**INTERROGATORY NO. 9:** Without waiving the objections in Plaintiffs' response to Interrogatory No. 9, Plaintiffs state that the only underlying issue Mrs. Charley had was the elbow injury referenced in Plaintiffs original response.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 3:** Without waiving the objection in Plaintiffs' response to Request No. 3, Plaintiffs are unaware of any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 6:** Without waiving the objections in Plaintiffs' response to Request No. 6, Plaintiffs state that non-privileged information regarding Mrs. Charley's worker's compensation action was provided. Plaintiffs produced a privilege log for confidential information related to Mrs. Charley's worker's compensation action. Plaintiffs object to producing the worker's compensation information listed in Plaintiffs' privilege log as it is not relevant to any party's claim or defense. Only information that is relevant to a party's claim or defense is discoverable. Fed. R. Civ. P. 26(b)(1); *Sines v. Darling Ingredients, Inc.*, No. MC 21-0026 JB, 2022 U.S. Dist. LEXIS 88397, at *29 (D.N.M. May 17, 2022). Further, Plaintiffs cannot produce the information listed in the privilege log as it is marked confidential from the worker's compensation case. Plaintiffs would be violating the confidentiality of the document. The redacted information included in the documents produced was a bank account

number which is also not relevant to this case and therefore not discoverable. Please see the attached signed authorizations.

Further, Plaintiffs object based on the collateral source rule. "The collateral source rule allows a plaintiff to seek full recovery from a tortfeasor even though an independent source has compensated the plaintiff in full or in part for the loss." *EEOC v. Roswell Radio, Inc.*, No. CIV-06-253 JB/LAM, 2007 U.S. Dist. LEXIS 56489, at *6 (D.N.M. June 12, 2007) (internal citation omitted).

**REQUEST FOR PRODUCTION NO. 9:** Without waiving the objections in Plaintiffs' response to Request No. 9, Plaintiffs listed each of the names of the individuals whose statements were taken and the dates taken. Also, please see the response to Interrogatory No. 2 above.

Plaintiffs object to providing Mr. Charley's deposition transcript on the basis of attorney-client privilege and the attorney work product doctrine. See Plaintiffs' privilege log submitted along with Plaintiffs' responses to Defendant United States' First Set of written discovery.

Plaintiffs are willing and have already offered to provide the statement to Defendant if Defendant agrees that attorney-client privilege has not been waived.

**REQUEST FOR PRODUCTION NO. 13:** Without waiving the objections in Plaintiffs' response to Request No. 13, Plaintiffs state that a medical release was previously provided to Defendant but for convenience Plaintiffs are providing it again, please see attached. Futher, Plaintiffs object to providing a release for Mrs. Charley's taxes. Mr. and Mrs. Charley filed taxes jointly and Mr. Charley's taxes are not discoverable as it is not relevant to any party's claim or defense. Only information that is relevant to a party's claim or defense is discoverable. Fed. R. Civ. P. 26(b)(1); *Sines v. Darling Ingredients, Inc.*, No. MC 21-0026 JB, 2022 U.S. Dist. LEXIS 88397, at *29 (D.N.M. May 17, 2022). Plaintiffs produced the tax information for the time period requested with Mr. Charley's information redacted.

Please let our office know if you have any questions or would like to discuss these matters further.

Very truly yours,

/s/ *Melanie L. Ben*

Melanie L. Ben, Esq.

MLB/al

## PRIVILEGE LOG – PLAINTIFF, TIMOTHY CHARLEY – WITNESS STATEMENT

| Description of Document | Date Prepared | Prepared by | Person(s) for whom the document was prepared | Purpose for preparing the document | Number of pages of the document | Basis to withhold |
|---|---|---|---|---|---|---|
| Witness Statement portion provided. | 03/05/2021 | Trattel Court Reporting & Videography | Plaintiff's counsel: Laura Callahan, Esq. | Prepared in anticipation of litigation or for trial. | 13 | Plaintiffs offered to provide the remainder of the statement provided to the United States as part of SF95 requirement with an agreement that there is no waiver of Attorney Client Privilege and the Work Product Doctrine occurred, Defendant refused. Fed. R. Civ. P. 502. |
| Petition for Lump Some Payment and Summons | April7, 2022 | Victor A. Titus, Esq; Titus & Murphy. | Worker's Compensation | Confidential Settlement Information Fed. R. Civ. P. 408 | 10 | Confidential Settlement Information Fed. R. Civ. P. 408 |
| Compensation Order Approving Settlement and Dismissal of Claim with Prejudice | May 10, 2022 | Victor A. Titus, Esq; Titus & Murphy. | Worker's Compensation | Confidential Settlement Information Fed. R. Civ. P. 408 | 6 | Confidential Settlement Information Fed. R. Civ. P. 408 |
| Settlement Agreement | June 8, 2022 | Victor A. Titus, Esq; Titus & Murphy. | Worker's Compensation | Confidential Settlement Information Fed. R. Civ. P. 408 | 5 | Confidential Settlement Information Fed. R. Civ. P. 408 |

USA EXHIBIT H

STATEMENT BY NATHAN EMERSON

March 5, 2021

REPORTED BY: Penny E. McAlister, CCR, NM CCR #250
TRATTEL COURT REPORTING & VIDEOGRAPHY
P.O. Box 36297
Albuquerque, New Mexico  87176-6297

USA EXHIBIT I

Electronically signed by Penny McAlister (301-012-776-0544)

cbed22d5-c534-489f-8407-939072526f29

paws, and she wanted me to embroider her son's name on there. So that was one of my projects that I had worked on, and when I completed that, I'd give it to her and stuff.

So she was -- that's one of the things that -- I mean, just little things like that, I always did for her, and she also gave me some material for a blanket, and then I never finished that before her passing and stuff. So I still haven't finished it. It just sits there.

MS. CALLANAN: Yes. Yes. Okay. Anything else, Joreen, Monica?

MS. SALAZAR: No.

MS. SCANLON: No thank you.

MS. CALLANAN: Thank you so much, Nathan, for your time. I know this is hard, as I say, but we're very -- we're very grateful. It's super helpful, and don't hesitate to call us if you have questions, or you remember something else that you think might be important. Okay?

MR. EMERSON: Okay. I wasn't privy to the -- the Zoom meeting that was had, that you guys, I guess, had with Tim and the other family members.

MS. CALLANAN: Yes. Hang on. Penny, let's go off the record.

C E R T I F I C A T E

I, Penny McAlister, a Certified Court Reporter, do hereby certify that the Statement of Nathan Emerson was reported by me stenographically on March 5, 2021, and that the within transcript is a true and accurate transcription of my shorthand notes.

I further certify that I am neither an attorney nor counsel for, nor related to or employed by any of the parties to the action, and that I am not a relative or employee of any attorney or counsel employed by the parties hereto, or financially interested in the action.

[signature]

PENNY McALISTER, CCR
Certified Court Reporter #250
License Expires: December 31, 2021

Electronically signed by Penny McAlister (301-012-776-0544)
cbed22d5-c534-489f-8407-939072526f29