**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

THE ESTATE OF NENA CHARLEY,
by and through Personal Representative
TIMOTHY CHARLEY, TIMOTHY
CHARLEY, as parent and next friend of
NILE CHARLEY, and TIMOTHY CHARLEY,
Individually,

        Plaintiffs,

vs.                                 No. 1:22-cv-00033 JB/JFR

THE UNITED STATES OF AMERICA, ROBIN
RANELL SALES, R.N., JOELLE CATHERIN
CERO GO, R.N., AB STAFFING SOLUTIONS,
LLC, a Foreign Corporation, NEXT MEDICAL
STAFFING, a Foreign Corporation, and JOHN or
JANE DOE Corporation,

        Defendants.

## DEFENDANT UNITED STATES OF AMERICA'S RESPONSE TO PLAINTIFFS' FIRST MOTION TO COMPEL REGARDING THE DEPOSITION OF ROSELYN TSO DIRECTOR OF INDIAN HEALTH SERVICES

COMES NOW the United States in Response to Plaintiffs' First Motion to Compel Regarding the Deposition of Roselyn Tso Director of Indian Health Services and states the Court should deny Plaintiffs' request to compel the deposition of Ms. Tso since subpoenaing her deposition would place an undue burden pursuant to Fed. R. Civ. P. 45(d)(3)(A).

Under the "apex doctrine," high-ranking officials can generally be deposed only upon a showing of extraordinary circumstances. Such circumstances exist when the official has unique personal knowledge of the plaintiff's claim and that information cannot be obtained through other sources. Here, Plaintiff failed to show these extraordinary circumstances exist as to Ms. Tso.

In the alternative, even if the apex doctrine does not apply, the deposition sought by Plaintiff should be barred since it does not fit within the scope of discovery allowed by Rule 26(b). Plaintiffs seek testimony on topics that are protected from discovery pursuant to the IHS medical quality assurance statute, 25 U.S.C. § 1675, on claims that have already been dismissed, or are duplicative of other testimony already obtained.

## RELEVANT FACTUAL BACKGROUND

1.      On October 12, 2022, Plaintiffs filed their First Amended Complaint to Recover Damages for Wrongful Death and Loss of Consortium Arising from Medical Negligence ("Complaint"). *See* Doc. 63.

2.      While Plaintiffs' Complaint does not set forth causes of action, it is clear that Plaintiffs alleged the United States is liable pursuant to the Federal Tort Claims Act for medical negligence. Plaintiffs also asserted claims of negligent hiring, supervision, training, and credentialling. Finally, Plaintiffs alleged that it was unconstitutional that they were not entitled to punitive damages under the FTCA, that the New Mexico Medical Malpractice cap on damages is applied to the United States, and that they are not entitled to a jury. *See* Doc. 63.

3.      The Court dismissed Plaintiffs claims for negligent hiring, supervision, training, and credentialling, and found that they are not entitled to punitive damages or damages in excess of the New Mexico Medical Malpractice Act cap on damages. Doc. 101.

4.      On October 11, 2022, Plaintiffs asked for the deposition of Roselyn Tso, Director of Indian Health Services, as well as other unidentified GIMC administrators. *See* email chain between counsel, attached as **Exhibit A**.

5.      Plaintiffs followed up on this request on January 9, 2023. *Id*.

6.    On January 11, 2023, The United States objected to producing Roselyn Tso pursuant to the apex doctrine and asked for 30(b)(6) topics to identify the proper GIMC administrators. *Id.*

7.    On January 30, 2023, Plaintiffs asked to depose four new individuals, but did not reassert a request to depose Ms. Tso. *Id.*

8.    Plaintiffs have not requested Ms. Tso's deposition since January 9, 2023, never set her deposition, and never subpoenaed her attendance at a deposition.

9.    Ms. Tso is the Director of Indian Health Services, which is a federal agency within the U.S. Department of Health and Human Services. Declaration of Roselyn Tso, ¶ 1, attached as **Exhibit B**.

**LEGAL STANDARD**

Plaintiffs are asking the Court to compel the deposition of Ms. Tso despite failing to set or subpoena her deposition. Had Plaintiffs actually moved to set her deposition, they would have been required to follow the requirements set forth in Fed. R. Civ. P. 30 and 45. Fed. R. Civ. P. 45(d)(1) imposes a duty on the party or attorney issuing and serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," as well as a duty on the Court to "enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(3)(A) requires the Court to quash a subpoena that "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." "The party . . . moving to quash a subpoena has the burden to demonstrate good cause and/or privilege to be protected." *Morales v. E.D. Etnyre & Co.*, 228 F.R.D. 694, 696 (D.N.M. 2005) (Browning, J.). Rule 26(c) of the Federal Rules of Civil Procedure provides the Court with broad discretion, for good cause shown, to "issue an order

to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This discretion includes orders forbidding the requested discovery altogether. *Id*. R. 26(c)(1)(A). The party seeking the protective order bears the burden of showing good cause. *See New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 429 F. Supp. 3d 996, 1007 (D.N.M. 2019) (Browning, J.). In this case, good cause exists under the apex doctrine to deny Plaintiffs' request to depose the Director of Indian Health Services, Roselyn Tso.

**ARGUMENT**

**I.      No Extraordinary Circumstances Exist to Justify Deposing the Director of Indian Health Services, Who Lacks Unique Personal Knowledge Relevant to this Case**

Because of the potential for abuse, many courts have limited the ability of a party to depose high-level government officials pursuant to the "apex doctrine." *See, e.g.*, *Tierra Blanca Ranch High Country Youth Program v. Gonzales*, 329 F.R.D. 694, 696 (D.N.M. 2019), *objections overruled*, 2019 WL 1487241 (D.N.M. Apr. 4, 2019). "Absent extraordinary circumstances, high-level government officials should not be called to testify in federal court about their official actions." *Denver Homeless Out Loud v. Denver, Colorado*, No. 20-CV-2985-WJM- SKC, 2020 WL 7230641, at *1 (D. Colo. Dec. 8, 2020); *accord In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995) (holding that the district court abused its discretion when it "made no attempt to find exceptional circumstances" before denying a motion to quash deposition notices issued to high-level government officials).

Courts routinely apply the apex doctrine to current and former government officials reporting directly to cabinet members, as well as those at high levels within their agencies. *See, e.g.*, *RI, Inc. v. Gardner*, No. CV 10-1795 LDW ETB, 2011 WL 4974834, at *2 (E.D.N.Y. Aug. 11, 2011) (applying the apex doctrine to the Solicitor of Labor, who reports to the Secretary of Labor); *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 321 (D.N.J. 2009) (applying

apex doctrine to a former EPA regional administrator, who reported to the EPA Administrator, who in turn reported to the President); *see also Low v. Whitman*, 207 F.R.D. 9, 12 (D.D.C. 2002) (applying apex doctrine to the Deputy Chief of Staff to the EPA Administrator); *Cavanaugh v. Wainstein*, No. CIV.A.05-123(GK), 2007 WL 1601723, at *12 (D.D.C. June 4, 2007) (holding that a Deputy Assistant Attorney General was a high-level government official subject to the apex doctrine).

