

56 F.4th 1254
United States Court of Appeals, Tenth Circuit.

IN RE: OFFICE OF THE UTAH ATTORNEY GENERAL; Sean Reyes, Petitioners.

No. 22-4057
|
FILED December 1, 2022

**Synopsis**
**Background:** Former assistant attorney general brought retaliation and wrongful termination action against the Utah Attorney General's Office. After the United States District Court for the District of Utah, Daphne A. Oberg, United States Magistrate Judge, 2021 WL 4554688, denied former assistant attorney general's request to compel Attorney General to sit for deposition, the United States District Court for the District of Utah, Jill N. Parrish, J., 2022 WL 227004, sustained former assistant attorney general's objections, and the Court, 2022 WL 1521948, denied reconsideration. Attorney General and the Utah Attorney General's Office petitioned for mandamus relief.

**Holdings:** The Court of Appeals, as matters of first impression, held that:

extraordinary circumstances test applied, and

extraordinary circumstances did not exist to compel Utah Attorney General to sit for deposition.

Petition granted.

Hartz, Circuit Judge, dissented with statement.

**Procedural Posture(s):** Petition for Writ of Mandamus; Motion to Compel Discovery.

 **\*1255** (D.C. No. 2:18-CV-00341-JNP-DAO) (D. Utah)

**Attorneys and Law Firms**

Melissa Holyoak, Daniel R. Widdison, Office of the Attorney General for the State of Utah, Salt Lake City, UT, Joni Jean Jones, Office of the Attorney General for the State of Utah, Criminal Appeals Division, Salt Lake City, UT, Beth J. Ranschau, Liesel Brand Stevens, Esq., Ray Quinney & Nebeker, Salt Lake City, UT, for Petitioners.

April Lynn Hollingsworth, Katherine Allyce Panzer, Hollingsworth Law Office, Salt Lake City, UT, for Paul G. Amann.

Kyle D. Highful, Office of the Attorney General for the State of Texas, Austin, TX, for Amici Curiae.

Before HARTZ, TYMKOVICH, and PHILLIPS, Circuit Judges.

**ORDER**

PER CURIAM.

This case involves the proper standard for permitting the deposition of a high-ranking public official. In the underlying wrongful termination case brought by Paul Amann against the Utah Attorney General's Office (UAGO), the district court has ordered the deposition of Attorney General **\*1256** Sean Reyes. Mr. Reyes and the UAGO (collectively, petitioners) have filed a petition for writ of mandamus seeking an order directing the district court to vacate its order compelling the deposition. Having reviewed the district court's order and the briefing on the petition, we conclude that petitioners have no other adequate means to attain this relief, their right to the issuance of the writ is clear and indisputable, and the issuance of the writ is appropriate under the circumstances. Accordingly, exercising our jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), we grant the petition.

### I. Background

#### A. Facts
In December 2016, Plaintiff Paul Amann was fired from his job as an Assistant Attorney General, allegedly for violations of office policy. He brought a whistleblower claim in federal district court asserting that he was actually fired for reporting misconduct by his supervisor and a co-worker. The defendants included the UAGO and Mr. Reyes in his personal and official capacities.

Mr. Amann's counsel has already taken the depositions of 11 witnesses, including former Civil Chief Deputy Bridget Romano and former Solicitor General Tyler Green. He also has conducted a Federal Rule of Civil Procedure 30(b)

(6) [1] deposition of the UAGO and propounded 75 written discovery requests.

The discovery revealed that Ms. Romano and Mr. Green were the key decision makers concerning Mr. Amann's conduct and the status of his employment. Ms. Romano placed Mr. Amann on administrative leave and later recommended termination, although she conceded that she provided status updates to Mr. Reyes during the process. Mr. Green was designated by Mr. Reyes to make the final decision about the termination of Mr. Amann's employment, partly because Mr. Green had no prior relationship with Mr. Amann. Mr. Green testified that he never talked to Mr. Reyes about Mr. Amann and that he made his own independent decision concerning termination.

