## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

THE ESTATE OF NENA CHARLEY,
by and through Personal Representative,
TIMOTHY CHARLEY, TIMOTHY
CHARLEY, as parent and next friend of
NILE CHARLEY, and TIMOTHY
CHARLEY, Individually,

      Plaintiffs,

vs.                                        Cause No. 1:22-cv-00033-JB-JFR

THE UNITED STATES OF AMERICA,
ROBIN RANELL SALES, R.N., JOELLE
CATHERIN CERO GO, R.N., AB STAFFING
SOLUTIONS, LLC, a Foreign Corporation,
NEXT MEDICAL STAFFING, a Foreign
Corporation, and JOHN or JANE DOE
Corporation.

      Defendants.

## DEFENDANT UNITED STATES' RESPONSE TO PLAINTIFFS' AMENDED MOTION FOR RELIEF BASED ON NEWLY DISCOVERED EVIDENCE REGARDING THE COURT'S RULING ON DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT

Plaintiffs asked the Court to "grant relief from the Court's ruling at the hearing on January 5, 2024, regarding Defendant USA's Motion for Summary Judgment for Lack of Causation on Plaintiff's Loss of Chance Claim . . ." Doc. 296 at 1.  Plaintiffs moved pursuant to either Fed. R. Civ. P. 59 or 60(b)(2), claiming there is new evidence. Plaintiffs' request, however, is premature because both rules contemplate final judgments. *Anderson Living Tr. v. WPX Energy Prod., LLC*, 308 F.R.D. 410, 430-435 (D.N.M. 2015) (Browning, J.).

Regardless, Plaintiffs failed to show they are entitled to relief. Instead, Plaintiffs mischaracterize Defendant United States' experts' testimony, made an

improper attempt to introduce untimely expert witness testimony, and rehashed previously available evidence and arguments. Because Plaintiffs failed to demonstrate they are entitled to relief from the Court's Order granting the United States' Motion for Summary Judgment, the Court should deny Plaintiffs' motion.

## I.    Introduction

This is a wrongful death case arising out of Plaintiffs' allegations that Mrs. Charley "suffered a loss of chance of survival" due to alleged failures to "properly assess, care for, treat, and transfer" her during her first visit to GIMC on May 28, 2019. Doc. 63, ¶ 31. Mrs. Charley contracted hantavirus while working for Family Dollar. She first sought treatment at Gallup Indian Medical Center ("GIMC") at 1:08 a.m. on May 28, 2019, complaining of body aches, headache, and loss of appetite. During this first visit to GIMC, Mrs. Charley was in the prodromal phase of hantavirus and was afebrile, had a normal respiratory rate, normal blood oxygen saturation, normal blood pressure, and a slightly elevated heart rate. When she was discharged, Mrs. Charley's vital signs had improved, she was clinically stable, and stated she felt better. Hours later, she awoke with shortness of breath and returned to GIMC at 10:25 a.m. on May 28, 2019 in the cardiopulmonary phase of hantavirus. She was hypoxic and in respiratory distress. She was transferred to UNM Hospital and subsequently died on May 29, 2019.

Plaintiffs claim Mrs. Charley "suffered a loss of chance of survival" due to Defendants' alleged failures to "properly assess, care for, treat, and transfer" her during her first visit to GIMC on May 28, 2019. Doc. 63, ¶ 31. Expert testimony is

necessary to prove alleged negligence caused Mrs. Charley's lost chance of survival. *Alberts v. Schultz*, 1999-NMSC-015, ¶ 17, 126 N.M. 807, 975 P.2d 1279, 1284; *see also* Doc. 235 at 6-8. Plaintiffs, however, have no expert testimony to satisfy this essential element of their claim. *See* Doc. 235 at 7-8. Plaintiffs disclosed Bruce Polsky, M.D. as an infectious disease specialist. Dr. Polsky, however, was excluded from offering expert testimony. *See* Doc. 231. Plaintiff did not identify any other expert who provided expert testimony on a lost chance of survival. *See* Doc. 235.

The United States moved to dismiss Plaintiffs' claims for lack of necessary expert testimony showing causation. *See* Doc. 235.  The Court heard oral argument on January 5, 2024, and stated it was inclined to grant the motion. On September 9, 2024, the Court entered its Order granting the United States's Motion for Summary Judgment for Lack of Causation on Plaintiffs' Loss of Chance Claim. Doc. 293.

