IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TIMOTHY CHARLEY, individually, as
personal representative of the ESTATE OF
NENA CHARLEY, and as parent and next
friend of NILE CHARLEY,

        Plaintiff,

vs.                                                                                        No. CIV 22-0033 JB/JFR

THE UNITED STATES OF AMERICA;
ROBIN RANELL SALES, R.N.; JOELLE
CATHERIN CERO GO, R.N.; AB STAFFING
SOLUTIONS, LLC, A FOREIGN
CORPORATION; NEXT MEDICAL
STAFFING, A FOREIGN CORPORATION
and JOHN OR JANE DOE CORPORATION,

        Defendants.

**ORDER[1]**

    **THIS MATTER** comes before the Court on: (i) Defendant United States' Motion to

Exclude the Testimony of Bruce W. Polsky For Failure to Appear at his Court-Ordered Deposition,

filed November 7, 2023 (Doc. 221)("Exclusion Motion"); (ii) Plaintiffs' Motion for

Reconsideration of the Court's Order Granting Defendant United States' Motion to Exclude Dr.

Polsky as an Expert (Doc. 221), filed November 30, 2023 (Doc. 228)("Reconsideration Motion");

(iii) Defendants Joelle Catherin Cero Go, RN and AB Staffing Solutions, LLC's Motion for

Summary Judgment, filed December 8, 2023 (Doc. 233)("Go MSJ"); (iv) Defendants Robin Ranell

Sales, R.N. and Next Medical Staffing's Motion for Summary Judgment, filed December 8, 2023

(Doc. 234)("Sales MSJ"); (v) the United States' Motion for Summary Judgment for Lack of

---

[1]This Order disposes of (i) Defendant United States' Motion to Exclude the Testimony of
Bruce W. Polsky For Failure to Appear at his Court-Ordered Deposition, filed November 7, 2023
(Doc. 221); (ii) Plaintiffs' Motion for Reconsideration of the Court's Order Granting Defendant
United States' Motion to Exclude Dr. Polsky as an Expert (Doc. 221), filed November 30, 2023
(Doc. 228); (iii) Defendants Joelle Catherin Cero Go, RN and AB Staffing Solutions, LLC's
Motion for Summary Judgment, filed December 8, 2023 (Doc. 233); (iv) Defendants Robin Ranell
Sales, R.N. and Next Medical Staffing's Motion for Summary Judgment, filed December 8, 2023
(Doc. 234); (v) the United States' Motion for Summary Judgment for Lack of Causation on
Plaintiffs' Loss of Chance Claim, filed December 8, 2023 (Doc. 235); (vi) Plaintiffs' Amended
Motion for Leave to Re-Depose Larry Lybbert Nurse Educator, filed June 24, 2024 (Doc. 267);
(vii) Plaintiffs' Motion for Relief Based on Newly Discovered Evidence Regarding the Court's
Ruling on Defendant Nurse Sales' and Nurse Go's Motion for Summary Judgment [Doc. 233] and
[Doc. 234], filed July 18, 2024 (Doc. 272); (viii) Defendants Joelle Catherin Cero Go, RN and AB
Staffing Solutions, LLC's Motion to Strike Michelle Harkins, M.D.'s Affidavit, filed August 12,
2024 (Doc. 282); and (ix) Plaintiffs' Amended Motion for Relief Based on Newly Discovered
Evidence Regarding the Court's Ruling on Defendant United States' Motion for Summary
Judgment [Doc. 235], filed October 10, 2024, (Doc. 296). The Court will issue at a later date,
however, a Memorandum Opinion more fully detailing the rationale for its decision.

Causation on Plaintiffs' Loss of Chance Claim, filed December 8, 2023 (Doc. 235)("USA MSJ"); (vi) Plaintiffs' Amended Motion for Leave to Re-Depose Larry Lybbert Nurse Educator, filed June 24, 2024 (Doc. 267)("Lybbert Motion"); (vii) Plaintiffs' Motion for Relief Based on Newly Discovered Evidence Regarding the Court's Ruling on Defendant Nurse Sales' and Nurse Go's Motion for Summary Judgment [Doc. 233] and [Doc. 234], filed July 18, 2024 (Doc. 272)("Relief Motion"); (viii) Defendants Joelle Catherin Cero Go, RN and AB Staffing Solutions, LLC's Motion to Strike Michelle Harkins, M.D.'s Affidavit, filed August 12, 2024 (Doc. 282)("Harkins Motion"); and (ix) Plaintiffs' Amended Motion for Relief Based on Newly Discovered Evidence Regarding the Court's Ruling on Defendant United States' Motion for Summary Judgment [Doc. 235], filed October 10, 2024, (Doc. 296)("Amended Relief Motion").  The Court held hearings on November 14, 2023, see Clerk's Minutes at 1, filed November 14, 2023 (Doc. 231)("November Minutes"), on January 5, 2024, see Clerk's Minutes at 1, filed January 5, 2024 (Doc. 259)("January Minutes"), and on August 13, 2024, see Clerk's Minutes at 1, filed August 13, 2024 (Doc. 288)("August Minutes").  The primary issues are: (i) whether the Court should exclude the report and testimony of the Plaintiffs' causation expert witness, Dr. Bruce Polsky, because Dr. Polsky did not appear for a court-ordered deposition and did not comply with the Court's order to provide dates for his in-person deposition in Albuquerque, New Mexico; (ii) whether the Court should grant the Go MSJ, the Sales MSJ, and the USA MSJ, because the Plaintiffs cannot point to evidence to meet their burden of production as to causation, an essential element of a New Mexico State medical malpractice claim; (iii) whether the Court should permit the Plaintiffs to depose the Gallup Indian Medical Center's Chief Nurse Educator, Larry Lybbert, a second time, because he did not bring his computer with him the first time and, thus, did not have access to certain documents about which the Plaintiffs wish to question him; (iv) whether the Court should grant the Relief Motion, because the Plaintiffs purport to present new evidence that raises a genuine dispute of material fact about the adequacy of hantavirus training at Gallup Indian Medical Center ("Gallup Medical"); and (v) whether the Court should strike the Affidavit of Michelle Harkins, M.D. (signed May 15, 2024), filed July 18, 2024 (Doc. 272-1)("Harkins Aff."), which the Plaintiffs attach as an exhibit to the Relief Motion, because the Plaintiffs' disclosure of the Harkins Aff. allegedly violates rule 26(a)(2) of the Federal Rules of Civil Procedure.  The Court concludes that: (i) the Court will exclude the Plaintiffs' expert witness' report and testimony pursuant to rule

37(b)(2)(A)(ii), because the Plaintiffs' expert witness did not comply with the Court's order setting his deposition, and the Plaintiffs did not comply with the Court's order to provide dates for a new deposition; (ii) no disputes of material fact remain and the United States, Sales, Go, AB Staffing Solutions, LLC, and Next Medical Staffing are entitled to judgment as a matter of law, because the Plaintiffs do not have expert evidence to prove the necessary causation element of their medical malpractice claims; (iii) the Plaintiffs are not entitled to depose Lybbert a second time, because they could have, but did not, serve him a subpoena duces tecum directing him to produce specific training materials; (iv) the Plaintiffs are not entitled to relief from the Court's verbal ruling granting the Defendants' motions for summary judgments, see January Minutes at 1, because the deadline for expert disclosures has passed; and (v) the Court strikes the Harkins Aff., because it does not comply with rule 26(a)(2) of the Federal Rules of Civil Procedure.  Accordingly, the Court: (i) grants the Exclusion Motion; (ii) denies the Relief Motion; (iii) grants the USA MSJ, the Go MSJ, and the Sales MSJ; (iv) denies the Lybbert Motion; (v) denies the Amended Relief Motion; and (vi) grants the Harkins Motion.

**PROCEDURAL BACKGROUND**

1.    **The Summary Judgment Motions.**

This portion of the Procedural Background consists of the undisputed material developments corresponding to the three motions for summary judgment.  Statements that the Court deems undisputed for this opinion's purposes go above the line, and in the text.  The Court explains its reasoning regarding each disputed action, or purportedly disputed action, below the line, in the footnotes.  The Court takes its statements from the USA MSJ, the GO MSJ, the Sales MSJ, the Plaintiffs' Response in Opposition to Defendant United States' Motion for Summary Judgment for Lack of Causation on Plaintiffs' Loss of Chance Claim, filed January 3, 2024 (Doc. 246)("USA MSJ Response"), Plaintiffs' Response in Opposition to Defendants' Robin Ranell Sales, RN and Next Medical Staffing's Motion for Summary Judgment, filed January 3, 2024 (Doc. 247)("Sales MSJ Response"), Plaintiffs' Response in Opposition to Defendants' Joelle Catherin Cero Go, RN and AB Staffing Solutions, LLC's Motion for Summary Judgment, filed January 3, 2024 (Doc. 248)("Go MSJ Response"), the Defendants Joelle Catherin Cero Go, RN and AB Staffing Solutions, LLC's Reply in Support of Their Motion for Summary Judgment, filed January 4, 2024 (Doc. 251)("Go Reply"), and Defendants Sales and Next Medical Staffing's

Joinder in Defendants Joelle Catherine Cero Go, RN and AB Staffing Solutions, LLC's Reply in Support of Their Motion for Summary Judgment, filed January 5, 2024 (Doc. 253)("Sales Joinder"). The motions for summary judgment present largely the same statements. Accordingly, the Court indicates with its citations whether a statement appears in one or more motions for summary judgment.