Here, Plaintiffs seek to depose the Director of IHS, a federal agency within the U.S. Department of Health and Human Services ("HHS") delivering health care to 2.7 million American Indians and Alaska Natives. *See* Ex. B, ¶ 3. IHS has over 15,000 employees and a budget of $6 billion. *See* IHS Profile, *available at* https://www.ihs.gov/newsroom/factsheets/ihsprofile/ (last visited June 12, 2023). The IHS Director reports to the Secretary of HHS. Ex. B, ¶ 4; *see also* HHS Organizational Chart, *available at* https://www.hhs.gov/about/agencies/orgchart/index.html (last visited June 12, 2023). The Secretary of HHS, in turn, is a cabinet-level official who reports to the President. Ex. B, ¶ 5; *see also* The Cabinet, *available at* https://www.whitehouse.gov/administration/cabinet/ (last visited June 12, 2023). Accordingly, the Court should conclude that Ms. Tso, Director of IHS, is a high-ranking government official to whom the apex doctrine applies.

"The apex doctrine has not been addressed by the Tenth Circuit, yet has been applied by a variety of federal district courts nationwide," including this Court. *Tierra Blanca Ranch High Country Youth Program*, 329 F.R.D. at 696. Under the apex doctrine, the court may protect a high level government official from the burdens of a deposition when any of the following circumstances exist: (1) the official has no unique personal knowledge of the matter in dispute; (2) the information sought from the official can be obtained from another witness; (3) the information

sought from the official can be obtained through an alternative discovery method; or (4) sitting for the deposition is a severe hardship for the official in light of her obligations. *See Id*. at 697.

This Court has adopted a burden shifting analysis for protecting high level government officials from the burdens of a deposition. Plaintiffs, as the party seeking the deposition, had the initial burden to show Ms. Tso has "unique personal knowledge of some relevant issues." *See Id*. at 697-98 (quoting *Naylor Farms, Inc. v. Anadarko OGC Co.*, No. 11-CV-01528-REB-KLM, 2011 WL 2535067, at *1-2 (D. Colo. June 27, 2011)). Despite citing to the *Naylor Farms* case, Plaintiffs failed to acknowledge they had the initial burden of showing Ms. Tso had unique personal knowledge. *See* Doc. 124 at 5. Furthermore, Plaintiffs failed to meet this burden. Plaintiffs are seeking Ms. Tso's deposition, claiming she is "expected to testify to the broader history of medical negligence at GIMC and facts surrounding Plaintiff's constitutional claims." *Id*. at 8. Furthermore, Plaintiffs are seeking Ms. Tso's deposition for testimony regarding "the rate of hantavirus infections at GIMC, the medical malpractice lawsuit history for GIMC, peer review activities at GIMC or lack of them, hiring practices at GIMC and quality measures in general at HIS hospitals, nationally." *Id*.

Plaintiffs provided no evidence that Ms. Tso has unique personal knowledge. Instead, Plaintiffs made conclusory statements that Ms. Tso has unique knowledge based upon her prior roles within IHS, without supporting their claims. *See Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009) ("the argument of counsel is not evidence"). As a result, Plaintiff failed to meet their initial burden to show the apex doctrine should not apply, and their request to compel the deposition of Ms. Tso should be denied.

If Plaintiffs had made such a showing, the burden would have then shifted to Ms. Tso to show she has no personal knowledge, the information sought from the official can be obtained from another witness, the information sought from the official can be obtained through an alternative discovery method; or sitting for the deposition is a severe hardship for the official in light of her obligations. *Id*.

A.     **Ms. Tso Has No Unique Personal Knowledge Relevant to Plaintiffs' Claims**

Contrary to Plaintiffs' unsupported assertions, Ms. Tso has no unique personal knowledge relevant to this case. Plaintiffs do not contend Ms. Tso has any personal knowledge of the medical negligence claims at issue in this case. *See generally* Doc. 124. Plaintiffs incorrectly claim they have "broad claims related to the constitutionality of the care provided by IHS to Native American communities." *Id*. at 9. Plaintiffs, however, have mischaracterized the allegations in their Complaint. The Complaint does not allege the medical care provided by GIMC rose to the level of a constitutional violation. Instead, Plaintiffs argued the FTCA "violates the Equal Protection Claus of the 14th Amendment" and that the "concept of 'Sovereign Immunity' and the government's need to 'waive immunity' is an antiquated and unfit rubric for determining the accountability of the Federal Government…[that] violates the constitutional right of the members of the Navajo Nation, including Nena Charley, to equal protection under the law…" Doc. 63 ¶¶ 60-61. Plaintiffs further contended that application of the New Mexico Medical Malpractice Act cap on damages, the FTCA's preclusion of a jury trial, and the inability to recover punitive damages are unconstitutional. *Id*. ¶¶ 62-64.

Plaintiff's purported constitutional claims are not at issue in this case. First, the Court has already rejected Plaintiffs' arguments that the FTCA' ban on punitive damages and jury trials, and the application of the damages cap under the NMMA are unconstitutional. Doc. 101. Furthermore,

this Court lacks subject matter jurisdiction over claims against the United States for alleged constitutional violations. *See* 28 U.S.C. § 2679. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). "[A] plaintiff seeking to invoke the jurisdiction of the federal courts bears the burden of identifying an applicable statutory waiver of sovereign immunity when challenged to do so." *Bork v. Carroll*, 449 F. App'x 719, 721 (10th Cir. 2011). Here, Plaintiffs invoke only the FTCA, 28 U.S.C. § 1346(b), as waiving the United States' sovereign immunity. *See* Doc. 63, ¶ 46. Plaintiffs cannot show the United States waived sovereign immunity for any constitutional claims. *See Meyer*, 510 U.S. at 478 ("the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims"); *see also Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998) (noting that "constitutional torts are not actionable under the FTCA").[1] Absent a waiver of sovereign immunity as to the constitutional claims, this Court lacks subject matter jurisdiction over them. *See Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009). Because the constitutional claims are either dismissed or not cognizable, Plaintiffs cannot plausibly argue that discovery as to these claims is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) (noting that "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken"). Consequently, the United States has shown good cause to deny Plaintiffs' request to depose Ms. Tso. *See* Fed. R. Civ. P. 26(c)(1), 45(c)(1).

---

[1] "[O]ne of the well-established exceptions to the doctrine [of sovereign immunity] limits its application in declaratory and/or injunctive suits against federal entities or officials seeking to enjoin the enforcement of an unconstitutional statute." *Kelley v. United States*, 69 F.3d 1503, 1507 (10th Cir. 1995). This exception does not apply because Plaintiffs do not bring any claims for declaratory or injunctive relief against federal entities or officials to enjoin the enforcement of the FTCA. *See generally* Doc. 63.

Similarly, Plaintiffs cannot argue that their need for testimony regarding hiring practices and training are relevant or provide a basis for deposing Ms. Tso. Plaintiffs argue Ms. Tso has unique knowledge regarding the alleged "lack in training and communication." Doc. 63 at 2. Plaintiffs' claims for negligent hiring, supervision, training, and credentialling were dismissed. Doc. 101. As a result, any testimony regarding these matters has no relevance to Plaintiffs' claims. Rule 26(b).