There was also evidence that shortly after Mr. Reyes was appointed in 2013, Mr. Amann's wife raised concerns of employment fraud at UAGO, and that in response Mr. Reyes wrote to his campaign manager that the Amanns "may be more of a liability than help. I cannot investigate every person these guys have a beef with." Amann Resp. to Pet. at 12 (internal quotation marks omitted). On the day before Ms. Romano issued a notice of intent to terminate Mr. Amann's employment, Mr. Reyes sent his campaign manager a text stating, "Amann reneged on our deal so he wants to burn us to the ground." Dist. Ct. Resp. at 6 (internal quotation marks omitted).

Mr. Amann asserts that Mr. Reyes "heavily influenced" the decisions concerning Mr. Amann's employment. Amann Resp. to Pet. at 18 (internal quotation marks omitted). He bases this assertion on the following facts about Mr. Reyes: he was hostile to Mr. Amann's claims of misconduct within the UAGO; he was "kept in the loop" about the investigation of Mr. Amann and directed "his subordinates about how to handle situations involving Amann"; he included the name "Amann" on a to-do list he sent to his personal email **\*1257** address; he was copied on letters sent to Mr. Amann "regarding his discipline"; and he "hand-picked" the person who made the ultimate decision regarding termination. *Id.* (internal quotation marks omitted).

### B. District Court's Orders

Before Ms. Romano and Mr. Green were deposed, Mr. Amann moved to compel Mr. Reyes's deposition on the ground that Mr. Reyes was involved in the investigation and decision to terminate Mr. Amann's employment. In addressing the motion, the magistrate judge applied a standard that has been used in several district court decisions in this circuit. The magistrate judge explained:

> [D]istrict courts in this circuit have required parties seeking to depose high-ranking government officials to "demonstrate whether (1) the official has first-hand knowledge related to the claim being litigated[,] (2) the testimony will likely lead to the discovery of admissible evidence, (3) the deposition is essential to the party's case, and (4) the information cannot be obtained from an alternative source or via less burdensome means."

Pet., Attach. 1 at 2 (Magistrate Judge's Order) (quoting *White v. City & Cnty. of Denver*, No. 13-cv-01761, 2014 WL 3373368, at \*2 (D. Colo. July 10, 2014)). The magistrate judge denied the motion because Mr. Amann had not shown that Mr. Reyes's deposition was "essential" to his case. *Id.* In particular, the magistrate judge noted there was no evidence of Mr. Reyes's direct involvement in the termination. The magistrate further held that the reasons for Mr. Amann's termination could be obtained from alternative sources, including the depositions of Mr. Green and Ms. Romano.

Mr. Amann objected to the magistrate judge's ruling, and the district court sustained the objection. The district court concluded the magistrate judge identified the proper test, but misapplied it to the facts of the case. The district court also opined the evidence indicated Mr. Reyes had personal knowledge of Mr. Amann's situation, and held:

> This evidence not only suggests that Reyes has first-hand knowledge related to Amann's claims, but also raises the reasonable inference that Reyes had an interest in how Amann's situation was resolved. Although Reyes may not have been the ultimate decisionmaker who signed Amann's termination letter, this evidence raises the reasonable inference that Reyes was involved in [UAGO's] decision to terminate Amann. At [a] minimum, it appears that Reyes played a role in selecting Green to review Amann's response to the Notice of Intent to Terminate Employment, and that the Amann situation caused Reyes stress.

*Id.*, Attach. 2 at 8 (Dist. Ct. Order Jan. 25, 2022) (internal quotation marks and citations omitted).

Petitioners then filed a motion for reconsideration, which the district court denied. In denying the motion, however, the district court altered its reasoning. The district court found "that the 'exceptional' or 'extraordinary' circumstances test advocated by Defendants should not be applied" in this case, for two reasons. *Id.*, Attach. 3 at 6 (Dist. Ct. Order May 13, 2022). First, the district court noted that cases "involv[ing] high-ranking *federal* officials" may implicate "legitimate separation-of-powers concerns," *id.* at 5, which are not present in this case. Second, the district court posited that "testimony from a high-ranking official who, presumably in good faith, has been sued in his or her personal capacity is likely to be central to the case, particularly when the case involves issues of credibility." *Id.* at 6.

**\*1258** The district court also disagreed with the requirement Defendants asserted had been adopted by other courts—that a plaintiff must show the high-ranking official has information that is "absolutely needed" for the party's case before the court can order a deposition. *Id.* at 7 (internal quotation marks omitted). "[I]t is difficult, if not impossible," the district court explained, "to determine whether a high-ranking official has information that is 'absolutely needed' and that cannot be obtained from any other source until the party has deposed the official and explored the extent of the official's knowledge." *Id.* The district court concluded that this is especially true in a whistleblower case, where "pretext and credibility are central to resolution of the case." *Id.* at 8.