## II. Plaintiffs failed to show they are entitled to relief under Rules 59(e) or 60(b)(2)

Rule 59(e) and 60(b)(2) contemplate final judgments. *Anderson Living Tr.*, 308 F.R.D. at 430-35. On January 5, 2024, the Court stated it was taking the United States' summary judgment motion under advisement and was inclined to grant them. *See* Clerk's Minutes Before the Hon. James O. Browning, Doc. 259. On September 9, 2024, the Court entered its Order granting the motion, but stated it "will issue at a later date… a Memorandum Opinion more fully detailing its rationale for its decision." Doc. 293 at 1. A separate final judgment is required for grants of summary

judgment. *See* Fed. R. Civ. P. 58(a). Because there has been no final judgment, Plaintiffs' request for relief is premature and improper.[1]

Furthermore, Plaintiffs cannot show they are entitled to reconsideration of the Court's order granting summary judgment. This Court recognized that "[u]nlike the motion that produced the prior ruling, a motion to reconsider is not—and is not supposed to be—a fair fight procedurally." *Anderson Living Trust*, 308 F.R.D. at 435. The "deck is stacked against the movant for reconsideration." *Id*. Plaintiffs bear the burden of producing evidence, legal support, and argument to persuade the Court to reconsider its position using only the evidence, argument, and legal authority the moving party presents to the Court. *Id*. They must "not rely on the Court to do any supplemental fact finding or legal research." *Id*. Plaintiffs failed to meet this burden.

### A.    Plaintiffs failed to show the Court should reconsider its order granting the United States' motion for summary judgment

This Court identified three factors for determining the level of which the Court should restrict its review of its prior ruling. *Id*. "First, the Court should restrict its review of a motion to reconsider a prior ruling in proportion to how thoroughly the earlier ruling addressed the specific findings and conclusions that the motion to reconsider challenges." *Id*. at 434. "Second, the Court should consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence the parties may produce, and use

---

[1] Alternatively, if the Court's Order is deemed a final judgment, Plaintiffs' request for relief is untimely under Rule 59, which requires motions to amend or alter judgments to be filed within 28 days after the entry of judgment. Fed. R. Civ. P. 59(b).

those factors to assess the degree of reasonable reliance the opposing party has placed in the Court's prior ruling." *Id.* "Third, the Court should consider the *Servants of the Paraclete v. Doe* grounds." *Id.* The factors weigh in favor of a restricted review and against reconsideration.

The first factor weighs in favor of a restricted review and against reconsideration because the Court thoroughly addressed the issue of the exclusion of Plaintiffs' causation expert witness and subsequent motions for summary judgment for lack of causation testimony. These matters were fully briefed. *See* Docs. 221, 227, 228, 233, 234, 235, 236, 243, 246, 247, 248 249, 251, and 293. The Court also heard oral argument on these motions and related matters on October 6 and 13, November 13, 2023, and January 5, 2024.

The second factor also weighs in favor of a restricted review and against reconsideration due to the progress and posture of the case, and the reliance of Defendants on the Court's order. "Stability becomes increasingly important as the proceeding nears final disposition…" *Anderson Living Trust*, 308 F.R.D. at 434 (quoting 8B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Vikram David Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman & Catherine T. Struve, *Federal Practice & Procedure* § 4478.1 (2d ed.)). Trial was vacated and the Court stated it was inclined to grant the dispositive motions. In reliance on the Court's order, Defendants filed and argued in favor of their dispositive motions. The oral argument took place on January 5, 2024, at which time the Court stated it was

inclined to grant the motion. Subsequently, the Court entered an order granting the United States' motion for summary judgment. Doc. 293.

Finally, the *Servants of Paraclete* factors weigh in favor of a restricted review of Plaintiffs' request and against reconsideration. These factors are the same factors used for requests to reconsider under Rule 59(e). *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) and *Anderson*, 308 F.R.D. at 434. As discussed below, Plaintiffs failed to show they are entitled to relief under Rule 59(e).

Plaintiffs failed to meet their burden of production and show they are entitled to have the Court reconsider granting the United States' motion for summary judgment. Each factor identified by this Court in *Anderson* weighs in favor of restricting the review of Plaintiffs' request and against reconsideration.