### 2.    Undisputed Material Facts.

The Plaintiffs' First Amended Complaint to Recover Damages for Wrongful Death and Loss of Consortium Arising From Medical Negligence, filed October 13, 2022 (Doc. 63)("Amended Complaint"), brings a medical malpractice claim, "alleging that Gallup Indian Medical Center 'was or should have been aware of . . . the possibility that Nena Charley was suffering from hantavirus when she presented at the GIMC Emergency Room ("ER") in the early morning hours of May 28, 2019.'" Go MSJ at 4 (asserting this fact)(quoting Amended Complaint ¶ 2, at 1); Sales MSJ at 4 (asserting this fact)(quoting Amended Complaint ¶ 2, at 1). See Go Response at 8 (admitting this fact); Sales Response at 8 (admitting this fact); Amended Complaint ¶ 2, at 1. The Complaint alleges that Gallup Indian Medical Center ("Gallup Medical") "and its agents and/or employees failed to properly assess, care for, treat, and transfer Nena Charley to [University of New Mexico Hospital ("UNMH")] for treatment of hantavirus following her presentation at" the Gallup Medical ER "at approximately 1:00am on May 28, 2019." Go MSJ at 4 (asserting this fact)(quoting Amended Complaint ¶ 30, at 4); Sales MSJ at 4 (asserting this fact)(quoting Amended Complaint ¶ 30, at 4). See Go Response at 8 (admitting this fact); Sales Response at 8 (admitting this fact); Amended Complaint ¶ 30, at 4. Additionally, the Complaint alleges that "Nena Charley suffered a loss of chance of survival when" Gallup Medical "and its agents and/or employees failed to properly assess, care for, and transfer Nena Charley to UNMH in the early morning hours of May 28, 2019 for treatment of hantavirus causing it to progress to a terminal state resulting in Ms. Charley's wrongful death." USA MSJ at 2-3 (asserting this fact); USA Response at 4 (admitting this fact); Amended Complaint ¶ 31, at 4.

The Plaintiffs allege that Defendant AB Staffing Solutions ("AB Staffing") employed Go, a nurse who interacted with N. Charley at the Gallup Medical ER, and, accordingly, is "liable for" Go's "alleged acts and omissions that resulted in medical negligence and the alleged wrongful death of Ms. Charley"; similarly, the Plaintiffs allege that Defendant Next Medical Staffing ("Next

Medical") employed Sales, another nurse who interacted with N. Charley at the Gallup Medical ER, and, accordingly, is liable for Sales' "alleged acts and omissions that resulted in medical negligence and the alleged wrongful death of Ms. Charley." Go MSJ at 4 (asserting this fact); Sales MSJ at 5 (asserting this fact). See Go Response at 8 (admitting this fact); Sales Response at 8 (admitting this fact); Amended Complaint ¶¶ 40, 42, 44, 44, at 6-7. Additionally, the Plaintiffs allege that Next Medical and AB Staffing negligently hired, trained, and supervised Sales and Go, respectively. See Sales MSJ at 5 (asserting this fact); Go MSJ at 4 (asserting this fact); Sales Response at 8 (admitting this fact); Go Response at 8 (admitting this fact); Amended Complaint ¶¶ 42, 44, at 6-7. The Plaintiffs also allege that these "failures contributed to cause Nena Charley's death." Go MSJ at 4 (asserting this fact); Sales MSJ at 5 (asserting this fact). See Go Response at 8 (admitting this fact); Sales Response at 8 (admitting this fact); Amended Complaint ¶ 30, at 4.

On February 8, 2023, the Court entered an Amended Scheduling Order (Doc. 95), which requires the Plaintiffs to disclosure their expert witnesses by April 4, 2023. See Go MSJ at 4 (asserting this fact); Sales MSJ at 5 (asserting this fact); Amended Scheduling order at 2.[2] "The Court granted an extension for Plaintiffs' expert witness disclosure, allowing Plaintiffs to disclosure their expert witnesses on June 23, 2023." Go MSJ at 4 (asserting this fact); Sales MSJ at 5 (asserting this fact). See Unopposed Motion to Extend Expert Disclosure and Discovery Deadlines at 1, filed April 4, 2023 (Doc. 108); Order Granting Unopposed Motion to Extend Expert Disclosure and Discovery Deadlines at 1, filed April 26, 2023 (Doc. 117).[3] Then, the Court "granted another extension, making Plaintiffs' expert disclosure deadline July 21, 2023." Go MSJ at 4 (asserting this fact); Sales MSJ at 5 (asserting this fact). See Unopposed Motion to Amend Scheduling Order Deadlines at 1, filed June 22, 2023 (Doc. 142); Order Granting Opposed Motion

---

[2]The Plaintiffs purport to dispute this fact, stating, in both responses: "Admit in part and deny in part. Based on Defendant USA's delay in providing deposition dates for its infectious disease doctor, Dr. Iralu, Plaintiffs were forced to request an extension for expert disclosures." Go Response at 8; Sales Response at 8. The Plaintiffs' explanation why they filed an extension for expert disclosures does not change that the Amended Scheduling Order required them to disclose their experts by April 4, 2023. Accordingly, the Court deems this fact undisputed.

[3]In response to this fact, the Plaintiffs state that they "were forced to request an extension to disclosure their experts due to the delay of Defendants to provide deposition dates." Go Response at 8; Sales Response at 8. The Plaintiffs' explanation why they filed an extension for expert disclosures does not contradict the text's fact, which is that the Plaintiffs filed a motion for and received an extension. Accordingly, the Court deems this fact undisputed.

to Extend Amended Scheduling Order Deadlines at 1, filed June 26, 2023 (Doc. 143).[4]

The Plaintiffs disclosed four expert witnesses, including a nursing expert, Edward Shradar, and a causation expert, Dr. Bruce Polsky. <u>See</u> Go MSJ at 5 (asserting this fact); Sales MSJ at 5 (asserting this fact); Go Response at 8 (admitting this fact); Sales Response at 8 (admitting this fact); Plaintiffs' Expert Witness Disclosure at 2 (dated July 21, 2023), filed December 8, 2023 (Doc. 233-1). The Plaintiffs disclosed Dr. Polsky to opine that

> [m]ore likely than not Nena Charley would have survived had Defendants' diagnosed Nena Charley with hantavirus on her first visit to GIMC. Although Ms. Charley had approximately 35% risk of mortality when she first presented at the ER, her condition was sufficiently stable at that point that had she been transferred to UNMH for a higher level of care, she had a significant chance of surviving.

USA MSJ at 3 (asserting this fact)(quoting Supplemental Expert Report of Bruce Warren Polsky, M.D., M.A.C.P., F.I.D.S.A at 2, filed December 8, 2023 (Doc. 235-1)("Dr. Polsky Report"). <u>See</u> USA Response at 4 (admitting this fact); Dr. Polsky Report at 2. The Court "entered an oral order excluding Dr. Polsky as an expert witness and precluding Plaintiffs from offering his opinions into evidence." USA MSJ at 3 (asserting this fact)(citing November 14 Minutes at 1). <u>See</u> USA Response at 4 (admitting this fact); November 14 Minutes at 1.

Shradar did not offer any opinions about Go's breaches of the standard of care; rather, he offered opinions regarding Gallup Medical's alleged failure to educate and train adequately Go. <u>See</u> Go MSJ at 5 (asserting this fact); Sales MSJ at 6 (asserting this fact); Deposition of Edward Shradar, RN, MSN, CEN at 60:18-62:12; 74:18-77:10 (taken October 16, 2023), filed December 8, 2023 (Doc. 233-2)("Shradar Depo."). [5] Additionally, Shradar does not have any opinions about

---

[4]The Plaintiffs' response to this fact is identical to their response to the preceding fact. Accordingly, the Court deems this fact undisputed.

[5]The Plaintiffs purport to dispute this fact, stating: "Deny." Go Response at 8; Sales Response at 8. In support of their position, the Plaintiffs point to the Affidavit of Edward Shradar, RN, MSN, CEN (dated December 21, 2023), filed January 3, 2024 ("Shradar Aff."). The Shradar Aff. states that Shradar was aware at his deposition that additional discovery in this case would occur, that Shradar will review this discovery when it becomes available, and that he will supplement his expert report. <u>See</u> Shradar Aff. ¶¶ 4-5, at 2. The Plaintiffs also point to, albeit in the "Introduction" portion of their briefs, Shradar's testimony at the Shradar Depo.:

> Q:    The defendants started to ask you this question but sort of stopped, so I want to make sure that you get a chance to tell us. You said in your report, "I have also explained the role of an emergency department nurse caring for a patient like Nena Charley, and how an ED nurse properly screens and assesses a patient presenting with possible communicable disease symptoms." So could you tell us, Mr. Shradar, the explanation of the the of the role of an emergency department nurse caring for a patient like Nena Charley and how the ED nurse properly screens and assesses a patient

_____

        presenting with possible communicable disease symptoms?