Plaintiffs' remaining claims are for alleged medical negligence. Ms. Tso was not personally involved in the care of Ms. Charley. Ms. Tso has no personal knowledge about Ms. Charley's alleged exposure to hantavirus, the symptoms she presented at GIMC, or what information she reported to her healthcare providers. Ex. A, ¶¶ 6-8. She has no personal knowledge about the medical assessment, care, or treatment rendered to Ms. Charley. *Id*. ¶ 9. Ms. Tso does not have unique personal knowledge relevant to any of Plaintiffs' remaining claims. As a result, Ms. Tso should not be compelled to sit for a deposition since the apex doctrine provides good cause to protect her from being deposed since she has no unique personal knowledge of the remaining claims in dispute brought by Plaintiffs. *See Tierra Blanca Ranch High Country Youth Program*, 329 F.R.D. at 697.

Plaintiffs also seek to depose Ms. Tso regarding "peer review activities at GIMC or lack of them." *See* Doc. 124 at 8. Ms. Tso, however, is not permitted to testify about these topics, since they are covered under 25 U.S.C. § 1675's prohibition on testimony about medical quality assurance records and activities. *See* 25 U.S.C. § 1675(c)(2). Protected medical quality assurance activities include activities "conducted by or on behalf of individuals, Indian health program or urban Indian organization medical or dental treatment review committees, or other review bodies responsible for quality assurance, credentials, infection control, patient safety, patient care

assessment (including treatment procedures, blood, drugs, and therapeutics), medical records, health resources management review, and identification and prevention of medical or dental incidents and risks." 25 U.S.C. § 1675(a)(2). "The Court is required to quash a subpoena that will result in 'disclosure of privileged or other protected matter [where] no exception or waiver applies.'" *Chavez v. City of Farmington*, No. CV 15-171 JCH/SCY, 2015 WL 13659473, at \*2 (D.N.M. Aug. 18, 2015) (quoting Fed. R. Civ. P. 45(d)(3)(A)(iii)). Furthermore, the United States has already confirmed there was no Sentinel Event or medical quality assurance evaluation regarding the care provided to Ms. Charley. Response to Request for Production No. 18, attached as **Exhibit C.** As a result, Plaintiffs' request for testimony regarding peer reviewed activities provides no basis for compelling the deposition of Ms. Tso.

> **B.     Plaintiffs' Request to Force the Deposition of the Director of IHS Places an Undue Burden to Elicit Information that is Available from Other Sources**

Contrary to Plaintiffs' claims, the deposition of Ms. Tso is not necessary for Plaintiffs to discover information about the rates of hantavirus infections at GIMC, CDC requirements, or GPRA requirements. This information is available from other witnesses or sources. Plaintiff has already deposed Elvina Clark-Joe, who testified regarding CDC requirements provided to IHS. Dep. of Ms. Clark-Joe at 11:14-12:16, attached as **Exhibit D.** Ms. Clark testified that her office handles reports of hantavirus cases, and the information is reported to the CDC by either the state or the area director.  57:7-14. Furthermore, Plaintiff asked for the rate of hantavirus cases at GIMC over the last five years, and was provided that information. *See* Answer to Interrogatory No. 5, attached as **Exhibit C**. Finally, Plaintiffs asked the United States to produce the GPRA measure questionnaire relating to hantavirus. The United States responded by saying hantavirus is not a GPRA measure and provided Plaintiffs with the website for information on IHS GPRA. Response to Request for Production No. 22, attached as **Exhibit E.** Since this information is available from

other sources, requiring Ms. Tso "to sit for [her] deposition is inappropriate." *Tierra Blanca Ranch High Country Youth Program*, 329 F.R.D. at 698.

Additionally, even though the claim has already been dismissed, Plaintiffs have had ample opportunity to discovery information about training on hantavirus. Plaintiff deposed Defendant Joelle Go, who testified regarding the level of training she received regarding hantavirus. Dep. Joelle Go, 57:18-58:15, attached as **Exhibit F**. Similarly, Robin Sales testified regarding her level of hantavirus training. Dep. Robin Sales, 39:5-15, attached as **Exhibit G**. Similarly, Plaintiff asked for training manuals related to hantavirus in her written discovery requests. *See* Responses to Request for Production No. 12 and 15, Ex. C and Answers to Interrogatories 10 and 11, and Responses to Requests for Production 21 and 25 attached as Ex. E. As a result, Plaintiffs' claimed need for testimony regarding the training is not only irrelevant to the remaining claims, but is also available from other sources. Therefore, Plaintiffs have no basis to require Ms. Tso's deposition.

### C.     Plaintiffs Discretionary Function Argument is Inapposite

Plaintiffs' discussion of the discretionary function doctrine fails to provide a basis for compelling the deposition of Ms. Tso. It is unclear from the briefing why Plaintiffs included this argument. First, Plaintiffs' claims that were subject to the discretionary function exception to the FTCA were already dismissed since the discretionary function exception applied. Doc. 101. As a result, there is no longer any relevance to testimony regarding the discretionary function exception. Second, Plaintiffs claim that the alleged "negligent acts and omissions violated requirements which were specific and explicitly mandated by federal law and policy." Doc. 124 at 6. Plaintiffs, however, failed to identify which specific requirements mandated by law were violated. *Id*. Third, contrary to Plaintiffs' claims, the Court, not the director of IHS, is the proper entity to determine

if the discretionary function applies. *See Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

## III.    Conclusion

For the foregoing reasons, the United States respectfully requests that the Court deny Plaintiffs' request to compel the deposition of Ms. Tso, and for any additional relief the Court deems fair and just.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*Electronically filed 6/12/23*
Brett C. Eaton
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274
Brett.eaton@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 12, 2023, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel to be electronically served as more fully reflected on the Notice of Electronic Filing.

*Filed electronically 6/12/23*
Brett C. Eaton
Assistant United States Attorney

# Eaton, Brett (USANM)

**From:** Eaton, Brett (USANM)
**Sent:** Wednesday, February 1, 2023 9:28 AM
**To:** Melanie  Ben; Lisa Curtis
**Cc:** Monica  Begley; Ashley Rose Lopez; Tapia, Diane (USANM)
**Subject:** RE: Charley v. United States - depositions

Good morning, Melanie.

In response to your email from Monday night, I would like to remind you of the obligation to "confer in good faith regarding scheduling of depositions before serving notice of deposition." D.N.M.LR-Civ. 30.1. Monday night was the first time your office identified Pamela Detsoi-Smiley, Tami Murphy Allison, Carolyn Hayes Wong, or Dr. Iralu by name. Notifying our office of the names of potential deponents after the close of business on Monday night and providing a deadline of Wednesday to provide dates, stating that unless dates are provided, you "will be forced to set their depositions," does not provide the United States or members of GIMC enough time to work to identify potential deposition dates.  Furthermore, you have failed to consider the other parties in this case and have made no effort to confer with them in good faith regarding setting these depositions.

Previously your office had asked for depositions of the following: "GIMC Administrator" responsible for policies and procedures related to hiring, "GIMC Chief of Staff or Credentialling Committee Chair" regarding credentialling and privileging, Roselyn Tso-Director of IHS, and a "Rule 30(b)(6) witness from GIMC Infectious Disease Department concerning the policies and procedures related to diagnosis and treatment of hantavirus."  We objected to producing Ms. Tso pursuant to the apex doctrine. As previously stated, we will object to discussions of hiring issues since those are matters covered by the discretionary function exception. Additionally, we stated we will object to anything related to privileging and credentialling.