The district court also concluded that even if it applied "the 'exceptional' or 'extraordinary' circumstances test," it would still result in Mr. Reyes having to sit for the deposition. *Id.* at 9. The district court concluded that "Reyes's deposition is essential to Amann's case" because it "is the only way for Amann to obtain a complete picture of the circumstances surrounding the investigation into his conduct and his ultimate termination." *Id.* at 11 (internal quotation marks and brackets omitted).

In addition, the district court held that the information could not be obtained from an alternative source or less burdensome means. In particular, the district court held that "written questions and responses are not an adequate alternative" because: (1) they "do not enable a party to ask follow-up or clarification questions if the deponent's response is evasive or unclear"; (2) they "do not permit a party to pursue new or unanticipated lines of questioning if the deponent provides unexpected revelations"; and (3) credibility is central in a whistleblower case, and "written responses that are carefully crafted and edited by attorneys are no substitute for the witness's spontaneous answers during a live deposition." *Id.* at 12-13.

The petitioners then filed their petition for writ of mandamus in this court. The deposition of Mr. Reyes has since been stayed by the district court pending the resolution of the mandamus petition.

## II. Discussion

Petitioners contend the district court abused its discretion in ordering the deposition of Mr. Reyes. They argue: (1) the district court eschewed the "extraordinary circumstances" test applied in other circuits, and fashioned a new standard applicable to whistleblower cases that improperly *favors* depositions of high-ranking officials in such cases; and (2) the district court's reasons for rejecting less burdensome alternatives to a deposition would apply in virtually every case.

### A. Mandamus Standard

"The issuance of the writ [of mandamus] rests within the court's discretion." *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006). To issue a writ of mandamus, three conditions must be met: (1) the petitioner "must have no other adequate means to attain the relief he desires"; (2) "the petitioner must demonstrate that his right to the writ is clear and indisputable"; and (3) "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1187 (10th Cir. 2009) (internal quotation marks omitted). "The writ of mandamus issues only in exceptional circumstances to correct a clear abuse of discretion, an abdication of the judicial function, or the usurpation of judicial power." **\*1259** *United States v. Copar Pumice Co.*, 714 F.3d 1197, 1210 (10th Cir. 2013) (internal quotation marks omitted).

For guidance in determining whether the writ may issue, we have identified five "nonconclusive guidelines." *United States v. McVeigh*, 119 F.3d 806, 810 (10th Cir. 1997) (internal quotation marks omitted). These guidelines are:

(1) whether the party has alternative means to secure relief; (2) whether the party will be damaged in a way not correctable on appeal; (3) whether the district court's order constitutes an abuse of discretion; (4) whether the order represents an often repeated error and manifests a persistent disregard of federal rules; and (5) whether the order raises new and important problems or issues of law of the first impression.

In re Qwest Commc'ns, 450 F.3d at 1184 (internal quotation marks omitted).

### B. Other Adequate Means and Whether a Writ Is Appropriate Under the Circumstances

As to the first and third conditions, neither Mr. Amann nor the district court have presented any meaningful argument.[2] Petitioners persuasively argue that mandamus is Mr. Reyes's only adequate means of obtaining relief. An interlocutory appeal would not be permitted under these circumstances, *see* 28 U.S.C. § 1292, and we have held that discovery orders are generally not appealable under the collateral order doctrine, *SEC v. Merrill Scott & Assocs.*, 600 F.3d 1262, 1270 (10th Cir. 2010). As the Ninth Circuit noted in a similar case, "[o]n the adequacy of other relief, courts have routinely found that, in cases involving high-level government officials, there are no other means of relief beyond mandamus because to disobey the subpoena, face contempt charges, and then appeal would not be appropriate for a high-ranking government official." *In re U.S. Dep't of Educ.*, 25 F.4th 692, 705 (9th Cir. 2022). The same reasoning applies here.

As for whether a writ of mandamus is appropriate under the circumstances, petitioners note this is a matter of first impression in this circuit on which guidance is urgently needed. Neither Mr. Amann nor the district court have argued otherwise.