### B. Plaintiffs are not entitled to reconsideration under Rule 59(e)

Motions pursuant to Rule 59(e) for reconsideration "are inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Servants of Paraclete*, 204 F.3d at 1012. Additionally, the Tenth Circuit stated that "revisiting the issues already addressed is not the purpose of a motion to reconsider." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete*, 204 F.3d at

1012; *Anderson*, 308 F.R.D. at 427. Plaintiffs have only asserted new evidence they claim was previously unavailable.

Plaintiffs' case was and is fatally flawed because they do not have an expert causation witness. The Court already ruled on excluding Plaintiffs' previously disclosed causation expert and ruled against Plaintiffs' request to reconsider that exclusion.  Furthermore, Plaintiffs unsuccessfully tried to substitute Dr. Polsky with Dr. Harkins as a causation expert. *See* Doc. 228, Doc. 231, and Doc. 279-1.

To overcome summary judgment on the United States' summary judgment motions, Plaintiffs need competent expert causation testimony sufficient to raise a genuine issue of material fact. *See Holley v. Evangelical Lutheran Good Samaritan Soc.*, 588 F. App'x 792, 795 (10th Cir. 2014). Plaintiffs failed to identify any competent expert causation testimony that was not previously available. Instead, Plaintiffs misrepresented the testimony of Dr. Mertz, attached the affidavit of an untimely disclosed expert witness, Dr. Harkins, and rehashed prior claims and evidence.

      1.    **Plaintiffs' misrepresentation of Dr. Mertz's testimony is not sufficient to provide a basis of reconsideration of the United States' motion for summary judgment**

Plaintiffs' misrepresentation of Dr. Mertz's testimony did not raise a genuine issue of material fact. Summary judgment is proper when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Kannady v.*

*City of Kiowa*, 590 F.3d 1161, 1172 (10th Cir. 2010) (citation omitted). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Plaintiffs' evidentiary burden required them to produce genuine expert testimony that the alleged negligence caused Mrs. Charley a lost chance of survival, which they failed to do. *See Holley*, 588 F. App'x at 795 and Doc. 235 at 5-8.

Plaintiffs attempted to manufacture causation testimony by misrepresenting Dr. Mertz' testimony. "[T]he district court [is] under no obligation to accept a claim that [is] blatantly contradicted by the record, so that no reasonable jury could believe it." *Kannady*, 590 F.3d at1172 (internal quotations omitted). Contrary to Plaintiffs' claims, Dr. Mertz did not offer testimony that any alleged failure on the part of GIMC personnel "to diagnose and treat Mrs. Charley's hantavirus promptly caused a loss of chance of survival." Doc. 296 at 5. Instead, Plaintiffs' claims that Dr. Mertz provided causation opinions that would raise a genuine issue of material fact regarding causation for a lost chance of survival theory are based upon misrepresentation of his testimony and false and misleading premises regarding how hantavirus is detected, diagnosed, and treated, which do not comport with reality.

Plaintiffs' theory of liability and their claim that Mrs. Charley suffered a lost chance of survival is based upon the misrepresentation that her hantavirus could have been diagnosed during her first visit to GIMC when she was in the prodromal phase. Contrary to Plaintiffs' position, Dr. Mertz testified that it is not feasible to

diagnose hantavirus in the prodromal phase. Deposition of Gregory Mertz, M.D. at 41:13-43:4; 60:7-17; 84:21-85:7; 100:11-17; 172:10-174:19; 254:14-258:4, attached hereto as **Exhibit A**. Dr. Mertz testified that the problem with diagnoses and early treatment of hantavirus during the prodromal phase is that the symptoms during the prodrome are nonspecific and due to the "difficulty of differentiating the patients in prodrome from other diseases." *Id*. at 100:11-17 and 258:1-4.

Plaintiffs also incorrectly stated GIMC "had the capability of conducting tests that could diagnose hantavirus in the prodromal phase, including antibody tests, PCR tests, and CBCs." Doc. 296 at 9. Plaintiffs cited to a portion of Dr. Mertz's testimony that goes from 49:25-50:14, but then jumped to 52:15. Doc. 296 at 9. The portion that Plaintiffs jumped over, however, is highly relevant and refutes their claims. Plaintiffs cited to a portion of the testimony that discussed the use of PCR and CBC testing in the prodromal phase. Plaintiffs, however, did not include Dr. Mertz's complete answer where he testified that those tests were largely available in Chile, but that they "are not widely available in the United States" and were not available at the time Mrs. Charley went to GIMC. *Id*. at 50:15-51:18. Plaintiffs excluded this portion of Dr. Mertz's testimony to misrepresent that this testing was available at GIMC.