A:    It is my opinion that a reasonable, prudent nurse in a similar situation caring for Nena Charley would have asked the questions of what happened prior to her visiting the emergency department. Was she exposed to anything in the environment, anything at work that may be related to her current symptoms, and then take appropriate action, and as far as seeing that she's -- to execute the medical plan of care, and to also protect themselves and the other staff in the emergency department by wearing protective clothing, protective equipment, and reporting any new information immediately to the emergency department physician.

Shradar Depo. at 125:14-126:16. Finally, the Plaintiffs point to various portions of the Deposition of David Stuart Glaser, MD (taken October 24, 2023), filed January 3, 2024 (Doc. 247-9)("Glaser Depo."):

Q:    You next state: Even if Nena did not offer this information to Nurse Sales, it's incumbent on the healthcare professional to specifically make this inquiry when the patient presents as Nena did. Did I read that correctly?

A:    Yes.

Q:    And what is your basis supporting that statement?

A:    I think we've covered this. It's, again, based on my opinion that nobody wants to miss hantavirus.

Q:    Anything else?

A:    Well, as we've already talked, but I don't think we have to rehash, clearly every medical source that talks about hantavirus will be talking about exposure to rodent droppings and whatnot, so that would therefore presume one inquires about that.

Q:    And I'm just trying to find the outer limits of this. You know, where -- where does a medical provider not have to inquire about mouse droppings?
. . . .

A:    Yeah, I'd say if you're outside the Four Corners Region, you probably don't have to inquire about it unless your patent came from that region.
. . . .

Q:    What basis or what are you relying upon to say that the -- they should be considered to have hantavirus until proven otherwise?

A:    That's an opinion.

Q:    And what's your opinion based upon?
A:    Everything we've already talked about, that it presents in the spring. It presents as an acute viral illness, presents from generally rural settings, presents after exposure to mouse droppings. And then when you have all those pieces, it's a classic presentation of hantavirus, so you need to assume it's hantavirus until proven otherwise.

Q:    And have you read that portion anywhere, that it's considered hantavirus until proven otherwise?

A;    No, that's my opinion.

Q:    Okay.   And you're extrapolating that opinion from the CDC and UpToDate documents which you've reviewed?

A:    Yes. . . .

Q:    Okay.  How about after that sentence?  Any other opinions?

A:    Yeah, I think that's opinion based.  So given the time of year and location, hantavirus should have been suspected.  That's my opinion.  Dr. Leach did not appear to suspect it, so he probably feels otherwise.  And it's also my opinion that he and the nurses, or at least one of the two or one of the three, if we're counting both nurses, should have inquired whether she had any recent exposure to mouse droppings, so that's an opinion.

Glaser Depo. at 88:25-90:2; id. at 93:7-18; id. at 101:12-23.

Go and AB Staffing, in support of their position, cite to the Shradar Depo., which states:

Q:    So then on page 13, you say it's your opinion there were breaches in nursing care, nursing education, and nursing competency validation at GIMC emergency department that directly affected the care of Nena Charley on May 28th.  And you have some opinions about GIMC and its training of Nurse Sales and Nurse Go.
        But I wanted to come back, in terms of the breaches in nursing care, have we already covered your opinions with respect to the breaches in nursing care -- did I understand your testimony correctly in the sense that your opinion was that there should have been screening in place? . . .

A:    Yes.

Q:    And is there anything else about -- any other opinions we haven't covered with respect to breaches in nursing care?  And let me be even more specific.  With respect to Nurse Go.

A:    No.  We've covered it.

Q:     Okay.  All right.  And then you've got four opinions here.  The first has to do with the criticism I think that we just discussed previously regarding the Hantavirus Plague PDF version that was in Nurse Go's education file, that it's used for general public purposes and it does not provide information on how to screen patients for Hantavirus or report a positive screening.  And that seems pretty self-explanatory to me.  And as I understand it, that's not a criticism or an opinion related to Nurse Go.  Correct?

A:    Correct.

Q:    Okay.  And then the second opinion has to do with GIMC failing to validate Hantavirus -- or allegedly failing to validate Hantavirus, screening nurse competency of Nurse Sales and Nurse Go, and you talk about the standard workflow that would include screening questions and how to report positive screenings and how to care for a suspected Hantavirus patient.  Did I read that correctly?

A:    Yes.

Q:    And it does not appear to me that there are opinions here related to Nurse Go, but I wanted to confirm that with you.

A:    These are my opinions.  There's nothing additional.

Sales' alleged breaches in the standard of care. See Sales MSJ at 5-6 (asserting this fact); Shradar

Depo. at 74:18-77:10.[6]  Shradar does not have, moreover, any opinions regarding AB Staffing's

---

> Q:    And nothing specific to Nurse Go in terms of -- this criticism appears to be focused on the hospital. That's all I'm trying to confirm.
>
> A:    Correct. . . .
>
> Q:    And again, am I accurate in stating that your opinion there is both Nurse Sales and Nurse Go didn't do Hantavirus screening because they weren't trained on it by the hospital? . . .
>
> A:    Correct.

Shradar Depo. at 60:18-62:12; id. at 74:18-23. Additionally, Go and AB Staffing point to the Glaser Depo., in which Dr. Glaser states that his opinion does not contain any opinions as to the nurses' alleged breach of the standard of care, and that his opinion does not contain any opinions regarding AB Staffing. See Glaser Depo. at 133:3-11.

　　　Shradar's statement that he agrees with the notion that Go "didn't do hantavirus screening because" Gallup Medical did not train Go on hantavirus screening demonstrates that Shradar does not offer any breach-of-the-standard-of-care opinions as to Go. Shradar Depo. at 74:18-23. Shradar confirms that his opinion that Gallup Medical's failure "to validate Hantavirus screening nurse competency of" Nurse Go is "focused on the hospital." Shradar Depo. at 62:1-16. At the January 5, 2024, hearing, the Plaintiffs characterize Shradar's testimony as follows:

> Nurse Shradar did provide testimony. And when he's asked about certain situations, regarding whether -- if the nurses had been trained about Hantavirus, if it would have been a breach in the standard of care for them to not ask questions -- Dr. Glazer -- Nurse Shradar does say that it would be a breach of the standard of care.

January 5, 2024 Tr. at 111:20-112:3 (Ben). These comments indicate that the Plaintiffs view Shradar's testimony discussing breaches of the standard of care as hypothetical and based on a scenario in which Gallup Medical trained the nurses on hantavirus screening before N. Charley's treatment.

　　　The Plaintiffs' citation to Dr. Glazer's testimony is similarly unavailing and does not create a disputed fact. Go asks Dr. Glazer at his deposition: "Your opinion doesn't concern any opinions regarding the breach of standard of care regarding the nurses in this case; is that right?" Glazer Depo. at 133:2-5. Dr. Glazer responds, "Yes." Glazer Depo. at 133:6. This answer is conclusive: whatever else Dr. Glazer may opine, he does not have opinions about the nurses' breach of the standard of care. Accordingly, because the Plaintiffs' position lacks support in the record evidence, the Court declines to adopt the Plaintiffs' position in the text as an undisputed material fact.

---

[6]The Plaintiffs purport to dispute this fact. In support of their position, they point to the same materials discussed and quoted at length in the preceding footnote. Sales, in support of her position, points to an excerpt from the Shradar Depo., which states: "Q: All right. So this isn't necessarily a situation where Nurse Sales fell below the standard of care, you're actually focusing on the hospital not providing Nurse Sales with the necessary training and education to do the Hantavirus screening. Is that right? . . . . A: Yes." Shradar Depo. at 76:1-7. Another excerpt to which Sales points states: "Q: And so you're not saying that Robin Sales fell below the standard of care by not asking" about exposure to mouse droppings, "rather, you're saying the hospital did not train her to ask that question, so it was a hospital standard of care violation. Is that right? . . . A: Yes." Shradar Depo. at 76:21-77:2. Shradar's answers leave no room for doubt that he does not have any opinions as to Sales' alleged breach of the standard of care. Similarly, Dr. Glazer does not have any opinions about Sales' alleged breach of the standard of care, as the preceding footnote discusses. Accordingly, because the Plaintiffs' position lacks support in the record

or Next Medical's alleged breach of the standard of care. See Go MSJ at 5 (asserting this fact);

Sales MSJ at 6 (asserting this fact); Shradar Depo. at 64:17-24; id. at 67:10-21.[7] Dr. Glaser does

not offer a causation opinion. See USA MSJ at 3 (asserting this fact)(citing Expert Report of

David S. Glaser, M.D. at 3 (dated July 21, 2023), filed January 3, 2024 (Doc. 246-5)("Dr. Glaser

Report").[8]

_____

evidence, the Court declines to adopt the Plaintiffs' position in the text as an undisputed material
fact.