As I discussed with Ms. Curtis yesterday after the deposition of Ms. Sales, the United States will also object to depositions of Ms. Detsoi-Smiley, Ms. Allision, and Dr. Wong pursuant to the apex doctrine. It is unclear what basis Plaintiff would have to depose these individuals. Plaintiff has not shown any of these individuals have personal knowledge of the incident. If your office proceeds to set their depositions, we will file a motion for protective order.

As the United States has offered several times, if you have a list of 30(b)(6) topics you would like to provide, we can work to identify an individual or individuals who can testify to sit for a deposition. We are willing to work with your office to identify the proper scope of these depositions and identify individuals to speak to discoverable matters. Previously, your office had requested a 30(b)(6) deponent, in addition to the general category of "administrator" and "chief of staff." When our office requested deposition topics to identify a witness, your office refused to provide topics. In speaking with Ms. Curtis, it appears the position from your office is that you are no longer seeking a Rule 30(b)(6) deposition. The United States, however, is still willing to work with your office to determine what discovery is needed and to identify potential deponents. In order for this to occur, we will need to know what information is being sought.

Additionally, I informed Ms. Curtis that our office is requesting dates from Dr. Iralu for his depositions.  In addition to Dr. Iralu providing dates, I would recommend that you provide and circulate several potential dates for his deposition to us as well as the other parties' counsel to identify when the parties are available for Dr. Iralu's deposition. If we have several proposed dates we can offer those dates to Dr. Iralu to work toward setting his deposition.

Please let me know if you have any questions or would like to discuss these matters further.

Thank you,

USA EXHIBIT A

**From:** Melanie Ben <Melanie@curtislawfirm.org>
**Sent:** Monday, January 30, 2023 5:33 PM
**To:** Eaton, Brett (USANM) <BEaton@usa.doj.gov>; Lisa Curtis <lisa@curtislawfirm.org>
**Cc:** Monica Begley <monica@curtislawfirm.org>; Ashley Rose Lopez <ashley@curtislawfirm.org>
**Subject:** [EXTERNAL] RE: Charley v. United States - depositions

Brett,

I am following up on Lisa's email regarding the depositions we are requesting. We are able to identify the individuals we want to take the deposition of and are not in agreement with the need to send a topic request. Therefore, please provide dates of availability for GIMC's:

CEO – Pamela Detsoi-Smiley
Chief Nurse Executive – Tami Murphy Allison
Chief of Staff – Dr. Carolyn Hayes Wong
Dr. Jonathan Iralu – identified in Nurse Go's deposition

Unfortunately, if we do not receive dates of availability by February 1, 2023, we will be forced to set their depositions. Thank you.

Melanie

CURTIS & CO.
Attorneys and Counselors at Law
215 CENTRAL AVENUE NORTHWEST
THIRD FLOOR
ALBUQUERQUE, NM 87102
T 505-243-2808    F 505-242-0812
melanie@curtislawfirm.org

Melanie L. Ben, JD

To effectuate complete electronic service of any document to counsel at Curtis & Co. Law Firm please copy all of the following as recipient: FILING@CURTISLAWFIRM.ORG

This message and any attached documents are intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or use this information.  If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately by reply or by telephone at 505-243-2808.

**From:** Eaton, Brett (USANM) <Brett.Eaton@usdoj.gov>
**Sent:** Friday, January 27, 2023 8:22 AM
**To:** Lisa Curtis <lisa@curtislawfirm.org>
**Cc:** Melanie Ben <Melanie@curtislawfirm.org>; Monica Begley <monica@curtislawfirm.org>; Ashley Rose Lopez <ashley@curtislawfirm.org>
**Subject:** RE: Charley v. United States - depositions

Good morning, Lisa.

The topic request is pursuant to 30(b)(6).  Providing us with a 30(b)(6) notice will allow us to identify the best individual or individuals to testify about the issues. We cannot identify the best person until we know the topics.

Please let me know if you have any questions.

Thank you,

---

**From:** Lisa Curtis <lisa@curtislawfirm.org>
**Sent:** Thursday, January 19, 2023 4:01 PM
**To:** Eaton, Brett (USANM) <BEaton@usa.doj.gov>
**Cc:** Melanie Ben <Melanie@curtislawfirm.org>; Monica Begley <monica@curtislawfirm.org>; Ashley Rose Lopez <ashley@curtislawfirm.org>
**Subject:** [EXTERNAL] Re: Charley v. United States - depositions

Brett,

There are clear systemic issues regarding hantavirus, and nursing staffing issues, and we want the Administrator of GIMC, or the CEO is probably the better term. The Chief of Staff is a relevant witness, why would we be sending you "topics" to discuss with this witness. On the head of infectious disease the doctor's name came up over and over during Ms. Jo-Clark's deposition and he is a relevant witness.

Who is it that you believe we should talk to before the IHS director?

Lisa

C URTIS & C O.
Attorneys and Counselors at Law
215 CENTRAL AVENUE NORTHWEST
THIRD FLOOR
ALBUQUERQUE, NM 87102
T  505-243-2808     F  505-242-0812
lisa@curtislawfirm.org

Lisa K. Curtis, Esq.

To effectuate complete electronic service of any document to counsel at Curtis & Co. Law Firm please copy all of the following as recipient: FILING@CURTISLAWFIRM.ORG

This message and any attached documents are intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or use this information.  If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately by reply or by telephone at 505-243-2808.

On Jan 11, 2023, at 12:11 PM, Eaton, Brett (USANM) <Brett.Eaton@usdoj.gov> wrote:

Good morning, Melanie.

Thank you for following up.

For the requested depositions of the "administrator" and "chief of staff," please provide a 30(b)(6) notice with a list of topics so that we can identify the appropriate person or persons to testify. We will object to anything related to privileging and credentialling.  We will also object to hiring issues since those matters are covered by the discretionary function exception.

We will object to Roselyn Tso's deposition pursuant to the apex doctrine.

For the infectious disease 30(b)(6), please provide a notice with a list of topics, and we will work to identify the appropriate person or persons to sit for that deposition.

Please let me know if you have any questions.

Thank you,

**From:** Melanie Ben <Melanie@curtislawfirm.org>
**Sent:** Monday, January 9, 2023 5:37 PM
**To:** Eaton, Brett (USANM) <BEaton@usa.doj.gov>
**Cc:** Lisa Curtis <lisa@curtislawfirm.org>; Monica Begley <monica@curtislawfirm.org>; Ashley Rose Lopez <ashley@curtislawfirm.org>
**Subject:** [EXTERNAL] FW: Charley v. United States - Ms. Clark-Joe

Brett,

I am following up on the email below regarding setting depositions for the individuals listed. The email was initially sent to Christine which may be why it was missed when we sent the request in October. We would like to take these depositions as soon as possible if you can please provide the names and dates of availability. Thank you.

Melanie

CURTIS & CO.
Attorneys and Counselors at Law
215 CENTRAL AVENUE NORTHWEST
THIRD FLOOR
ALBUQUERQUE, NM 87102
T  505-243-2808     F  505-242-0812
melanie@curtislawfirm.org

Melanie L. Ben, JD

To effectuate complete electronic service of any document to counsel at Curtis & Co. Law Firm please copy all of the following as recipient: FILING@CURTISLAWFIRM.ORG

This message and any attached documents are intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or use this information.  If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately by reply or by telephone at 505-243-2808.