### C. Whether Petitioners' Right to the Writ Is Clear and Indisputable

Nearly every circuit to have addressed the question presented by UAGO's petition has adopted some form of an "extraordinary circumstances" test, in which parties must meet a high bar in order to depose high-ranking officials. Because the Tenth Circuit has not addressed the question, however, the district court applied a lower standard of its own making that it deemed more appropriate in whistleblower cases where a high-ranking state official is named as an individual defendant. We hold that under the circumstances, petitioners' right to the writ is clear and indisputable.

#### 1. The Extraordinary Circumstances Test

Other circuits have concluded that high-ranking executive officials should not, absent extraordinary circumstances, be called to testify or be deposed concerning issues relating to their official duties. *E.g.*, *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (listing cases). The extraordinary circumstances rule "is based on the notion that high ranking government officials have greater duties and time constraints than other witnesses and that, **\*1260** without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Id.* (brackets and internal quotation marks omitted).

The extraordinary circumstances test has its genesis in *United States v. Morgan*, 313 U.S. 409, 421-22, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), which involved a deposition of the United States Secretary of Agriculture. Although the deposition had long since occurred by the time the case arrived at the Supreme Court, the Court discouraged depositions of high-ranking officials concerning the reasons for their official actions. *See id.* at 422, 61 S.Ct. 999. The *Morgan* decision is routinely cited in decisions employing the extraordinary circumstances test. *E.g.*, *Bogan*, 489 F.3d at 423 (in § 1983 action, explaining that, relying on *Morgan*, "courts have concluded that top executive department officials should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action"); *Johnson v. Att'y Gen. of N.J.*, No. 12-4850, 2015 WL 4915611, at \*2 (D.N.J. Aug. 18, 2015) (in § 1983 action, citing *Morgan* for the principle that "current high-ranking government officials should not be subject to the taking of depositions absent extraordinary circumstances" (internal quotation marks omitted)).

The circuits vary on what constitutes extraordinary circumstances, but nearly all of them agree that a party

must show at a minimum that the information sought is not obtainable from another source. *See Bogan*, 489 F.3d at 423 (depositions "permitted only where it is shown that other persons cannot provide the necessary information"); *In re U.S. Dep't of Educ.*, 25 F.4th at 702 (movant must show "the information sought ... cannot be obtained in any other way"); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (movant must show "that the necessary information cannot be obtained through other, less burdensome or intrusive means"); *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999) (movant must "establish at a minimum that the [high-ranking officials] possess information ... which is not obtainable from another source"); *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (holding extraordinary circumstances did not exist because information was available from other sources); *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586-87 (D.C. Cir. 1985) (same).

Some circuits require that to qualify as an extraordinary circumstance warranting the deposition of a high-ranking official, the information sought must be "essential" to the plaintiff's case. *E.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th at 702; *In re United States*, 197 F.3d at 314. The Ninth Circuit observed that this requirement means the information sought must be "absolutely needed." *In re U.S. Dep't of Educ.*, 25 F.4th at 703.

District courts in Colorado and Utah have developed an extraordinary circumstances test based on decisions from other circuits. Under that test, a party seeking the deposition of a high-ranking official must show: "(1) the official has first-hand knowledge related to the claim being litigated; (2) the testimony will likely lead to the discovery of admissible evidence[;] (3) the deposition is essential to the party's case[;] and (4) the information cannot be obtained from an alternative source or via less burdensome means." *E.g.*, *White*, 2014 WL 3373368, at *2; *see also e.g.*, *FTC v. Nudge, LLC*, No. 2:19-cv-00867, 2020 WL 6827682, at *2 (D. Utah Nov. 20, 2020) (same).

### 2. The District Court's Ruling Is an Abuse of Discretion

In adopting an exception for whistleblower cases, the district court explained: **\*1261** "[T]he court notes that it is difficult, if not impossible, to determine whether a high-ranking official has information that is absolutely needed and that cannot be obtained from any other source until the party has deposed the official and explored the extent of the official's knowledge." Pet., Attach. 3 at 7 (internal quotation marks omitted). The court thus concluded that "it is simply not possible to ascertain prior to the deposition if the testimony is absolutely needed." *Id.* at 8 (internal quotation marks omitted). Essentially, the district court deemed the extraordinary circumstances test unworkable and therefore inapplicable in whistleblower cases.