Furthermore, Dr. Mertz testified that GIMC took a sample when Mrs. Charley was in the cardiopulmonary phase and sent it out for testing, but the results did not come back until after she died. *Id*. 51:7-19. He said that even if the sample was taken sooner, it would not have impacted the patient. *Id*. As a result, Plaintiffs have no basis to claim that during the prodromal phase if GIMC would have done the

"appropriate testing . . . they would have diagnosed her with hantavirus and Mrs. Charley would have survived." Doc. 296 at 9-10.

Plaintiffs incorrectly claimed that Dr. Mertz provided "causation opinions which raise a genuine issue of material fact in his deposition about whether GIMC personnel's failure to diagnose and treat Mrs. Charlie's hantavirus promptly caused a loss of chance of survival," claiming she had a survivability rate of 10-25%. Doc. 296 at 5. In support of this proposition, Plaintiffs cited to Dr. Mertz's deposition at 234:9-22. *See id*. Plaintiffs chose an isolated portion of his testimony that was part of a larger discussion surrounding a hypothetical that was not the facts of this case. Plaintiffs' counsel asked Dr. Mertz for a "[a] number and a range, assuming that Nena is in the hospital when she gets to that very beginning res—cardiopulmonary phase of hantavirus, and that they—the hospital and the people that work there are doing things that you guys are training them to do, and that's what happens . . . That I want to know what the expected survival rate is based on those factors." Ex. A at 233:17-234:2. In responding, Dr. Mertz clarified that this was a hypothetical, and Plaintiffs' counsel agreed, stating "[c]learly, because she—was not in the hospital." *Id*. at 234:4-8. Dr. Mertz then went on to testify about the actual facts of this case and testified that due to the severity of Mrs. Charley's condition and the pace of the progression, the phone calls and response was "going to be pretty similar" to what occurred in this case. *Id*. at 234:9-14. He testified that Mrs. Charley's disease "progressed particularly rapidly," and that in cases with rapid progression in rural settings like Mrs. Charley's the likely outcome is fatal. Ex. A at 232:25-233:8. Dr.

Mertz later testified that any survivability number he provided in response to Plaintiffs' hypothetical questions was not tied to the facts of the case. *Id*. 274:18-22. Ultimately, Dr. Mertz testified that no action or inaction on the part of anyone at Gallup Indian Medical Center led to a lost chance of survival of Mrs. Charley. *Id*. 275:2-12. Contrary to Plaintiffs' claims, Dr. Mertz did not testify that Mrs. Charley suffered a lost chance of survival due to any alleged failure on the part of GIMC.

Plaintiffs' discussion of the endemic nature of hantavirus to the Gallup area also provides no basis for reconsideration because Plaintiffs identified no new evidence. Plaintiffs claim that Dr. Mertz "admitted that hantavirus is endemic to McKinley County" Doc. 296 at 10. The endemic nature of hantavirus was addressed ad nauseam prior to the Court's order granting the United States summary judgment motion. In fact, Plaintiffs identified multiple depositions predating the granting of summary judgment wherein the endemic nature of hantavirus was discussed. Doc. 296 at 10 n.1. Furthermore, the endemic nature of hantavirus in the Four Corners Region does not provide necessary expert causation testimony.

Plaintiffs' argument that the New Mexico Department of Health's report, "that there were three other people with hantavirus within the last two weeks, bringing the total to five, should have increased GIMC's awareness of potential hantavirus patients at GIMC," fails to support Plaintiffs' request for reconsideration. *See* Doc. 296 at 11. In support of this claim, Plaintiffs once again made a misleading argument by identifying only a portion of Dr. Mertz's testimony. *Id*. Plaintiffs left out the highly relevant point that the New Mexico Department of Health report upon which they

relied was discussing the 2023 totals of hantavirus. Ex. A at 122:6-9. It is unclear how hantavirus cases in 2023 should have "increased GIMC's awareness of potential hantavirus patients" when it was treating Mrs. Charley in May 2018.

Plaintiffs' discussion of Mrs. Charley's second visit to GIMC also fails to raise a basis for reconsideration. Plaintiffs do not cite to any new evidence or testimony that there was any lost chance of survival because of Mrs. Charley's second visit to GIMC. Plaintiffs first discussed the lab findings and treatment when Mrs. Charley returned to GIMC. *See* Doc. 296 at 11-12. Plaintiffs were in possession of the lab findings and treatment during the second GIMC visit, which her own expert discussed prior to the Court granting summary judgment. *See* Expert Report of David S. Glaser at 4, attached as **Exhibit B**.