[7]The Plaintiffs purport to dispute this fact, stating: "Admit in part and deny in part. Nurse
Shradar's deposition testimony was based on the information available to him at the time of his
deposition. After the completion of additional discovery and his review, Nurse Shradar's opinions
will be supplemented." Sales Response at 11 (citing Shradar Aff. ¶¶ 4-5, at 2); Go Response at 11
(citing Shradar Aff. ¶¶ 4-5, at 2). In support of their positions, AB Staffing and Next Medical cite
to portions of the Shradar Depo., in which Shradar confirms that there are no opinions in his report
concerning AB Staffing, see Shradar Depo. at 64:17-24, or concerning Next Medical, see Shradar
Depo. at 67:10-21. The Plaintiffs cite to the Shradar Aff.'s statement that Shradar will review any
additional discovery that becomes available does not support their position that Shradar offered a
standard-of-care opinion as to Next Medical or AB Staffing. Accordingly, because the Plaintiff's
position lacks support in the record evidence, the Court does not include it in the text as an
undisputed fact.

[8]The Plaintiffs purport to dispute this fact. The United States' version of this fact states:
"None of Plaintiffs' other retained experts offered causation opinions." USA MSJ at 3 (citing Dr.
Glaser Report; Expert Report of Edward N. Shradar, R.N., M.S.N., C.E.N. at 1-7 (not dated), filed
December 8, 2023 (Doc. 235-3)("Shradar Report"); Glaser Depo. at 8:13-9:20; Shradar Depo. at
19:25-19:3; and id. at 38:11-17). In support of their position, the Plaintiffs cite to the Dr. Glaser
Report, which states:

> These findings would have prompted immediate consultation with the
> University of New Mexico, early transfer, and the opportunity to stabilize Nena
> with tertiary care management -- including ECMO[, extracorporeal membrane
> oxygenation] -- in keeping with University of New Mexico hantavirus protocols.
> All of these events would have significantly increased Nena's chances of
> survival.

Dr. Glaser Report at 3 (this Court's MOO adds brackets). Furthermore, the Plaintiffs also cite to
two portions of the Glaser Depo., in which Dr. Glaser states: "So the notion is that if you can
intervene earlier than later, the likelihood of death from hantavirus goes down," Glaser Depo. at
105:2-4, and "I think it's fairly clear that the literature indicates that if you get these patients to a
tertiary care center before they've had cardiopulmonary collapse, they have a much higher chance
of survival than if you don't," Glaser Depo. at 106:13-17.
In support of the United States' position, the United States cites the entirety of the Dr.
Glaser Report and the Shradar Report, as well as portions of the Glaser Depo. and the Shradar
Depo. See USA MSJ at 3. The portion of the Glaser Depo. to which the United States cites states
that Dr. Glaser is aware that his report's purpose is to provide a complete statement of all of his
opinions, and that the only additional statement he would add to the report would be that it "would
not be enough to order CBC[, complete blood count,] or inquire about mouse exposure, something
to that effect." Glaser Depo. at 8:13-9:20 (this Court's MOO adds brackets). The portions of the
Shradar Depo. to which the United States cites states that Shradar intends to offer opinions about
"the standard of care for an emergency nurse." Shradar Depo. at 18:25-19:3.
New Mexico State law requires a plaintiff in a wrongful death case to prove proximate
cause by showing "by a preponderance of the evidence that the defendant's negligence resulted in
the lost chance for a better result." Alberts v. Schultz, 1999-NMSC-015, ¶ 28, 126 N.M. 807, 814,
975 P.2d 1279, 1286 (citing Hurley v. United States, 923 F.2d 1091, 1094 (4th Cir. 1991)). "Under

3.    **The Exclusion of Dr. Polsky.**

This portion of the Procedural Background recounts the sequence of events that culminates in the Court excluding Dr. Polsky.  The Court takes its facts from: (i) the Exclusion Motion; (ii) the Plaintiffs' Response to Defendant United States of America's Motion to Exclude the Testimony of Bruce W. Polsky For Failure to Appear at His Court-Ordered Deposition (Doc. 221), filed November 14, 2023 (Doc. 227)("Exclusion Response"); (iii) the Reconsideration Motion; (iv) and Defendant United States' Response to Plaintiffs' Motion for Reconsideration of the Court's Order Granting Defendant United States' Motion to Exclude Dr. Polsky as an Expert (Doc. 221), filed

---

the lost-chance theory . . . the claim is that the health care provider's negligence reduced the chance of avoiding the injury actually sustained:" The injury -- "the item of value for which the patient seeks compensation" -- is "that chance in and of itself[,] the lost opportunity of avoiding the presenting problem and achieving a better result." Alberts v. Schultz, 1999-NMSC-015, ¶ 13, 126 N.M. at 814, 975 P.2d 1279 at 1283 (this Court's MOO adds brackets)(citing Delaney v. Cade, 255 Kan. 199, 873 P.2d 175, 177-83 (Kan. 1994); and Bear v. Regents of the Univ. of Cal, 1999-NMCA-005, 126 N.M. 508, 972 P.2d 9).  The New Mexico Supreme Court states that "damages should be awarded on a proportional basis as determined by the percentage value of the patient's chance for a better outcome prior to the negligent act." Alberts v. Schultz, 1999-NMSC-015, ¶ 31, 126 N.M. at 815, 975 P.2d at 1287.  New Mexico's Uniform Jury Instruction 13-1802, titled "Measure of Damages; general," specifies that "for the loss of a chance . . . while you must (1) first determine total damages for the loss under the elements listed above for each of the two claims, you then must (2) base your award on a percentage representing the lost opportunity to avoid each loss." NMUJI 13-1802.  The calculation, accordingly, multiplies the percentage of chance lost by the total value of the decedent's life: "For example, the value of a patient's fifty-percent chance of survival is fifty percent of the value of their total life.  If medical malpractice reduced that chance of survival from fifty to twenty percent, that patient's compensation would be equal to thirty percent of the value of their life." Alberts v. Schultz, 1999-NMSC-015, ¶ 32, 126 N.M. at 815, 975 P.2d at 1287.  Uniform Jury Instruction 13-1802 goes on to state, moreover, that "the value of the loss may be established by fair approximations, by numbers or verbal descriptions, from which you may arrive at a percentage to apply to the total damages." NMUJI 13-1802.

As Alberts v. Schultz and NMUJI 13-1802 demonstrate, determining the percentage of chance lost necessarily entails a starting point and an ending point.  The starting point is the chance of survival before the health care provider's negligence.  See Alberts v. Schultz, 1999-NMSC-015, ¶ 12, 125 N.M. at 810, 975 P.2d at 1282.  The ending point is the diminished chance of survival, after the health care provider's negligence.  See Alberts v. Schultz, 1999-NMSC-015, ¶ 12, 125 N.M. at 810, 975 P.2d at 1282.  As noted in the preceding paragraph, the factfinder, if it believes the plaintiff, uses the difference between the staring percent chance of survival and the ending percent chance of survival to calculate the plaintiff's damages.

As a matter of New Mexico law, Dr. Glazer's expert report does not state a causation opinion.  Dr. Glazer states that if Dr. Leach had taken certain actions, N. Charley's chance of survival would have "significantly increase[d]."  Dr. Glaser Report at 3 (this Court's MOO adds brackets).  This statement goes to the lost-chance calculation's endpoint -- albeit only in the most general sense -- and does not address the lost-chance calculation's starting point, namely, N. Charley's chance of survival before Dr. Leach's alleged breach of the standard of care.  Consequently, the factfinder relying on Dr. Glazer's opinion would have no way of calculating damages, because Dr. Glazer has not opined what the lost chance is.  He has opined that, had things gone differently, N. Charley's chance of survival would have increased.  This opinion is incomplete, as a matter of law.  Accordingly, the Court concludes that the Plaintiffs' proposed fact lacks support in the record evidence and declines to include their version of the fact in the text as an undisputed fact for this Order's purposes.

December 14, 2023 (Doc. 236)("Reconsideration Response").  Next, the Court summarizes the

briefing associated with the motions this Order decides.

    **4.**    <u>**Findings of Fact Regarding the Court's Ruling to Exclude Dr. Polsky.**</u>

    1.    On May 31, 2022, the Court issues an Initial Scheduling Order (Doc. 23), directing

the parties to meet and fill out a Joint Status Report and Provisional Discovery Plan ("JSR"), and

schedules an initial scheduling conference on July 7, 2022.  <u>See</u> Initial Scheduling Order at 1-2.

    2.    In the JSR, the parties propose that the Plaintiffs identify their experts by November

20, 2022, and that the Defendants identify their experts by January 8, 2023.  <u>See</u> Joint Status Report

and Provisional Discovery Plan at 24, filed July 5, 2022 (Doc. 24)("JSR").