**From:** Monica Begley <monica@curtislawfirm.org>
**Sent:** Tuesday, October 11, 2022 12:24 PM
**To:** Lyman, Christine (USANM) <Christine.Lyman@usdoj.gov>
**Cc:** Melanie Ben <Melanie@curtislawfirm.org>; Lisa Curtis <lisa@curtislawfirm.org>
**Subject:** RE: Charley v. United States - Ms. Clark-Joe

Thank you for the update Ms. Lyman.  Additionally, we would like to depose the following from the Joint Status Report filed in this matter:

2. GIMC Administrator responsible for policies and procedures, hospital bylaws and medical staff bylaws and procedures for the relevant time period; who is expected to testify to the policies and procedures that applied to the hiring and duties of the GIMC healthcare providers involving in Nena Charley's medical care on May 28, 2019.

3. GIMC Chief of Staff or Credentialing Committee Chair regarding the credentialing and privileges of the healthcare provider Defendants for the relevant time period: who are expected to testify to the credentialing, privileging and personnel history of the healthcare providers involved in the medical care of Nena Charley on May 28, 2019.

4. Roselyn Tso – Director of the Indian Health Service who is expected to testify to the broader history of medical negligence at GIMC, the mortality rates for individuals with hantavirus at GIMC, the medical malpractice lawsuit history for GIMC, peer review activities at GIMC or lack of them, hiring practices at GIMC and quality measures in general at IHS hospitals, nationally.

5. A Rule 30(B)(6) witness from GIMC Infectious Disease Department concerning the policies and procedures related to the diagnosis and treatment for hantavirus.

Very truly yours,

CURTIS & CO.
Attorneys and Counselors at Law
215 CENTRAL AVENUE NORTHWEST
THIRD FLOOR
ALBUQUERQUE, NM 87102
T 505-243-2808    F 505-242-0812
monica@curtislawfirm.org

Monica Begley
Legal Assistant

To effectuate complete electronic service of any document to counsel at Curtis & Co. Law Firm please copy all of the following as recipient: FILING@CURTISLAWFIRM.ORG

This message and any attached documents are intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or use this information.  If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately by reply or by telephone at 505-243-2808.

---

**From:** Lyman, Christine (USANM) <Christine.Lyman@usdoj.gov>
**Sent:** Tuesday, October 11, 2022 11:52 AM
**To:** Monica Begley <monica@curtislawfirm.org>
**Cc:** Melanie Ben <Melanie@curtislawfirm.org>; Lisa Curtis <lisa@curtislawfirm.org>
**Subject:** RE: Charley v. United States - Ms. Clark-Joe

Hi Ms. Begley,

We reached out to Ms. Clark-Joe last week but have not heard back from her. I will let you know when I hear back.

Best,
Christine

**From:** Monica Begley <monica@curtislawfirm.org>
**Sent:** Tuesday, October 11, 2022 11:48 AM
**To:** Lyman, Christine (USANM) <CLyman@usa.doj.gov>

Good morning Ms. Lyman,

We are following up on the below email.

Very truly yours,

# CURTIS & CO.

Attorneys and Counselors at Law
215 CENTRAL AVENUE NORTHWEST
THIRD FLOOR
ALBUQUERQUE, NM 87102
T 505-243-2808    F 505-242-0812
monica@curtislawfirm.org

Monica Begley
Legal Assistant

To effectuate complete electronic service of any document to counsel at Curtis & Co. Law Firm please copy all of the following as recipient: FILING@CURTISLAWFIRM.ORG

This message and any attached documents are intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or use this information. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately by reply or by telephone at 505-243-2808.

---

**From:** Monica Begley
**Sent:** Thursday, October 6, 2022 12:17 PM
**To:** Lyman, Christine (USANM) <Christine.Lyman@usdoj.gov>
**Cc:** Melanie Ben <Melanie@curtislawfirm.org>; Lisa Curtis <lisa@curtislawfirm.org>
**Subject:** RE: Charley v. United States - Ms. Clark-Joe

Thank you for the confirmation Ms. Lyman.

Would Ms. Clark-Joe be available the same day as Dr. Leach's deposition? We can have her deposition follow after the completion of Dr. Leach's deposition.

Very truly yours,

# CURTIS & CO.

Attorneys and Counselors at Law
215 CENTRAL AVENUE NORTHWEST
THIRD FLOOR
ALBUQUERQUE, NM 87102
T 505-243-2808    F 505-242-0812
monica@curtislawfirm.org

Monica Begley
Legal Assistant

To effectuate complete electronic service of any document to counsel at Curtis & Co. Law Firm please copy all of the following as recipient: FILING@CURTISLAWFIRM.ORG

This message and any attached documents are intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or use this information. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately by reply or by telephone at 505-243-2808.

**From:** Lyman, Christine (USANM) <Christine.Lyman@usdoj.gov>
**Sent:** Wednesday, October 5, 2022 4:01 PM
**To:** Monica Begley <monica@curtislawfirm.org>
**Subject:** Charley v. United States - Ms. Clark-Joe

Hi Monica,

HHS confirms that Ms. Clark-Joe is an employee. Please let me know some dates when you are interested in taking her deposition.

Best,
Christine

**Christine Lyman**
Assistant United States Attorney
District of New Mexico
201 Third Street NW, Ste. 900
Albuquerque, NM 87102

Office phone: (505) 224-1532 (direct)
Cell phone: (505) 206-4186
Email: Christine.Lyman@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

THE ESTATE OF NENA CHARLEY,
by and through Personal Representative
TIMOTHY CHARLEY, TIMOTHY
CHARLEY, as parent and next friend of
NILE CHARLEY, and TIMOTHY CHARLEY,
Individually,

        Plaintiffs,

vs.

No. 1:22-cv-00033 JB/JFR

THE UNITED STATES OF AMERICA, ROBIN
RANELL SALES, R.N., JOELLE CATHERIN
CERO GO, R.N., AB STAFFING SOLUTIONS,
LLC, a Foreign Corporation, NEXT MEDICAL
STAFFING, a Foreign Corporation, and JOHN or
JANE DOE Corporation,

        Defendants.

**DECLARATION OF ROSELYN TSO**

ROSELYN TSO, pursuant to 28 U.S.C. § 1746, declares and states as follows:

1.     I am the Director of Indian Health Services ("IHS"), which is a federal agency

within the U.S. Department of Health and Human Services ("HHS").

2.     The IHS is the principal federal health care advocate and provider of health care

services for American Indians and Alaska Natives.

3.     As the Director of IHS, I administer a nationwide health care delivery program that

is responsible for providing preventive, curative, and community health care to approximately 2.7

million American Indians and Alaska Natives in hospitals, clinics, and other settings throughout

the United States.

4.     As the Director of IHS, I report directly to the Secretary of HHS.

USA EXHIBIT B

5. The Secretary of HHS is a cabinet-level official who reports directly to the President.

6. I have no personal knowledge regarding Nena Charley's alleged exposure to hantavirus.

7. I have no personal knowledge about the symptoms Nena Charley presented with at Gallup Indian Medical Center.

8. I have no personal knowledge about what Nena Charley reported to her medical providers at Gallup Indian Medical Center.