But even in whistleblower cases, a deposition is unwarranted where the high-ranking official is not the ultimate decision maker. This is true even in the Seventh Circuit, which is the only circuit that arguably has adopted a less stringent standard than the extraordinary circumstances test.[3] In *Stagman v. Ryan*, 176 F.3d 986 (7th Cir. 1999), the Seventh Circuit rejected the plaintiff's attempt to depose the Illinois Attorney General where the attorney general "was not personally involved in the decision to dismiss [the plaintiff]." *Id.* at 994. The court held this was especially true in light of witness testimony that others, not the attorney general, made the decision concerning termination. *Id.* The circumstances here are the same. Ms. Romano and Mr. Green both testified that Mr. Reyes was not the ultimate decision maker concerning Mr. Amann's termination. Indeed, Mr. Green, who *was* the ultimate decision maker, specifically testified he never talked to Mr. Reyes about Mr. Amann and that he made his own independent decision.

In lieu of the extraordinary circumstances test, the district court examined only whether Mr. Reyes's deposition *may* yield admissible evidence. *See* Pet., Attach. 2 at 9 (concluding the deposition is "likely essential to establish a full and complete picture of the circumstances surrounding Amann's termination, including the degree to which Reyes was involved"). We find this standard nearly indistinguishable from the general discovery limitations described in Fed. R. Civ. P. 26(b)(1),[4] and therefore insufficient to protect high-ranking officials from "spend[ing] an inordinate amount of time tending to pending litigation," *Bogan*, 489 F.3d at 423.

In holding that the extraordinary circumstances test does not apply here, the district court observed that Mr. Reyes is not a federal official. It is true that in some cases, separation-of-powers among the federal branches is an important consideration. *See In re U.S. Dep't of Educ.*, 25 F.4th at 699 ("[W]e are tasked with determining whether the district court, by denying the motion to quash the subpoena to depose the former secretary [of education], **\*1262** inappropriately breached the barrier separating one

co-equal branch of the federal government from another."). But the prospect of a federal court ordering the deposition of a high-ranking state official presents similar concerns, because our system not only separates power among branches of the federal government, but also between the state and federal governments. *See Gregory v. Ashcroft*, 501 U.S. 452, 458, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) ("Just as the separation ... of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front."). Accordingly, many of the cases applying the extraordinary circumstances test involve state and local officials. *E.g.*, *Lederman*, 731 F.3d at 203-04 (applying "exceptional circumstances" test to request to depose mayor of New York City); *Bogan*, 489 F.3d at 423 ("The parties agree that Mayor Menino is a high ranking government official and therefore is not subject to being deposed absent a demonstrated need."); *Stagman*, 176 F.3d at 994-95 (affirming district court's denial of plaintiff's request to depose state attorney general); *Denver Homeless Out Loud v. Denver*, No. 20-cv-2985, 2020 WL 7230641, at *1-2 (D. Colo. Dec. 8, 2020) (applying extraordinary circumstances test to plaintiff's subpoena of governor).

The district court also found it important that Mr. Reyes was named as a defendant in his personal capacity, and suggested the extraordinary circumstances test does not apply in such cases. But the district court cited no authority in support of this proposition. At least where the claims arise from the high-ranking official's duties, the policy concerns underlying the extraordinary circumstances test are applicable regardless of whether the official is named in his or her personal capacity. *See Lederman*, 731 F.3d at 203-04 (applying extraordinary circumstances test to mayor, who had been named in both personal and official capacities). Moreover, as the petitioners note, the district court's reasoning would allow plaintiffs to easily evade the extraordinary circumstances test simply by naming high-ranking officials in their personal capacities.

In response to the petition, the district court also speculates that the extraordinary circumstances test would allow high-ranking officials to avoid depositions in purely private legal matters, such as personal injury cases having nothing to do with the official's duties.[5] No one is arguing, however, that the extraordinary circumstances test should apply in *every* case where a public official is sued. In any event, our decision today is limited to the case before us, which does not involve a purely private legal matter. Instead, it involves a plaintiff's request to depose a public official where the claims arise from the official's performance of his official duties.