Plaintiffs also misrepresented Dr. Mertz's testimony again to claim GIMC failed to timely treat Mrs. Charley during her second visit to the ER. Plaintiffs failed to include a highly relevant portion of Dr. Mertz's testimony with respect to findings from the CBC and the timing of GIMC's response. *See* Doc. 296 at 11-12. Plaintiffs ended their citation of Dr. Mertz's testimony where he said the high number of immunoblasts in the CBC were missed initially then corrected. *Id*. Plaintiffs, however, failed to identify the next sentence in Dr. Mertz's testimony when he said, "[e]verything else was so characteristic that—my sense is that they reacted promptly to that." Ex. A at 192:3-4.

Additionally, Plaintiffs failed to provide causation testimony that a failure to timely treat Mrs. Charley during her second visit caused a loss of chance of survival.

12

*See* Doc. 296 at11-13. Instead, Plaintiffs identified a general discussion of potential symptoms that could be part of a hantavirus presentation and potential lab findings. *Id*. Plaintiffs then made the conclusory arguments that "Defendants' failures during her visits to GIMC led to Mrs. Charley's loss of chance of survival," and that Defendants "again failed to timely treat Mrs. Charley" during her second visit. *Id*. at 13. Plaintiffs, however, produced no new evidence, or any evidence, to show that any alleged failures during the second visit caused a lost chance of survival. *Id*.

Plaintiffs also failed to identify any new lost-chance causation evidence regarding the alleged failures of Dr. Leach, Nurse Sales, or Nurse Go. Instead, Plaintiffs relied upon Dr. Iralu's deposition testimony, which predated the granting of summary judgment,[2] and misstating Dr. Mertz's testimony (incorrectly concluding that hantavirus should have been tested for and diagnosed during prodromal phase). *Compare* Doc. 296 at13-15 with Ex. A at 41:13-43:4; 60:7-17; 84:21-85:7; 100:11-17; 172:10-174:19; 254:14-258:4.

Plaintiffs failed to identify any causation testimony that any alleged failures during the time Mrs. Charley was treated by Dr. Leach and Nurses Sales and Go resulted in a measurable lost chance of survival. Plaintiffs' arguments presuppose the ability to diagnose hantavirus during the prodromal phase. Plaintiffs argue that Dr. Mertz's testimony "*implies* that early diagnosis during the prodromal stage is critical." Doc. 296 at 14 (emphasis added). Contrary to this alleged implication and Plaintiffs' arguments, Dr. Mertz testified that it is not feasible to diagnose hantavirus

---

[2] Dr. Iralu was deposed on July 6, 2023.

in the prodromal phase. Ex. A at 41:13-43:4; 60:7-17; 84:21-85:7; 172:10-174:19; 254:14-258:4. Dr. Mertz even testified that in Mrs. Charley's case, GIMC's healthcare providers could not have made a presumptive diagnosis of hantavirus during her first visit when she was in the prodromal phase. *Id*. at 172:10-174:19.

Plaintiffs also baselessly and inaccurately claim that Dr. Mertz "fails to possess knowledge about the environmental factors relevant to the communities where hantavirus is endemic." Doc. 296 at 15. Plaintiffs cited to a portion of Dr. Mertz's testimony where he testified, he was "not familiar with [GIMC's] specific training format during that time period," with what IHS teaches the patient population, or if anyone at UNM is teaching about questions to ask during the clinical history and physical to determine if a patient has hantavirus. *Id*. Dr. Mertz stating he is not aware of specific training is not the same as Plaintiffs' claim that he lacks knowledge about the environmental risk factors of hantavirus.

As a result, Plaintiffs' various efforts to misrepresent Dr. Mertz's testimony failed to provide a basis for reconsideration.

## 2. Any effort to elicit expert testimony from Dr. Harkins, including the use of her affidavit, should be excluded, and not considered as a basis for reconsideration

Plaintiffs knew about Dr. Harkins well before the submission of the motions for summary judgment, could have called her as an expert witness prior to their disclosure deadline but chose not to do so, could have deposed Dr. Harkins but failed to do so, and could have timely moved to substitute her as an expert but failed to do

so. Furthermore, any opinions Dr. Harkins could have provided were available to Plaintiffs prior to the Court granting summary judgment.