    3.    On August 26, 2022, the Court enters its Scheduling Order, filed August 26, 2022

(Doc. 49), and orders the Plaintiffs to identify their experts, to disclose their expert reports, and to

have their experts ready to be deposed no later than November 20, 2022.  <u>See</u> Scheduling Order at

2.[9]

    4.    At the Initial Scheduling Conference, the Court adopts the proposed dates, and tells

the Plaintiffs that, on their due dates, the Plaintiffs must disclose their experts, produce their expert

reports, and have their experts ready to be deposed; the Court tells the Defendants that they are

going to have to do the same thing for their experts fifty days later, on January 8, 2023.  <u>See</u> Draft

Transcript at 9:20-10:3, taken July 7, 2022 (Court)("Initial Conf. Tr.").[10]

    5.    The Court states that the experts do not have to be deposed on the day on which the

expert reports are due, but they must be ready to be deposed.  <u>See</u> Initial Conf. Tr. at 9:25-10:1

(Court).

    6.    On November 21, 2022, the Plaintiffs file their Unopposed Motion to Extend

Expert Disclosure and Discovery Deadlines (Doc. 72)("First Expert Extension"), asking the Court

to extend their expert-disclosure date to February 6, 2023, and to extend the Defendants' expert-

disclosure date to March 27, 2023; the First Expert Extension does not offer a justification for the

request.  <u>See</u> First Expert Extension at 1.

---

[9]For clarification and consistency, when citing briefs, exhibits, or other documents filed in the CM/ECF system, excluding deposition transcripts, the Court cites to the page numbers that the CM/ECF system places on the upper, right-hand corner of the documents.

[10]The Court's citations to the draft transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcript may contain slightly different page and/or line numbers.

7.      On December 14, 2022, the Court grants the First Expert Extension.  <u>See</u> Order at 1 (Doc. 80).  The new deadline for the Plaintiffs' expert witness disclosures is February 6, 2023, and the new deadline for the Defendants' expert witness disclosure is March 27, 2023.  <u>See</u> Order at 1.

8.      On February 6, 2023, the Plaintiffs file an Unopposed Motion to Extend Expert Disclosure Deadlines (Doc. 90)("Second Expert Extension"), asking the Court to extend their expert-disclosure date to April 4, 2023, and to extend the Defendants' expert-disclosure date to May 23, 2023; the Second Expert Extension does not offer a justification for the request.  <u>See</u> Second Expert Extension at 1.

9.      On February 8, 2023, the Court enters an Amended Scheduling Order (Doc. 95).

10.     The Amended Scheduling Order requires the Plaintiffs to disclosure their experts by April 4, 2023, requires the Defendants to disclosure their experts by May 23, 2023, and sets the trial for December 11, 2023.  <u>See</u> Amended Scheduling Order at 2; <u>id.</u> at 3.

11.     On April 4, 2023, the Plaintiffs file an Unopposed Motion to Extend Expert Disclosure and Discovery Deadlines (Doc. 108)("Third Expert Extension"), asking the Court to extend their expert-witness disclosure date to June 23, 2023, and to extend the Defendants' expert-witness disclosure date to July 24, 2023; the Third Expert Extension does not offer a justification for the request.  <u>See</u> Third Expert Extension at 1.

12.     On April 26, 2023, the Court grants the Third Expert Extension, setting the deadline for the Plaintiffs to disclose their experts for June 23, 2023, and setting the deadline for the Defendants to disclosure their experts for July 24, 2023.  <u>See</u> Order Granting Unopposed Motion to Extend Expert Disclosure and Discovery Deadlines at 1 (Doc. 117).

13.     On June 22, 2023, the Plaintiffs file an Unopposed Motion to Amend Scheduling Order Deadlines (Doc. 142)("Fourth Expert Extension"), asking the Court to extend their expert-witness disclosure date to July 21, 2023, and to extent the Defendants' expert-disclosure date to August 21, 2023.  <u>See</u> Fourth Expert Extension at 1.

14.     On June 26, 2023, the Court grants the Fourth Expert Extension, setting the deadline for the Plaintiffs to disclose their experts for July 21, 2023, and the deadline for the Defendants to disclose their experts for August 21, 2023; the Fourth Expert Extension does not offer a justification for the request.  <u>See</u> Order Granting Opposed Motion to Extend Amended

Scheduling Order Deadlines at 1 (Doc. 143).

15.     On July 21, 2023, the Plaintiffs disclose their experts, including Dr. Bruce Polsky, M.D.  See Certificate of Service at 1, filed July 21, 2023 (Doc. 152).

16.     On August 21, 2023, Brett Eaton, Assistant United States Attorney, emails Lisa Curtis and Melanie Ben, Plaintiffs' counsel, and asks for Dr. Polsky's availability for his deposition.  See Email from Brett Eaton to Lisa Curtis at 1 (dated August 21, 2023), filed November 7, 2023 (Doc. 221-1).

17.     On August 23, 2023, the Plaintiffs submit their First Supplemental Expert Disclosure.  See Certificate of Service at 1, filed August 23, 2023 (Doc. 160).

18.     On August 29, 2023, Ms. Ben emails Mr. Eaton, stating: "We reached out to our experts and September does not work for any of them, but they are available in October."  Email from Melanie Ben to Brett Eaton at 2 (dated August 29, 2023), filed November 7, 2023 (Doc. 221-1).

19.     On August 31, 2023, Mr. Eaton emails Ms. Ben, stating: "Please let me know what time in October your experts would be available.  We will need their depositions prior to our experts being deposed."  Email from Brett Eaton to Melanie Ben at 3 (dated August 31, 2023), filed November 7, 2023 (Doc. 221-1).

20.     On September 7, 2023, Mr. Eaton emails Ashley Lopez, a legal assistant for Curtis & Co., Ms. Curtis' and Ms. Ben's law firm, stating: "[P]lease let us know if you have received dates for Dr. Polsky's deposition."  Email from Brett Eaton to Ashley Lopez at 5 (dated September 7, 2023), filed November 7, 2023 (Doc. 221-1).

21.     On September 22, 2023, Lopez emails Mr. Eaton, stating: "We have contacted Dr. Polsky and are awaiting confirmation of his availability, as he had provided the morning of October 19th."  Email from Ashley Lopez to Brett Eaton at 18 (dated September 22, 2023), filed November 7, 2021 (Doc. 221-1).

22.     On September 26, 2023, Ms. Ben emails Mr. Eaton; she states that Dr. Polsky's availability on October 19th is "very limited in the morning," but adds that she "asked for an alternative date and he is available in the afternoon on October 24th.  Does this work for everyone?" Email from Melanie Ben to Brett Eaton at 17 (dated September 27, 2023, 10:49 a.m.), filed November 7, 2021 (Doc. 221-1).

23.     Several minutes later, Ms. Ben emails Mr. Eaton, stating: "Dr. Glaser is available on October 24th beginning at 8 am MDT.  And Dr. Polsky's deposition can follow.  Does this work?"  Email from Melanie Ben to Brett Eaton at 17 (dated September 26, 2023, 10:54 a.m.), filed November 7, 2021 (Doc. 221-1).

24.     Around noon on the same day, Lisa King, a paralegal for the Checkett Law Firm, which represents Defendants Sales and Next Medical Staffing, emails Ms. Ben and Mr. Eaton, stating: "To clarify: October 9: can we release this date?  October 19: John [Checkett] nor James [Glen Bennett] are available October 24: John is available and I am holding that date for the depos of Dr. Polsky and Dr. Glaser."  Email from Lisa King to Brett Eaton  at 16 (dated September 26, 2023, 12:02 p.m.), filed November 7, 2021 (Doc. 221-1)(Court adds brackets).

25.     Later that day, Denise Chanez, counsel for Defendants Go and AB Staffing Solutions, emails Mr. Eaton and Ms. Curtis, stating: "It looks like we were not included in one of the earlier emails concerning Dr. Glaser's deposition on 10/24 in the morning.  Unfortunately, both Shannon [Sherrell] and I have conflicts that morning.  Shannon can cover in the afternoon for Dr. Polsky."  Email from Denise Chanez to Brett Eaton and Lisa Curtis at 16 (document omits date)[11], filed November 7, 2023 (Doc. 22l-1)(Court adds brackets).

26.     At 2:51 p.m., Mr. Eaton emails Ms. Ben, Ms. Chanez, and Ms. Curtis, stating: "Please let me know if you would be available for Dr. Glazer the afternoon of the 24 and Dr. Polsky on the 19."  Email from Brett Eaton to Melanie Ben, Denise Chanez, and Lisa Curtis at 15 (dated September 26, 2023, 2:51 p.m.),  filed November 7, 2021 (Doc. 221-1).

27.     At 2:57 p.m., Ms. Chanez emails Mr. Eaton, Ms. Ben, and Ms. Curtis, stating: "Yes, that works for us."  Email from Denise Chanez to Brett Eaton at 15 (dated September 26, 2023, 2:57 p.m.), filed November 7, 2021 (Doc. 221-1).

28.     At 2:59 p.m., Ms. Ben emails Ms. Chanez, Mr. Eaton, and Ms. Curtis, stating: "Two hours is sufficient for Dr. Polsky's deposition?  Just making sure.  Thanks."  Email from Melanie Ben to Brett Eaton at 14 (dated September 26, 2023, 2:59 p.m.), filed November 7, 2021 (Doc. 221-1).