9. I have no personal knowledge of the medical assessment, care, or treatment that was provided to Nena Charley at Gallup Indian Medical Center.

10. I have no unique personal knowledge about the rate of hantavirus infections at Gallup Indian Medical Center

11. I have no unique personal knowledge about the history of medical malpractice lawsuits at Gallup Indian Medical Center.

12. I have no unique personal knowledge regarding CDC or GPRA reporting.

13. I have no unique personal knowledge regarding training on hantavirus at Gallup Indian Medical Center.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _10_ day of June, 2023.

Roselyn Tso -S  Digitally signed by Roselyn Tso -S
Date: 2023.06.10 01:03:14 -04'00'

ROSELYN TSO
Director of Indian Health Services
U.S. Department of Health and Human Services

contract employees. The United States can provide additional information regarding their employment upon request.

e. All employees of GIMC are still employed. Dr. Leach has a current contract with GIMC and remains working there. The remaining contractors had fixed term contracts which expired in due course.

**INTERROGATORY NO. 4:** Please state how hantavirus patients Dr. Leach has treated annually for the last five years.

**ANSWER: The United States objects to Interrogatory No. 4 as overbroad and unduly burdensome given that Dr. Leach is a contractor, and the United States is unaware of his practice outside the services he provides to GIMC.**

**Subject to and not waiving the foregoing objections, the United is unaware of the answer to this interrogatory.**

**INTERROGATORY NO. 5:** Please state how many hantavirus cases have occurred annually for the last five years at Gallup Indian Medical Center and the outcomes of those cases.

**ANSWER: According to a search of GIMC records:**

- **2021 – 1 case of hantavirus; the patient survived.**
- **2020 – none.**
- **2019 – 2 cases of hantavirus; one patient (Nena Charley) died and the other patient survived.**
- **2018 – none.**
- **2017 – 2 cases of hantavirus; both patients survived.**

**REQUESTS FOR PRODUCTION**

**REQUEST NO. 1:** Please produce the entire risk management file, including any and all documents, medical records and medical bills related to Nena Charley's treatment in May 2019.

USA EXHIBIT C

Medical Center.

**RESPONSE: The United States objects to Request No. 11 on the grounds that it is overbroad and not proportionally related to the needs of this case given that the claims involve only the emergency department of GIMC located on the first floor.**

**Subject to and not waiving the foregoing objections, the United States refers Plaintiffs to the following document:**

- **Floorplan depicting the emergency department at GIMC, produced herewith as Bates 1469.**

**REQUEST NO. 12**:  Please provide a copy of any and all Gallup Indian Medical Center's guidelines, rule booklets, or training manuals relating to hantavirus including but not limited to, emergency intubation, hantavirus procedures and protocols, and LUCAS procedures.

**RESPONSE: The United States refers Plaintiffs to the following documents:**

- **CDC – Facts About Hantavirus, produced herewith as Bates 1441-1455.**

**REQUEST NO. 13:**  Please provide a copy of any and all Gallup Indian Medical Center's guidelines, rule booklets, or training manuals relating to emergency imaging during a "code."

**RESPONSE: The United States has no documents responsive to this request.**

**REQUEST NO. 14:** Please produce a copy of all criteria for all physicians' credentials and privileges at Gallup Indian Medical Center and all rules, regulations, bylaws, manuals, and guidelines related to credentialing or privileging of Robert Leach, D.O.

**RESPONSE: The United States objects to Request No. 14 to the extent that it seeks information regarding "credentialing files" because such information specifically is protected from disclosure in civil discovery under 25 U.S.C. § 1675.**

**Subject to and without waiving the foregoing objections, the United States refers Plaintiffs to the privilege log produced herewith, as well as the following documents:**

- **Clinical Privileges, produced herewith as Bates 1470-1471.**

- **Emergency Medicine Privileges Request Form, produced herewith as Bates 1472-1475.**

- **IHM Chapter 1, Part 3 – Medical Credentials and Privileges Review Process, produced herewith as Bates 1476-1484.**

- **Medical and Dental Staff Bylaws, produced herewith as Bates 1485-1551.**

- **Dr. Leach's privileges (2017-19), produced herewith as Bates 1552-1558.**

- **Rules and Regulations of the Medical Staff, produced herewith as Bates 1559-1583.**

**REQUEST NO. 15:** Please list and produce any and all written rules, bylaws, regulations, procedures, guidelines, protocol, or other written instructions in effect in September 2019 at Gallup Indian Medical Center concerning the medical care and treatment of Nena Charley, including but not limited to, emergency protocols, hantavirus protocols, hantavirus posters, hantavirus policy and procedures, hantavirus training materials, intubation procedures, informed consent procedures, code protocols, medication administration, charting, chart review, sentinel investigation event reporting, adverse outcome reporting, patient transfer, and for each such document provide the following:

a) the day each such document was originally promulgated;

b) to whom was each such document disseminated;

c) the committed body or person who promulgated each such document;

d) state verbatim, the information as contained in each such document and attach copies of the same hereto.

**RESPONSE**: The United States clarifies that it is assuming that this request is intended to refer to policies in place in May 2019. The United States refers Plaintiffs to the documents produced in response to Request No. 9.

**REQUEST NO. 16:** Identify and produce each and every contract or other document establishing or in any way referring to the relationship between Defendant USA through Gallup Indian Medical Center, and relating to Robert Leach, D.O., Robin Ranell Sales, R.N.; and Joelle Catherin Cero Go, R.N., including, but not limited to, application for hire, staff credentials and privileges and all documents granting credentials and privileges and defining mandatory qualifications, duties and responsibilities of positions. Please attach said documents in response to your Responses.

**RESPONSE:** The United States objects to Request No. 16 to the extent that it seeks information regarding documents relating to privileging and credentialing because such information is specifically protected from any disclosure in civil discovery by the medical quality assurance confidentiality provisions of 25 U.S.C. § 1675. The United States further objects to Request No. 16 to the extent it seeks information protected from disclosure by the Privacy Act, 5 U.S.C. § 522a, and, to the extent any evaluations contained in such documents were performed as a part of any medical quality assurance programs, such information is protected from disclosure by the medical quality assurance confidentiality provisions of 25 U.S.C. § 1675.

Subject to and not waiving the foregoing objections, the United States refers Plaintiffs to the privilege log produced herewith, as well as the following documents:

- **Contract for Defendant Go, previously produced as Bates 456-70.**
- **Contract for Dr. Leach, previously produced as Bates 535-56.**
- **Contract for Defendant Sales, previously produced as Bates 567-78.**

- **Dr. Leach's privileges (2017-19), produced herewith as Bates 1552-1558.**

**REQUEST NO. 17:** List and produce all coverage available in this case, including all self-insured retention or deductible amounts, all insurance policies, and their limits of coverage, that could be used to satisfy any judgment against Defendant USA through Gallup Indian Medical Center in this case, including all excess or umbrella policies.

**RESPONSE: The United States has no documents responsive to this request. The United States is a sovereign entity and an award of damages is subject to the limitations by law enacted by Congress. For Federal Tort Claims Act claims against the Indian Health Service, settlements and judgments are paid out of the Judgment Fund.**

**REQUEST NO. 18:** Please provide the documents that outlines the exact process undertaken when a review of care, a chart review, root cause analysis, incident review and or a "sentinel event" investigation takes place and please state whether any such process was conducted regarding Nena Charley's visits in May of 2019; including in general and specially regarding Mrs. Charley's hantavirus diagnosis.