The district court also held that even under the extraordinary circumstances test, Mr. Reyes must be deposed because *1263 the evidence "not only suggests that Reyes has first-hand knowledge related to Amann's claims, but also raises the reasonable inference that Reyes had an interest in how Amann's situation was resolved." Pet., Attach. 2 at 8 (internal quotation marks and citation omitted). But *of course* an attorney general, by virtue of his or her place as the chief executive of the office, would have an interest in personnel matters relating to the office. If mere interest were sufficient to satisfy the extraordinary circumstances test, then depositions of high-ranking officials would be required in every case involving personnel matters, regardless of whether the official was personally involved in the termination.

Finally, the district court rejected less burdensome means for obtaining information from Mr. Reyes. In particular, the district court observed:

> Unlike an oral deposition, written questions do not enable a party to ask follow-up or clarification questions if the deponent's response is evasive or unclear. Similarly, written questions do not permit a party to pursue new or unanticipated lines of questioning if the deponent provides unexpected revelations. More importantly, in a case such as the one here, in which credibility is central, written responses that are carefully crafted and edited by attorneys are no substitute for the witness's spontaneous answers during a live deposition. Moreover, written questions deny the plaintiff the opportunity of assessing the official's demeaner and credibility.

*Id.*, Attach. 3 at 13. By this reasoning, written questions would virtually never be an adequate alternative to the deposition of a high-ranking official. We find this broad rejection of a less-burdensome-means test to be an inappropriate substitute for a careful examination of whether written questions to Mr. Reyes would be adequate in the circumstances of this case.

In short, we hold that the district court's analysis constitutes an abuse of discretion warranting the issuance of a writ of mandamus. The district court inappropriately departed from the extraordinary circumstances test, which is applied almost universally by state and federal courts across the country. *See* Fern L. Kettler, *Deposition of High-Ranking Government Officials*, 15 A.L.R. 3d, Art. 5, § 1 ("Nearly all courts require that a party demonstrate exceptional circumstances justifying the deposition of a high-ranking government official[.]"). Its reasoning would undermine the important policies advanced by the extraordinary circumstances test.[6]

### 3. The Nonconclusive Guidelines Also Weigh in Favor of Granting the Petition

Our determination that petitioners' right to the writ is clear and indisputable is further supported by four of the five nonconclusive guidelines listed in *In re Qwest Communications*. First, as already noted, the petitioners have no alternate means to secure relief. An interlocutory appeal is not available under the circumstances, *see* 28 U.S.C. § 1292, and it would be inappropriate for Utah's highest-ranking legal officer to secure an appeal by disobeying the court's order and facing contempt charges, *see In re U.S. Dep't of Educ.*, 25 F.4th at 705. Second and relatedly, **\*1264** the damage to Mr. Reyes and the UAGO—in the form of Mr. Reyes being unnecessarily deposed—will not be correctable on appeal. Third, as we have discussed, the district court's order compelling Mr. Reyes's deposition is an abuse of discretion. And fourth, all of the parties agree that the district court's orders (compelling the deposition and denying the motion to reconsider that decision) raise an issue of law of the first impression in this circuit.

### D. Application of the Extraordinary Circumstances Test

Several district courts in this circuit have held that the party seeking the deposition of a high-ranking official must show: "(1) the official has first-hand knowledge related to the claim being litigated; (2) the testimony will likely lead to the discovery of admissible evidence[;] (3) the deposition is essential to the party's case[;] and (4) the information cannot be obtained from an alternative source or via less burdensome means." *E.g.*, *White*, 2014 WL 3373368, at \*2; *see also e.g.*, *Nudge*, 2020 WL 6827682, at \*2 (same). We find that this version of the extraordinary circumstances test sets the bar at an appropriately high level.

Applying this test, it would appear that Mr. Amann has made a sufficient showing as to the first two factors. There was evidence indicating Mr. Reyes had first-hand knowledge related to Mr. Amann's claim. In particular, he sent a text to his campaign manager characterizing Mr. Amann's claims as an effort to "burn us to the ground." Amann Resp. to Pet. at 16 (internal quotation marks omitted). There was also evidence that Mr. Reyes was involved in discussions about who would be the ultimate decision maker concerning Mr. Amann's employment. It also seems likely that Mr. Reyes's deposition would lead to the discovery of admissible evidence. As the district court observed, as head of the UAGO, "any statement made by Reyes would likely be admissible against [UAGO] at trial." Pet., Attach. 3 at 11.