Plaintiffs again included an improper and untimely filed affidavit from Michelle Harkins, M.D. as a basis for reconsideration. *See* Doc. 272 and 296. Plaintiffs did not disclose Dr. Harkins as an expert, Plaintiffs' prior requests to substitute Dr. Harkins as an expert for Dr. Polsky were not granted, and the affidavit Plaintiffs submitted is an improper attempt to circumvent the requirements of Fed. R. Civ. P. 26(a)(2) and the Court's various prior orders regarding expert disclosures.

Plaintiffs were originally ordered to identify and disclose their expert witnesses by November 20, 2022. Doc. 49. The Court stated the "parties shall have their experts ready to be deposed at the time they identify them and produce their reports." *Id*. Plaintiffs asked for and obtained several extensions to disclose experts. The first of their requests extended the deadline to February 6, 2023. Doc. 72. The Court entered an Amended Scheduling Order, extending the deadline for Plaintiffs to provide expert reports to April 4, 2023. Doc. 95. Plaintiffs sought and obtained another extension to June 23, 2023. Doc. 108. The Court extended Plaintiffs' deadline to disclose experts again to July 21, 2023. Docs. 142. When Plaintiffs finally made their disclosure, Dr. Harkins was not disclosed as an expert witness.

Plaintiffs' disclosed causation expert, Dr. Polsky, was excluded as an expert witness because Plaintiffs repeatedly disregarded Court orders concerning the

United States' efforts to depose Dr. Polsky.[3] On November 14, 2023, the Court held a hearing regarding Dr. Polsky's repeated failures to appear for a deposition. During that hearing, Plaintiffs' counsel stated they had another hantavirus expert witness from UNM and asked the Court for permission to use her instead of Dr. Polsky. Transcript of November 14, 2023, hearing at 28:14-30:23, previously produced as Doc. 279-1. This request was not granted. Plaintiff did not identify the witness by name, but stated she was "involved in treating our client." *Id*. at 28:18. On November 30, 2023, Plaintiffs again asked the Court to reconsider its exclusion of Dr. Polsky as an expert, and in the alternative, asked the Court for leave to substitute Dr. Polsky with an alternative infectious disease expert. Doc. 228 at 8.

On October 13, 2023, Plaintiffs' counsel sought leave to depose Dr. Harkins stating that "Michelle Harkins is the critical care doctor that was involved in the care. She's a UNMH doc. And so, Dr. Harkins is just a direct treater and somebody that is particularly familiar with Hantavirus." Transcript of October 13, 2023, hearing at 93:18-94:3, previously produced at Doc. 279-2. No parties objected to Plaintiffs taking her deposition and the Court granted leave for the deposition. Plaintiffs, however, never took her deposition.

Plaintiffs disregarded the Court's refusal to allow a new expert by submitting Dr. Harkins's affidavit. During the November 14, 2023, hearing, the Court stated it

---

[3] Defendant United States' Motion to Exclude the Testimony of Bruce W. Polsky for Failure to Appear at his Court-Ordered Deposition sets forth the background information of Plaintiffs' numerous violations of the Court's orders and failures to have their causation expert, Bruce W. Polsky, appear for his deposition. Doc. 221 at 2-7.

would likely not grant a motion to substitute an expert, but stated Plaintiffs could file such a motion. Doc. 231 at 2. Plaintiffs never filed any motion to substitute Dr. Harkins as an expert. On January 5, 2024, the Court stated it is "not going to grant any request that the plaintiffs be allowed to get a new expert." January 5, 2024 Transcript at 127:24-25, previously produced as Doc. 281-1. Despite the Court saying it would not grant Plaintiffs' request for a new expert, Plaintiffs have tried to backdoor expert testimony through Dr. Harkins's affidavit.