---

[11]Page sixteen of Doc. 221-1, where this email appears, cuts off the portion of the email that shows when the email was sent.  The email appears, however, in the middle of an email thread from September 26, 2023, between emails sent at 12:02 p.m. and 2:51 p.m.  See Exhibit A to Exclusion Motion at 15-16, filed November 7, 2023 (Doc. 221-1).  Accordingly, the Court concludes that Ms. Chanez sent her email between 12:02 p.m. and 2:51 p.m. on September 26.

29.     At 3:06 p.m., Ms. Ben emails Mr. Eaton, Ms. Chanez, and Ms. Curtis, stating: "Brett, Dr. Polsky only had the 24th in the afternoon and the 31.  Which of course the 31st is too late."  Email from Melanie Ben to Brett Eaton at 14 (dated September 26, 2023, 3:06 p.m.), filed November 7, 2021 (Doc. 221-1).

30.     The next day, on September 27, 2023, at 9:17 a.m., Ms. Ben emails Ms. Chanez, Ms. Eaton, and Ms. Curtis, stating:

> I need to confirm a date with our experts for their depositions.  I've provided the dates they are available prior to the October 31 mediation.  I need to know if anyone can change their availability.  Otherwise, I think we need to set another conference with the Judge to get something worked out.

Email from Melanie Ben to Brett Eaton at 13 (dated September 27, 2023 9:17 a.m.), filed November 7, 2021 (Doc. 221-1).

31.     At 10:32 a.m., Ms. Chanez emails Ms. Ben, Mr. Eaton, and Ms. Curtis, stating: "Thanks, Melanie.  As I mentioned yesterday, my firm is not available the morning of 10/24.  I tried to get coverage, but it is not feasible for that morning due to other preexisting conflicts.  We are available on the 19th and the afternoon of the 24th."  Email from Denise Chanez to Melanie Ben at 13 (dated September 27, 2023, 10:32 a.m.), filed November 7, 2021 (Doc. 221-1).

32.     The following day, on September 28, 2023, at 1:50 p.m., Ms. Ben emails Ms. Chanez, Mr. Eaton, and Ms. Curtis, stating:

> Because Ms. Chanez is unavailable in the afternoon of October 24th for Dr. Polsky's deposition, Dr. Polsky can do the deposition the morning of October 19th but has to be done by 12 pm EDT, he is in the Eastern time zone.  Will Dr. Polsky's deposition be over zoom or in person?

Email from Melanie Ben to Brett Eaton at 7 (dated September 28, 2023, 1:50 p.m.), filed November 7, 2023 (Doc. 221-1).

33.     The next day, on September 29, 2023, at 8:52 a.m., Mr. Eaton emails Ms. Ben, Ms. Chanez, and Ms. Curtis, stating:

> We will need additional dates for both Dr. Glaser and Dr. Polsky.  Limiting the Defendants until 10:00 a.m. MDT for Dr. Polsky's deposition does not provide enough time and places an unreasonable burden on the Defendants.  Please let us know as soon as possible what additional dates your experts have for availability.

Email from Brett Eaton to Melanie Ben at 9-10 (dated September 29, 2023, 8:52 a.m.), filed November 7, 2023 (Doc. 221-1).

34.     The same day, at 10:19 a.m., Ms. Ben emails Mr. Eaton, Ms. Chanez, and Ms.

Curtis, stating:

> Why do we need to reset Dr. Glaser's deposition?  And for Dr. Polsky, Plaintiffs are willing to being his deposition in the early morning of October 19th.  Would his deposition be by zoom?  I am trying to get these depositions done before the mediation date.  Are you telling me we need to inform the Judge we need to push the mediation date back?

Email from Melanie Ben to Brett Eaton at 9 (dated September 29, 2023, 10:19 a.m.), filed November 7, 2021 (Doc. 221-1).

35.    At 10:21 a.m., Mr. Eaton replies to Ms. Ben's email, stating: "Melanie, When do you have Dr. Glaser scheduled?"  Email from Brett Eaton to Melanie Benn at 9 (dated September 29, 2023, 10:21), filed November 7, 2023 (Doc. 221-1).

36.    At 11:27 a.m., Ms. Ben replies to Mr. Eaton's email, stating: "Brett, If you recall from our previous emails, we discussed the 24th.  Can you answer my question about whether Dr. Polsky's deposition will be via zoom?  I've asked a couple times but haven't received a response from you."  Email from Melanie Ben to Bret Eaton at 8 (dated September 29, 2023, 11:27 a.m.), filed November 7, 2023 (Doc. 221-1).

37.    At 11:36 a.m., Mr. Eaton replies to Ms. Ben's email, stating:

> As for how the deposition of Dr. Polsky will be taken, my preference is to do it in person.  That, however, depends on the date.  Is Dr. Polsky's availability different if the matter is in person or via zoom?  If so, please let me know his availability for a zoom deposition.

Email from Brett Eaton to Melanie Ben at 8 (dated September 29, 2023, 11:36 a.m.), filed November 7, 2023 (Doc. 221-1).

38.    On October 6, 2023, the Court holds a status conference at 9:31 a.m.  See Clerk's Minutes at 1, filed October 6, 2023 (Doc. 219).

39.    The Plaintiffs request the status conference to discuss deposition dates with the Court, because the parties are "kind of at a standstill in terms of moving forward between taking depositions."  Draft Transcript of Hearing at 4:16-18 (taken October 6, 2023)(Ben)("Oct. 6 Tr."); id. at 4:24-5:1 (Ben).

40.    At the status conference, Mr. Eaton informs the Court that the United States is "still waiting for dates for plaintiffs' expert deposition," and the Court responds by stating: "If you can't get it done in the next week, bring your calendars and the Court will set deposition dates."  Draft Oct. 6 Tr. at 10:18-20 (Eaton); id. at 12:7-9 (Court).

41.    The Court sets a motion hearing for October 13, 2023, to address the parties'

discovery disputes, including the Defendant United States' Motion for Protective Order Regarding the Deposition of Dr. Eric Ketcham, filed September 27, 2023 (Doc. 184). <u>See</u> Oct. 6 Tr. at 4:18-25 (Ben)("Plaintiff had noticed one of Defendant's experts to be deposed, and the United States objected, because that was going to be a deposition beyond the ten depositions . . . ."); <u>id.</u> at 7:12-13 (setting a motion hearing for "Friday at 9:30").

42.     On October 6, 2023, shortly after the status conference with the Court, at 11:17 a.m., Ms. Curtis emails Mr. Eaton, Ms. Chanez, and Ms. Ben, stating: "Dr. Polsky freed up his morning so that we can start his deposition at any time in the morning and he is available until 2PM.  Please set his deposition on 10-19-23 first thing in the morning, so that we can get this deposition out of the way."  Email from Lisa Curtis to Brett Eaton at 12 (dated October 6, 2023, 11:17 a.m.), filed November 7, 2021 (Doc. 221-1).

43.     Later that afternoon, at 2:45 p.m., Mr. Eaton responds to Ms. Curtis' email, stating:

> It is my understanding that the 2 pm end time is 2 pm EDT/noon MDT/11 am PDT.  Please confirm if that is correct.
>
> The limitation of Dr. Polsky's proposed availability is prejudicial against Defendants . . . . For example, an 8 am EDT start would result in the deposition beginning at 6 am MDT and 5 am PDT.  Additionally, even at this early start time, there would only be six hours for deposition testimony and all breaks.
>
> As previously stated, while I would prefer to take Dr. Polksy's [sic] deposition in person, I would be amendable [sic] to doing it via zoom if Dr. Polsky has additional availability . . . . Please let me know what availability he would have for a zoom deposition.

Email from Brett Eaton to Lisa Curtis at 11-12 (dated October 6, 2023, 2:45 p.m.), filed November 7, 2021 (Doc. 221-1).

44.     On October 9, 2023, at 10:45 a.m., Ms. Ben emails Mr. Eaton, Ms. Curtis, and Ms. Chanez, stating: "Brett, Dr. Polsky is available for a zoom deposition for the same date and same time."  Email from Melanie Ben to Brett Eaton at 11 (dated October 9, 2023 10:45 a.m.), filed November 7, 2021 (Doc. 221-1).

45.     The same day, at 1:17 p.m., Ms. Ben emails Mr. Eaton, Ms. Curtis, and Ms. Chanez, stating: "Counsel, Dr. Polsky is no longer available for the early start time on October 19th.  I am waiting to hear when he is available to start on the 19th."  Email from Melanie Ben to Brett Eaton at 31 (dated October 9, 2023, 1:17 p.m.), filed November 14, 2023 (Doc. 227-1).

46.     On October 12, 2023, Dr. Polsky emails Lopez, Ms. Curtis, and Ms. Ben, stating:

> Hello Melanie:
>
> With all of the starts and stops, I am afraid that I could not continue to hold the October 19th date. Frankly, at this point it is really too close now to get prepared adequately. Let me know how it goes with the judge on Friday and we will find a new date in November. I just wanted to let you know that the 19th is now off the table.