**RESPONSE: The United States objects to Request No. 18 to the extent it seeks medical quality assurance records produced in the course of a medical quality assurance program, which are absolutely protected from discovery pursuant to 25 U.S.C. § 1675.**

**Subject to and without waiving the foregoing objections, the United States refers Plaintiffs to the following document**

- **Sentinel Events Policy, produced herewith as Bates 1461-1466.**

**There was no Sentinel Event or medical quality assurance evaluation regarding the care provided to Nena Charley.**

**REQUEST NO. 19:** Do you or your attorneys or representatives have any statements, written,

The Estate of Nena Charley, et al. v. Gallup Indian Medical Center, et al.
Elvina Clark-Joe

November 16, 2022
No. 1:22-cv-00033-JB-JFR

Page 11

1    called exactly?

2        A.  It's called Environmental Home Assessment.  They

3    have questionnaires roughly about -- I have some right

4    here -- maybe about 20 pages of just questions in terms of

5    asking the surrogate, or if the patient's still alive,

6    questions about where they've been, what the elevation of

7    the home is, any outbuildings they've been in or have been

8    around, if they've noticed any rodent droppings, any rodent

9    activities and/or any harborage.

10        And then there's another individual questionnaire

11    for the patient or a surrogate themselves; it's another ten

12    pages on just questions where we compile all that by asking

13    questions to the surrogate or if the patient is alive.

14        Q.  All right.  And I want to make sure I understand.

15    Is that Environmental Home Assessment something you get from

16    the CDC, or is it something that Indian Health Service

17    itself has created, or how would you describe it?

18        A.  CDC has created it and given it to IHS, Indian

19    Health Service, as a guidance.  And so anytime there is a

20    confirmed case, they will send over those forms with the

21    case number.  The case number.

22        Q.  Who is the they that sends over the forms?

23        A.  CDC, Center of Disease Control.

24        Q.  Okay.  So in this case, there was a business

25    investigation as well as a home investigation?


USA EXHIBIT D

The Estate of Nena Charley, et al. v. Gallup Indian Medical Center, et al.
Elvina Clark-Joe

November 16, 2022
No. 1:22-cv-00033-JB-JFR

Page 12

1        A.   Correct.

2        Q.   And so is there a different set of forms for that

3    or not?

4        A.   No.  Actually, whatever is delineated in the

5    assessment, if they identify a place they've been, that goes

6    to a different -- so in this case, because it was within the

7    same questionnaire, that's what we use at the business.

8        Q.   Okay.  And how long has this CDC-created

9    questionnaire for investigation around hantavirus been

10   available?

11       A.   Gosh, since the outbreak in 1993, and they've made

12   updates to it as it was known, since the virus was known.

13   They've been updating it probably every year, every other

14   year.

15       Q.   And I think you said 1983?

16       A.   1993.

17       Q.   '93.  Okay.  I'm glad I asked that question.  All

18   right.  So almost 30 years this has been available.  And

19   were you trained to that questionnaire on the job by your

20   supervisors?

21       A.   Correct.

22       Q.   Is there a hantavirus expert that you use for

23   information or guidance in the system at IHS?

24       A.   I think that would be us.

25       Q.   Okay.  And is there anybody that you take that to

Electronically signed by Frances Hernandez (101-257-280-6684)                    819d0192-ae43-4791-b703-0a53a1ba5e1a

**ANSWER:** Various nurse educators do the training.  A Nursing Supervisor, Nurse Educator, and employee sign off on a competency sheet.

**INTERROGATORY NO. 10:** In respect to the individual identified in Interrogatory No. 9., please state the qualifications and what preceptor training program they utilized to be able to sign/approve nurses on their training.

**ANSWER:**

**Per ED ASCN, RNs are validated on skills and competencies by RN preceptors who have demonstrated competency in the skill/procedure.**

**INTERROGATORY NO. 11:** Please state what training programing/manuals new staff nurses utilize at Gallup Indian Medical Center including but not limited to, onboard training, LACE Scores, peer review, quality assurance, risk management, and clinical rounds.

**ANSWER:**

**All permanent Gallup Indian Medical Center (GIMC) new employees, volunteers, and students are assigned courses according to their occupation. There are both clinical and non-clinical courses. During the orientation there are administrative presentations, presentations that meet the Joint Commission requirements, and finally courses assigned through Healthstream for clinical and non-clinical staff.  Our new employee orientation program touches on the following information that pertains specifically to Gallup Indian Medical Center (GIMC) in each of the subject areas.  Day 1 is specific to the organizational structure and the culture of the organization.  Day 2 meets the required Joint Commission content areas also specific to GIMC.**

**The administrative courses consist of:**

- **GSU Leadership Overview**
- **Patient Centered Medical Home**

USA EXHIBIT E

- **AIDET (Customer service: acknowledge, introduce, duration, explanation, and Thank-you**
- **GIMC Logo & AED Video**
- **QAPI**

**The New Employee Presentations are:**
- **Welcome and Overview**
- **Occupational Health**
- **Security**
- **Patient Rights**
- **Physical Therapy**
- **Cultural Sensitivity**
- **IT**
- **Safety/Emergency Preparedness/Security**
- **Facilities/ BioMed**
- **Risk Management/Webcident**
- **Navajo Wellness Model**
- **Infection Control**
- **Union**

**ED RNs do not use the LACE Score in the ED**

**INTERROGATORY NO. 12:** Please state whether loan forgiveness applies to doctors and nurses that are employed at Gallup Indian Medical Center.

**ANSWER: Yes, federally employed doctors and nurses are eligible to apply for the I.H.S. Loan Repayment Program.**

**INTERROGATORY NO. 13:** If any of your responses to Plaintiffs' First Set of Requests for Admission are anything other than an unqualified admission, please identify that Request by number and set for all facts, opinions, and identify all documents that support your responses, including, without limitation, the identification of any and all individuals, dates, incidents, conduct, or other information that supports your Answer.

**ANSWER: Defendant objects that this Interrogatory is an improper compound interrogatory that transforms every RFA into a separate interrogatory, is an improper attempt to circumvent the number of allowable interrogatories, and should be counted toward Plaintiffs' total of allowable interrogatories.** *See Knittles Towing, Inc. v. Danlar*

## REQUESTS FOR PRODUCTION

**REQUEST NO. 21:**  Please produce any and all training videos, documents, PowerPoints, links, guidelines, policies, protocols, procedures, and/or manuals pertaining to the standards, requirements, and training for hantavirus at Gallup Indian Medical Center or provided to the Gallup Indian Medical Center from any third party that nurses and healthcare providers use for training on hantavirus from 2010-present.

**RESPONSE:**

**Please see responsive documents, Bates No. 22-CV-33: USA 001876-1923.**

**In addition, in 2010, RMCH was providing CME for all staff in regard to hantavirus and other infectious diseases of the Southwest (e.g. Plague, RMSF).**

**REQUEST NO. 22:**  Please produce the Government Performance and Results Act (GPRA) measure questionnaire relating to hantavirus.