Mr. Amann has not, however, made the requisite showing as to the third and fourth factors. The result of the extraordinary circumstances test will most frequently hinge on whether the party can prove that the deposition is "essential" to its case. Something is "essential" if it is not only relevant, but "*necessary*." *In re United States*, 197 F.3d at 314 (emphasis added); *see also In re U.S. Dep't of Educ.*, 25 F.4th at 703 (information must be "absolutely needed" to be deemed "essential"); *Lederman*, 731 F.3d at 203 (requiring that the information sought be "necessary"). Mr. Amann has not established that Mr. Reyes's deposition is essential to his claim.

As for the fourth factor, Mr. Amann had the opportunity to depose Ms. Romano and Mr. Green, who were themselves high-ranking officials at the UAGO. They were adequate alternative sources of information concerning Mr. Amann's termination. Indeed, they were actually *better* sources of information concerning the termination given that they both testified Mr. Reyes had *no* involvement or influence in the decision to terminate Mr. Amann.[7]

### III. Conclusion

We grant the petition for writ of mandamus and order the district court to vacate its order compelling the deposition of Mr. Reyes. We further grant the pending motion **\*1265** for leave to file an amicus brief and accept the amicus brief for filing.

HARTZ, J., dissenting.

I respectfully and reluctantly dissent. Because of the importance of protecting high officials from the burdens of litigation, I fully agree with the adoption of the extraordinary-circumstances test. But I think the district court correctly determined that the circumstances here satisfy the test. Given the Attorney General's interest in the Plaintiff's employment as shown by the conduct described in the last two paragraphs of § I.A. of this court's order, particularly his two messages to his campaign manager and his to-do list, I do not think there is an adequate substitute for a deposition to probe the Attorney General's involvement in the termination.

**All Citations**

56 F.4th 1254

## Footnotes

1   Rule 30(b)(6) provides that "a party may name as the deponent ... a governmental agency ... and must describe with reasonable particularity the matters for examination." The named organization then must designate a witness to testify on the organization's behalf concerning those matters.

2   At our invitation, the district court filed a response to the petition, which we have carefully considered together with Mr. Amann's response.

3   *See* Olivieri v. Rodriguez, 122 F.3d 406, 409-10 (7th Cir. 1997) ("[Public officials] should not have to spend their time giving depositions in cases arising out of the performance of their official duties unless there is some reason to believe that the deposition will produce or lead to admissible evidence."). Although the Seventh Circuit has not abandoned the standard set forth in *Olivieri*, more recent district court decisions in the Seventh Circuit have applied the extraordinary circumstances test without any mention of *Olivieri*, *see, e.g.*, Delaney v. Beth, 339 F.R.D. 610, 611 (E.D. Wis. 2021); Jackson v. Scifres, No. 19-cv-1516, 2021 WL 3510805, at *1 (E.D. Wis. July 15, 2021).

4   Rule 26(b)(1) provides that the scope of discovery includes "any nonprivileged matter that is relevant to the party's claim or defense and proportional to the needs of the case," and that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."

5   In arguing that the extraordinary circumstances test does not apply here, the district court characterizes Mr. Amann's claims against Mr. Reyes as being unrelated to governmental policy. But the extraordinary circumstances test applies not just in cases involving an official's implementation of government policies, but in cases involving an official carrying out his or her official duties. *See, e.g.*, Lederman, 731 F.3d at 203 (observing that "a high-ranking government official should not—absent exceptional circumstances—be deposed or called to testify *regarding the reasons for taking official action*" (emphasis added)).

6   Mr. Amann argues that a district court cannot abuse its discretion in the absence of an applicable standard in the Tenth Circuit. But this is tantamount to saying that a writ of mandamus can never be granted where there is no applicable standard. We reject that assertion, especially given that one of the nonconclusive guidelines is whether the district court's order raises an issue of law of the first impression. In re Qwest Commc'ns, 450 F.3d at 1184.

7   If as an alternative to a deposition the district court compels Mr. Reyes to respond to interrogatories and later finds that Mr. Reyes has failed to make a good faith effort to respond, Mr. Amann may renew his request for a deposition.

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.