While Plaintiffs' counsel represented to the Court that Dr. Harkins was "just a direct treater" who was "involved in the care" of Mrs. Charley, her affidavit does not mention any work as a treating provider and instead asserts unsupported expert opinions. *See* Doc. 296-1 (setting forth conclusory opinions about standard of care and causation). "Parties in federal court must disclose all witnesses, including expert witnesses, in a timely manner. Thus, plaintiffs must disclose treating physicians, whether they are to testify as lay witnesses or experts, in accordance with the rules." *Peshlakai v. Ruiz*, 2013 WL 6503629, at *13 (D.N.M. Dec. 7, 2013) (Browning, J.). This Court warned that "[l]awyers have to be careful about planning on using their treating physicians to slip into trial expert testimony without providing an expert report, because the 2000 amendments to the Federal Rules of Evidence have changed significantly the opinion of testifying experts." *Id.* "Under Tenth Circuit law, treating physicians not disclosed as experts are limited to testimony based on personal knowledge and may not testify beyond their treatment of a patient." *Witherspoon v. Navajo Ref. Co., L.P.*, 2005 WL 5988650, at *1 (D.N.M. June 28, 2005) (Black, J.)

(relying upon *Davoll v. Webb,* 194 F.3d 1116, 1138–39 (10th Cir.1999); *and Parker v. Central Kansas Med. Ctr,* 57 Fed. Appx. 401 (10th Cir.2003) (unpublished opinion) (upholding exclusion of causation evidence from a treating physician not properly disclosed)).

Dr. Harkins was not timely disclosed as an expert witness. Despite this failure, Plaintiffs seek to proffer expert testimony through the form of Dr. Harkins's conclusory affidavit over one year after Plaintiffs' disclosure deadline and in violation of the requirements of Fed. R. Civ. P. 26(a)(2). "Expert reports 'must be detailed and complete,' and 'must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions.'" *Leon v. FedEx Ground Package Sys., Inc.*, No. 13-civ-1005, 2016 WL 1158079, at *11 (D.N.M. Mar. 1, 2016) (Browning, J.) (quoting *Salgado by Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 (7th Cir. 1998)). Plaintiffs failed to provide an expert report for Dr. Harkins including her complete statement of opinions and the bases for those opinions. The affidavit Plaintiffs rely on is not detailed and fails to show how and why Dr. Harkins reached her opinions.

The Court should exclude Dr. Harkins's affidavit and any attempt by Plaintiffs to elicit expert testimony from Dr. Harkins. "District courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Leon*, 2016 WL 1158079, at *6 (D.N.M. Mar. 1, 2016) (cases collected). "The United States Court of Appeals for the Tenth Circuit has identified four factors that a district court should consider when deciding whether to exclude expert evidence: "[i] the prejudice or surprise to the party against whom the testimony is offered; [ii] the ability of the party to cure the

prejudice; [iii] the extent to which introducing such testimony would disrupt the trial; and [iv] the moving party's bad faith or willfulness." *Id.* (quoting *Ellsworth v. Tuttle,* 148 Fed.Appx. 653, 665 (10th Cir.2005) (unpublished) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d at 993). Plaintiffs' introduction of the affidavit is an improper end run around the disclosure requirements for experts and should therefore be excluded. Even if the introduction of the affidavit could be considered as an expert disclosure it should be excluded.

The first factor for exclusion is met because allowing Dr. Harkins's affidavit would result in substantial prejudice to the Defendants. After facing exclusion of their causation expert, Plaintiffs twice asked to use Dr. Harkins as an expert witness. Plaintiffs' requests were denied both times. Based on the lack of necessary causation expert testimony, each set of Defendants filed separate motions for summary judgment, successfully argued the motions, and the Court stated it was inclined to grant each motion. Allowing Plaintiffs to use Dr. Harkins over one year after their expert disclosure deadline and months after the completion of dispositive motions would result in prejudice and expense to the Defendants who already disclosed experts and engaged in expert depositions and motions practice. Moreover, Plaintiffs have received the unfair advantage of submitting Dr. Harkins's affidavit after the Defendants submitted their expert witness reports and after the United States' causation expert sat for his deposition. Additionally, Dr. Harkins asserted new theories of negligence, including a claim that the nurses should not have provided Mrs. Charley with fluids. Doc. 296-1. This theory of negligence was not part of

Plaintiffs' Complaint or First Amended Complaint and was not part of any of Plaintiffs' prior experts' reports. Responding to Dr. Harkins's untimely expert opinions would require Defendants and their experts to expend additional time, resources, and expenses to rebut these new claims; it would require additional expert disclosures by the Defendants; would require reopening discovery; and would likely then require additional dispositive motion briefing.