Email from Bruce Polsky to Ashley Rose Lopez, Lisa Curtis, & Melanie Ben at 33 (dated October 12, 2023, 12:44 p.m.), filed November 14, 2023 (Doc. 227-1).

47.     On October 13, 2023, the Court holds the promised motion hearing. See Clerk's Minutes at 1, filed October 13, 2023 (Doc. 220). During the hearing, Mr. Eaton states that "we've been asking for the deposition of Dr. Polsky, which is one of plaintiffs' expert witnesses, since August." Transcript of Hearing at 109:3-5 (taken October 13, 2023), filed December 28, 2023 (Doc. 242)("October 13 Tr.").

48.     Mr. Eaton continues:

> Most recently, the only time they kept providing over the last several weeks was a very limited time window that he had, where he was going to have to end by noon Eastern Standard Time originally. And we said that was going to be unworkable; that we would need more time to depose him . . . And that's what I'm requesting the Court do right now, is that we set a time right now to set Dr. Polsky's deposition.

October 13 Tr. 109:5-25 (Eaton).

49.     In response, Ms. Curtis states:

> Dr. Polsky's date was October 19. That date he will start at any point in time in the morning . . . . He has to be done by 2:00 p.m. . . . And all I keep getting back from Mr. Eaton is that because other people were going to travel where he is, he doesn't want to start the depo at 5:00 a.m., because that's 7:00 a.m. on the east coast.

October 13 Tr. at 110:3-23 (Curtis).

50.     The Court states: "Okay. This is October 19, next Thursday?" October 13 Tr. at 111:1-2 (Court).

51.     Ms. Curtis responds, "Yes." October 13 Tr. at 111:3 (Curtis).

52.     Then, the Court states: "All right. So the deposition will begin at 8:00 Mountain Daylight Time, and it will end at 3:30 Mountain Daylight Time. And Dr. Polsky will need to make himself available till 3:30 Mountain Daylight Time. But we'll start at 8:00 on October 19, Thursday." October 13 Tr. at 111:4-9 (Court).

53.     Ms. Curtis does not object or otherwise respond to the Court's order setting Dr. Polsky's deposition date and time. See October 13 Tr. at 111:12-18 (Eaton).

54.    On October 16, 2023, the United States emailed its Notice to Take Virtual Deposition Duces Tecum, filed November 7, 2023, (Doc. 221-2)("Depo. Notice"), to Ms. Curtis and to Ms. Ben.  Depo. Notice at 4.  The Depo. Notice states:

> [T]he deposition of Dr. Bruce Warren Polsky will be taken before a certified court reporter . . . on October 29, 2023, beginning at 10:00 a.m., EDT (8:00 a.m., MDT), at United States Attorney's Office, 86 Chambers Street, 3rd Floor, New York, New York, 10007.  Information for virtual appearances, via WebEx video conference call will be made available for counsel who wish to appear remotely.

Depo. Notice at 1-2 (Court adds brackets).

55.    On October 17, 2023, Ms. Curtis emails Mr. Eaton, stating: "Brett, I've got 4 depos tomorrow, but I need to find a few minutes to talk with you tomorrow.  Do you have a good time to talk?"  Email from Lisa Curtis to Brett Eaton at 19 (dated October 17, 2023 10:50 p.m.), filed November 7, 2023 (Doc. 221-1).

56.    Mr. Eaton flies from Albuquerque, New Mexico, to New York, New York, on October 18, 2023.  See Draft Transcript of Hearing at 9:9-11 (taken November 14, 2023)(Eaton)("November 14 Tr.").

57.    Upon arriving in New York on October 18, 2023, Mr. Eaton calls Curtis & Co.'s office at 2:05 p.m. Mountain Daylight Time and leaves a voicemail asking for a return call.  See Exclusion Motion at 6.

58.    An hour later, "Plaintiffs' counsel called back":

> During the call, Plaintiffs' counsel claimed the United States knew Dr. Polsky was not available on October 19, 2023, for his deposition.  Counsel for the United States denied this and stated that Plaintiffs' counsel had only offered limited time on October 19, 2023.  Counsel for the United States reminded Plaintiffs' counsel that she identified October 19, 2023, as the date for Dr. Polsky's deposition, that the Court ordered Dr. Polsky to be deposed on October 19, 2023, and that Plaintiffs' counsel did not object to the date.  Plaintiffs' counsel stated Dr. Polsky would not be attending the deposition.
>
> Counsel for the United States informed Plaintiffs' counsel that he was already in New York and was prepared to take Dr. Polsky's deposition in the morning.  Plaintiffs' counsel said there were two options: 1) that she pays the costs for the travel, or 2) that the United States moves to strike Dr. Polsky.  Counsel for the United States stated he would speak with his supervisor on how to proceed.

Exclusion Motion at 6.

59.    At 3:28 p.m. Mountain Daylight Time, Mr. Eaton calls the "Plaintiffs' counsel," and leaves a message stating that he intends to proceed with Dr. Polsky's deposition and "make a record of Dr. Polsky's nonappearance if he did not appear."  Exclusion Motion at 7.

60.     At 8:26 p.m. Mountain Daylight Time, Ms. Curtis emails Mr. Eaton, Ms. Chanez, and Ms. Ben, stating:

> Brett, I've asked you numerous times where the [sic] you knew my expert couldn't show up on the 19th at all when we were in the hearing on Friday. Obviously I didn't know.  As you know, my expert cannot do his deposition tomorrow.  I understand that you've chosen to go to New York. My expert can do his deposition on November 8.  I have no idea why you feel the need to make a record, when I've been very clear. Cannot control what you do, so let me know whether you're gonna reset the deposition or not.

Email from Lisa Curtis to Brett Eaton at 20 (dated October 18, 8:26 p.m.), filed November 7, 2023 (Doc. 221-1).

61.     On October 19, 2023, the date of the deposition that the Court had scheduled and ordered, the Plaintiffs file Plaintiffs Notice of Non-Appearance Regarding the Deposition of Bruce W. Polsky, M.D. (Doc. 211)("Notice of Non-Appearance"), which states:

> More than reasonable efforts were made by Dr. Polsky and Plaintiffs' counsel to try and change Dr. Polsky's schedule so he could attend the October 19, 2023, deposition, but given his position as Chair of his Department at the School of Medicine he must appear for a Board meeting on October 19, 2023, and cannot attend his deposition as Noticed.

Notice of Non-Appearance at 3.

62.     The Notice of Non-Appearance also states:

> Plaintiffs' counsel was shocked to find out defense counsel was in New York for the deposition of Dr. Polsky and was clear Dr. Polsky could not be present for his deposition, asking for clarification, as it was understood that USA's counsel was aware through Plaintiffs' co-counsel that Dr. Polsky was unable to attend a deposition on October 19, 2023, . . . Defendant has been informed that Dr. Polsky is available on November 8, and the deposition should be noticed as soon as possible.

Notice of Non-Appearance at 3.

63.     On October 19, 2023, the Plaintiffs file Plaintiffs' Motion for Protective Order Regarding the Deposition of Bruce W. Polsky, M.D. (Doc. 212)("Protective Motion"), which explains that:

> Unbeknownst to Plaintiffs' counsel at the hearing, Dr. Polsky had contacted co-counsel the day before to state that he could not be available on the 19th any longer but would work for find another date close in time. Additional contacts were made with Dr. Polsky to try and free up the 19th , but it is understood that he as the chair of his department is required to attend a Board meeting at his University and is not able to either prepare in time for the deposition, or not attend the meeting.

Protective Motion at 2.

64.     On October 19, 2023, Mr. Eaton flies back to Albuquerque.  <u>See</u> November 14 Tr.

at 11:7-20 (Eaton).

65.    On October 26, 2023, the Court schedules a hearing on the Notice of Non-Appearance and the Protective Motion for November 14, 2023.  See Notice of Motion Hearing (Doc. 218)(text-only docket entry).

66.    On November 7, 2023, the United States files the Exclusion Motion.  See Exclusion Motion at 1.

67.    On November 8, 2023, the Court enters a Minute Order adding the Exclusion Motion to the November 14, 2023, Motion Hearing's agenda.  See Minute Order (Doc. 223)(text-only docket entry).

68.    On November 13, 2023, the Court enters a Minute Order "instructing counsel for Plaintiffs to identify dates on which Bruce W. Polsky, M.D. would be available to be deposed in person in Albuquerque, New Mexico, and to bring said dates to the Motion Hearing scheduled for 11/14/2023."  Minute Order (Doc. 225)(text-only docket entry)("November 13 Minute Order").

69.    That same day, the Court's courtroom deputy, Ms. Lauren Rotonda, calls the Plaintiffs to alert them of the November 13 Minute Order.  See November 14 Tr. at 3:5-16 (Court)(reminding the Plaintiffs that Ms. Rotonda called them about the November 13 Minute Order).

70.    On November 14, 2023, the Plaintiffs file the Exclusion Response.  See Exclusion Response at 1.

71.    The Exclusion Response asserts that "Dr. Polsky is available to have his deposition taken on December 5, 2023 in New York or by zoom."  Exclusion Response at 10.