**RESPONSE:**

**Hantavirus is not a GPRA measure. The GPRA assesses common topics such as diabetes, immunizations, etc. Additional information regarding the Indian Health Service GPRA data can be found at: https://www.ihs.gov/quality/government-performance-and-results-act-gpra/**

**REQUEST NO. 23:**

Please provide standards, policies, procedures and trainings that are required by the State of New Mexico to qualify Gallup Indian Medical Center a Level 3 Trauma Center.

**RESPONSE:**

**Please see responsive documents, Bates No. 22-CV-33: USA 001924-1984.**

**REQUEST NO. 24:** Please produce any and all documents, policies, procedures, and/or checklists that the Office of Environmental Health and Engineering, Division of Environmental Health Services, has implemented, required, and/or recommended at Gallup Indian Medical Center for its Emergency Room, staff, employees, and healthcare providers regarding patients who have been in contact with mice, mice droppings, or have signs/symptoms of hantavirus from January 2019 to present.

**RESPONSE:**

**There are no responsive documents.**

**REQUEST NO. 25:** Please produce standard orientation programs for any nurses that work in the ER at Gallup Indian Medical Center. Please also indicate the following:

      a.  Plan;

      b.  How many weeks it takes to complete training;

      c.  Checklist of documents to refer to during training;

      d.  Competency exams; and

      e.  Whether there are annual requirements for competency.

**RESPONSE:** Defendant objects to Request No. 25 since it is an improper hybrid discovery request that seeks an answer to an interrogatory within a request for production, contrary to what is allowed under Fed. R. Civ. P. 33 and 34. *See Driver v. Kern Cnty. Superior Court*, 2022 WL 2053013, at *2 (E.D. Cal. June 7, 2022) ("The Federal Rules of Civil Procedure do not authorize hybrid discovery requests, i.e., requests for production of documents combined with interrogatories"). Without waiving this objection, Defendant will provide the documents requested:

      Please see responsive documents, Bates No. 22-CV-33: USA 001985-1991.

The Estate of Nena Charley, et al. v. The United States of America, et al.
Joelle Go, RN

November 21, 2022
No. 1:22-cv-00033-JB-JFR

Page 57

| 11:13:13 | 1 | "hantavirus." |
| 11:13:13 | 2 | **A. Hantavirus.** |
| 11:13:15 | 3 | Q. And what did you say to him? |
| 11:13:17 | 4 | **A. I said, "Really?" because I was surprised.** |
| 11:13:22 | 5 | Q. Anything else that you remember talking to him |
| 11:13:32 | 6 | about? I mean, you saying her symptoms, he saying her |
| 11:13:40 | 7 | symptoms? You know, anything like that, anything you |
| 11:13:41 | 8 | remember talking about? |
| 11:13:42 | 9 | **A. I cannot remember.** |
| 11:13:43 | 10 | Q. Did you know what had happened to Nena ultimately |
| 11:13:50 | 11 | by the time you were talking to David Doherty? |
| 11:13:53 | 12 | **A. I did not.** |
| 11:13:54 | 13 | Q. So you didn't know she had died yet? |
| 11:13:56 | 14 | **A. No.** |
| 11:13:57 | 15 | Q. When did you find out that she died? |
| 11:14:00 | 16 | **A. When I got the subpoena February -- February of** |
| 11:14:04 | 17 | **this year.** |
| 11:14:04 | 18 | Q. Did you do anything, get any additional training, |
| 11:14:19 | 19 | anything that you personally sought out to learn more |
| 11:14:22 | 20 | about hantavirus after finding out that Nena had been |
| 11:14:26 | 21 | back in? |
| 11:14:26 | 22 | **A. I cannot remember.** |
| 11:14:28 | 23 | Q. Tell us what you knew about hantavirus when Nena |
| 11:14:36 | 24 | came in on May 28th of 2019. |
| 11:14:39 | 25 | **A. I know from, you know, the education, it's like** |

USA EXHIBIT F

Electronically signed by Rose Harms (401-385-746-4110)

7dd0b7c1-3c18-416a-be07-49ff8bd6f14f

The Estate of Nena Charley, et al. v. The United States of America, et al.
Joelle Go, RN

November 21, 2022
No. 1:22-cv-00033-JB-JFR

Page 58

11:14:44  1    it -- it can be -- you can get it from being in contact

11:14:48  2    with mouse droppings.  Like if you've been cleaning, and

11:14:53  3    then you're not wearing mask, you're touching the mouse

11:14:57  4    droppings, or any rodents.  Or if you're like vacuuming

11:15:03  5    and you're not wearing mask, you're not washing hands or

11:15:06  6    you're not wearing gloves, you can get it.

11:15:10  7        Q.  All right.  Now, I was -- I was trying to be

11:15:21  8    really, really cognizant that I was asking this question

11:15:24  9    about what your knowledge was before Nena came in in

11:15:27  10   May.  Is that your knowledge before she came in on

11:15:32  11   May 28th of 2019?

11:15:35  12       A.  I -- I don't know about hantavirus before, before

11:15:40  13   that -- before what happened to Ms. Charley.

11:15:43  14       Q.  You found out about hantavirus afterwards?

11:15:46  15       A.  After, yeah, because I look it up.

11:15:49  16       Q.  So does that mean that before May 28, 2019, you

11:16:01  17   had not had a patient come in with hantavirus?

11:16:03  18       A.  Not that I know of.

11:16:04  19       Q.  And if you didn't know about hantavirus, I'm

11:16:11  20   presuming that you didn't ask Nena Charley if she had

11:16:13  21   been around mouse droppings or cleaning or vacuuming or

11:16:23  22   anything like that, that you didn't ask that as part of

11:16:26  23   your questions.  Is that correct?

11:16:28  24           MS. CHANEZ:  Form.

11:16:28  25       A.  I cannot remember.

Electronically signed by Rose Harms (401-385-746-4110)                    7dd0b7c1-3c18-416a-be07-49ff8bd6f14f

The Estate of Nena Charley, et al. v. The United States of America, et al.
Robin Sales, RN

January 31, 2023
No. 1:22-CV-00033-JB-JFR

Page 39

1        **I can't -- I mean, I can't recall the two of the**
2   **training.  Do I remember any training prior?  I don't**
3   **personally remember any real training prior to this case,**
4   **no.**
5      Q.  All right.  And just so -- so we're clear,
6   because case probably means something different to me than
7   it does to you.  So if I understand you correctly, you
8   don't believe you received any training about Hantavirus
9   before Nena Charley was your patient?
10      **A.  I don't recall.  There may have been something**
11  **our first week, but we had so many policies about**
12  **everything, but I do not recall a hundred percent.**
13      Q.  So Hantavirus itself, was that something you had
14  ever heard of before you came to Gallup?
15      **A.  Never, no.**
16      Q.  All right.  So it wasn't something that you knew
17  of just in your work as an E- -- ER -- ER nurse?
18      **A.  No.**
19      Q.  All right.  And Indian Health Service has some
20  mandatory things for Gallup Indian Medical Center that have
21  to be done by the medical professionals there because of
22  specific disease processes.  Do you remember being told
23  what IHS's requirements were for the medical staff at the
24  hospital at GIMC?
25      **A.  At that time?**

USA EXHIBIT G

Electronically signed by Penny McAlister (301-012-776-0544)                6c74f800-6409-4bba-8f4f-51801b22ae2f