The second factor is met because the United States cannot cure this prejudice. The Court granted Defendants' motions for summary judgment. Doc. 293. The Defendants took on the time and expense of filing these motions based upon Plaintiffs' failure to have the requisite expert causation testimony and after her prior requests to substitute Dr. Harkins as an expert were denied. Furthermore, Plaintiffs' untimely and improper disclosure occurred after the Defendants' expert disclosures and the deposition of the United States' causation expert. Responding to the affidavit that Plaintiffs intend to serve as expert opinions without providing the required disclosures set forth in Rule 26 prejudices Defendants as they are unable to meaningfully respond to the conclusory statements.

Introduction of Dr. Harkins's affidavit or any expert opinions would disrupt the status of the case. Trial was cancelled after Defendants filed their summary judgment motions. The motions were premised in part on Plaintiffs' failure to have the required expert causation testimony. *See* Docs. 233, 234, and 235. Oral argument was heard, and the Court stated it was inclined to grant the motions. The matter of causation has already been fully briefed and addressed by the Court. Plaintiffs waited

well beyond the midnight hour to submit Dr. Harkins's affidavit. As a result, the third factor is met.

Plaintiffs' failure to timely disclose Dr. Harkins as an expert witness was willful. Plaintiffs knew about Dr. Harkins well before Dr. Polsky was excluded but chose not to disclose her as an expert witness. *See* Doc. 279-1 at 28:14-29:4. Plaintiffs attempted to disclose Dr. Harkins only after they were faced with the exclusion of Dr. Polsky. *Id*. *See also* Doc. 228. Plaintiffs also waited months after the hearing on the Defendants' motions for summary judgment and only after Plaintiffs' deposed Defendants' experts to provide Dr. Harkins's opinions. Additionally, in October 2023, the Court granted Plaintiffs leave to depose Dr. Harkins. Plaintiffs, however, have made no effort to take her deposition. Dr. Harkins was a known witness to Plaintiffs, and someone that Plaintiffs believed could have been an expert witness. Plaintiffs, however, chose not to disclose her timely or properly, and instead waited to ambush the parties with her improper and conclusory affidavit. For these reasons, her affidavit should be excluded as should any effort on the part of Plaintiffs to elicit expert testimony from Dr. Harkins. Plaintiffs failed to show inclusion of Dr. Harkins' affidavit, or any testimony would be proper or that there is a basis for reconsidering the Court's order granting the United States' motion for summary judgment.

Plaintiffs had the burden of producing evidence and argument to persuade the Court to reconsider its position and cannot "rely on the Court to do any supplemental fact finding or legal research. *Anderson Living Trust*, 308 F.R.D. at 435. Plaintiffs' misrepresentation of Dr. Mertz' testimony and reliance on Dr. Harkins's non-expert

affidavit does not meet their burden to produce new evidence for reconsideration. Therefore, Plaintiffs failed to identify any previously unavailable expert causation evidence and failed to show they are entitled to reconsideration under Rule 59(e).

### C.    Plaintiffs are not entitled to reconsideration under Rule 60

Similarly, Plaintiffs failed to show they are entitled to reconsideration under Fed. R. Civ. P. 60. "Relief under Rule 60(b) is discretionary and is warranted only in exceptional circumstances." *Van Skiver*, 952 F.2d at 1243. "A litigant shows exceptional circumstance by satisfying one or more of Rule 60(b)'s six grounds for relief from judgment." *Id*. at 1243-44. Fed. R. Civ. P. 60(b)'grounds for relief from are:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

As with Rule 59, Plaintiffs are only relying upon a claim that there is new evidence. As shown, Plaintiffs failed to identify any competent expert causation evidence that could not have been discovered prior to the filing of the motions for summary judgment. Plaintiffs, as the parties moving for reconsideration, had the "full burden of production" to persuade the Court to reconsider its prior ruling. Plaintiffs failed to meet this burden and are not entitled to relief under Rule 60(b).

### III.    Conclusion

Plaintiffs failed to show they are entitled to reconsideration of the Court's Order granting the United States' Motion for Summary Judgment for Lack of

Causation on Plaintiff's Loss of Chance Claim. The United States respectfully requests the Court deny Plaintiffs' request to reconsider its prior ruling and submit a final judgment granting each Defendants' motion for summary judgment.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*/s/ Brett C. Eaton 11/1/24*
Brett C. Eaton
Assistant United States Attorney
201 Third Street NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274; Fax: (505) 346-7205
brett.eaton@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 1, 2024, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties and counsel of record to be served, as more fully reflected on the Notice of Electronic Filing.

*/s/ Brett C. Eaton 11/1/24*
Brett C. Eaton
Assistant U.S. Attorney