72.    The Exclusion Response also asserts that:

> It was unknown to co-counsel that Dr. Polsky's deposition had been ordered and that a Notice of Deposition had been sent on Monday, October 16, 2023, until co-counsel returned to the office on Tuesday, October 17, 2023, after returning from vacation.  Plaintiffs informed Dr. Polsky that the Court ordered his deposition to be taken on October 19, 2023. Dr. Polsky reminded Plaintiffs' counsel that he had already released that date because he had not received a notice of deposition . . . Having released the October 19, 2023 date, Dr. Polsky set other meetings for that day and Dr. Polsky was unable to change his schedule under such short notice and stated he need more time to prepare for his deposition. Plaintiffs informed counsel for the USA that Dr. Polsky would not be able to attend the October 19, 2023, deposition but offered November 8, 2023, as an alternative.

Exclusion Response at 11.

- 22 -

73.     That same day, the Court holds a hearing on the Exclusion Motion.  See November

Minutes at 1.

74.     At the hearing, the Court states:

> If I understand everything, we've whittled down all the issues down to this Dr.
> Polsky deposition.  I'm very disappointed that this didn't get done, the things that
> have surrounded it.  But I'm also reluctant to -- I'll do it if necessary -- but I'm
> reluctant to exclude a witness.  So, as you know I entered an order, and also had
> Ms. Rotonda[, the courtroom deputy,] call you to say to the plaintiffs:  Show up
> today with dates that Dr. Polsky can be here in Albuquerque and be available for
> a deposition.  And then I was going to see if Mr. Eaton could make that work.

November 14 Tr. at 3:5-16 (Court).

75.     The Court then asks: "Ms. Curtis, did you come with those dates?"  November 14

Tr. at 3:21-22.

76.     Ms. Curtis responds and has the following exchange with the Court:

> Ms. Curtis:     Your Honor, we filed a response to the motion to exclude.
>                 And I understand that the Court has made this direction.
>                 As you know, Dr. Polsky works at --
>
> The Court:      When did you file your response?
>
> Ms. Curtis:     We just filed -- it's not due for a bit, but we filed it today
>                 as soon as we understood that we were going to have this
>                 hearing.  We wanted you to have a response from us about
>                 the process that we'd gone through to get to where we were
>                 at.  I didn't want the Court to have solely defendant's
>                 motion.
>
> The Court:      I don't want to hear argument from you right now.  I want
>                 to know --
>
> Ms. Curtis:     About the dates, yes, sir.  Certainly, Dr. Polsky cannot --
>                 showing up here from New York would cause him three
>                 days.
>
> The Court:      Then we'll probably just exclude him then.  We've had
>                 enough with Dr. Polsky.

November 14 Tr. 3:23-417 (Curtis)(Court).

77.     Later in the hearing, the Court asks Ms. Curtis:

> The Court:      Why did Dr. Polsky not make himself available that day[, the day
>                 of the scheduled deposition]?
>
> Ms. Curtis:     Because he couldn't by the time we got the notice.
>
> The Court:      And why?
>
> Ms. Curtis:     Because he has obligations in his academic --
>
> The Court:      He chose a faculty meeting rather than coming to the deposition;
>                 correct?

Ms. Curtis:    Your Honor, I don't believe it was choice.  He has -- this is a --

The Court:    If he's going to sign up to be a federal expert, he has to do what courts say.  Once he comes into the field of judicial work, he's got to obey court orders.  And he chose to go to a faculty meeting rather than doing what he needed to do as an expert in this case.

Ms. Curtis:    Your Honor, respectfully, I disagree with you . . . And we don't hire guns, Judge . . . This is a hard, hard expert to have.  The expert is not trying to treat the Court with disrespect.

The Court:    Then why do I not have a date today for him to be in Albuquerque to be deposed?

Ms. Curtis:    Because his ability to knock out three days from his schedule that he has is impossible for him, where --

The Court:    It just seems with this doctor everything is impossible . . . If he's not willing to help you correct the mess, then I don't think he needs to be in this case.

Ms. Curtis:    Well, Your Honor, I am more than happy to replace Dr. Polsky, if that is possible . . . .

The Court:    Well, he needs to help you with the mess that's been created by getting himself here.  I'm willing to give that.  But you kind of disobeyed another Court order.  I told you to come here with dates, and you're saying you can't come -- I don't know how he's supposed to testify if he's not going to come to Albuquerque.  We've got a trial coming up.  What's he going to do then?

Ms. Curtis:    He will come for trial, that's already been established.

The Court:    He won't come for a deposition?

Ms. Curtis:    Trial is months away, and we can book it that fast.

November 14 Tr. at 18:19-19:12; id. at 20:12-21:8; id. at 21:10-23.

78.    After additional argument, Ms. Curtis states:

Ms. Curtis:    Your Honor, the one thing that I would add is that if, in fact, we're incapable of having Dr. Polsky appear, we do have a local expert at UNM, that's written extensively on Hantavirus . . . So there is a way to do this with a different expert . . . I'm trying to find a compromise.

The Court:    Well, I offered it to you this week.  I was not going to grant the motion entirely if you came in here today with his availability here.  And I think you've not taken that offer up, so --

Ms. Curtis:    I just don't have an option . . . Is there a way to do this over the weekend . . . then it wouldn't hurt [Dr. Polsky's] work schedule so much.  Is that possible?

The Court:    I think the train has come and gone.  I gave you a chance to bring a date today . . . talk to Mr. Eaton and see if we can make them work.  But that didn't happen, so I think the motion needs to be granted.

Ms. Curtis:   Your Honor, have you already made a decision about whether you're going to allow us to bring a replacement expert in the case, even if that --

The Court:   I think you probably need to talk to Mr. Eaton about that. But I imagine he's going to oppose that, that deadlines have come and gone.

November 14 Tr. at 28:14-17-29:1; id. at 29:25-31:2.

79. After hearing argument from the United States, the Court states:

> Well, I don't get any pleasure out of doing this, and I do it with great reluctance. But I just don't think I'm being fair to the defendants if I -- particularly the United States -- if I don't grant the motion. I was willing to not go that far. If Dr. Polsky would make a date available today, or dates available today, I thought probably I could live with that compromise.
>
> But I think we're at a point where he's just not making himself available, and helping out the Court and the plaintiffs by trying to correct a situation about the difficulties of getting his deposition taken.
>
> So I will grant the motion. I'll also order all costs for Mr. Eaton going out there, as well as preparing the motion. So those costs will be assessed as well. And Dr. Polsky will not be allowed to testify in this trial.

November 11 Tr. at 42:12-43:5.

**IS ORDERED** that: (i) Defendant United States' Motion to Exclude the Testimony of Bruce W. Polsky For Failure to Appear at his Court-Ordered Deposition, filed November 7, 2023 (Doc. 221), is granted; (ii) Plaintiffs' Motion for Reconsideration of the Court's Order Granting Defendant United States' Motion to Exclude Dr. Polsky as an Expert (Doc. 221), filed November 30, 2023 (Doc. 228), is denied; (iii) Defendants Joelle Catherin Cero Go, RN and AB Staffing Solutions, LLC's Motion for Summary Judgment, filed December 8, 2023 (Doc. 233), is granted; (iv) Defendants Robin Ranell Sales, R.N. and Next Medical Staffing's Motion for Summary Judgment, filed December 8, 2023 (Doc. 234), is granted; (v) the United States' Motion for Summary Judgment for Lack of Causation on Plaintiffs' Loss of Chance Claim, filed December 8, 2023 (Doc. 235), is granted; (vi) Plaintiffs' Amended Motion for Leave to Re-Depose Larry Lybbert Nurse Educator, filed June 24, 2024 (Doc. 267), is denied; (vii) Plaintiffs' Motion for Relief Based on Newly Discovered Evidence Regarding the Court's Ruling on Defendant Nurse Sales' and Nurse Go's Motion for Summary Judgment [Doc. 233] and [Doc. 234], filed July 18, 2024 (Doc. 272), is denied; (viii) Defendants Joelle Catherin Cero Go, RN and AB Staffing Solutions, LLC's Motion to Strike Michelle Harkins, M.D.'s Affidavit, filed August 12, 2024

(Doc. 282), is denied, but the Court will not consider Dr. Harkins as a causation expert; and (ix) Plaintiffs' Amended Motion for Relief Based on Newly Discovered Evidence Regarding the Court's Ruling on Defendant United States' Motion for Summary Judgment [Doc. 235], filed October 10, 2024, (Doc. 296), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Lisa K. Curtis
Melanie L. Ben
Curtis & Co. Law Firm
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*

Alexander M. M. Uballez
  United States Attorney
Brett C. Eaton
  Assistant United States Attorney
Samantha E. Kelly
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for Defendant United States of America*

John Checkett
The Checkett Law Firm
Phoenix, Arizona

    *Attorneys for Defendants Robin Ranell Sales and Next Medical Staffing*

Brenda M. Saiz
Denise Michelle Chanez
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendants Joelle Catherin Cero Go and AB Staffing Solutions, LLC*